UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————

DARELL JENKINS,

                              Plaintiff,

v.                                                          9:19-cv-01352
                                                            (GTS/TWD)

SERGEANT SHORT, et al.,

                              Defendants.
———————————————————————————

APPEARANCES:                                    OF COUNSEL:

DARELL JENKINS
*Plaintiff, pro se*
18-A-0025
Southport Correctional Facility
PO Box 2000
Pine City, NY 14871

HON. LETITIA JAMES                              LAUREN ROSE EVERSLY, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

This matter was referred for a Report and Recommendation by the Honorable Glenn T.

Suddaby, Chief U.S. District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Darell Jenkins, an inmate in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS"), commenced this *pro se* civil action under

42 U.S.C. § 1983, asserting claims arising out of his incarceration at Mid-State Correctional

Facility ("Mid-State").  (Dkt. No. 1.)  The suit was originally filed in the United States District

Court for the Western District of New York ("W.D.N.Y."), but was later transferred to this

District.  (Dkt. No. 6.)  The District Court reviewed the complaint in accordance with 28 U.S.C.

§ 1915, and found only Plaintiff's First Amendment free exercise claims against Defendants

Correctional Officer ("C.O.") Lindermayer, Sergeant ("Sgt.") Short, and C.O. O'Neil survived

initial review and required a response.  (Dkt. No. 10.)

Defendants now move for summary judgment, in lieu of an answer, pursuant to Rule 56

of the Federal Rules of Civil Procedure arguing Plaintiff failed to exhaust his administrative

remedies prior to commencing this action.  (Dkt. No. 21.)  Plaintiff has not responded to

Defendants' motion and the time to do so has expired.  (*See* Dkt. Nos. 25, 26, 27, 28.)  For the

reasons set forth below, the Court recommends that Defendants' motion be granted.

## II.     BACKGROUND

Plaintiff alleges that on September 1, 2019, at approximately 9:30AM, while Defendants

were inside his cell, C.O. Lindermayer "kneeled down on the floor above [Plaintiff's] altar of

Santeria, & threw [his] offerings & water away[.]  (Dkt. No. 1 at 5.[1])  C.O. O'Neil then

described Plaintiff's religion as "voodoo."  *Id.*  C.O. Lindermayer, Sgt. Short, and C.O. O'Neil

told Plaintiff he was not permitted to offer "any food to [his] saints on [his] altar" and that he

was not permitted to have frankincense oils.  *Id.*

---

[1]  Page references to documents identified by docket number are to the page numbers assigned
by the CM/ECF docketing system maintained by the Clerk's Office.  Paragraph numbers are
used where documents identified by the CM/ECF docket number contain consecutively
numbered paragraphs.  Unless noted, excerpts from the record are reproduced exactly as they
appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Plaintiff filed a grievance but the grievance officer "Tapia"[2] "never answered [him]" and he "couldn't do anything because the grievance officer [did] not respond[.]"  *Id.*  Attached to Plaintiff's complaint is a letter dated Septmeber 27, 2019, from C. Tapia, IGP, acknowledging receipt of five pages of correspondence, assigned Grievance No. MS-24259-19.  *Id.* at 8.  The letter indicates Grievance No. MS-24259-19 was "forwarded to the Superintendent in accordance with Directive #4040" and that Plaintiff would be "notified of the results."  *Id.*  The letter stated to "Please refer to this grievance # with any future inquires."  *Id.*

Plaintiff's complaint is dated September 27, 2019.  *Id.* at 7.  It was notarized on October 3, 2019, and was stamped received by the Clerk for the W.D.N.Y. on October 11, 2019.  *Id.*  The matter was subsequently transferred to this District by Order of U.S. District Judge Elizabeth A. Wolford, issued on October 15, 2019.  (Dkt. No. 5.)  Upon receipt of the action, this Court issued a Decision and Order denying Plaintiff's *in forma pauperis* ("IFP") application as incomplete. (Dkt. No. 7.)  Plaintiff filed a second IFP application and pursuant to the District Court's March 30, 2020, Decision and Order, Plaintiff's First Amendment free exercise claims against Defendants C.O Lindermayer, Sgt. Short, and C.O. O'Neil survived initial review, and summonses were issued as to them.  (Dkt. Nos. 8, 10, 11.)

Defendants have not answered the complaint and instead move for summary judgment based solely on exhaustion grounds.  (Dkt. No. 21-1.)  To that end, Defendants have submitted sworn declarations from Rachel Seguin, the Assistant Director of the IGP for DOCCS, and Christopher Tapia, Supervisor of the IGP at Mid-State, describing DOCCS' administrative exhaustion process.  (Dkt. Nos. 29-2, 29-3.)  Defendants offer evidence that on or about

---

[2]  Christopher Tapia is the Inmate Grievance Program ("IGP") Supervisor at Mid-State.  (Dkt. No. 23-1 at ¶ 3.)

September 4, 2019, Plaintiff filed a series of letters that were consolidated into Grievance No. MS-24269-19, which alleged that on September 1, 2019, during a cell integrity check, C.O. Lindermayer threw out the sacrifices at his altar.  (Dkt. No. 21-2 at ¶ 6.)  The letters also alleged that, at some point between September 1, 2019 and September 3, 2019, C.O. O'Neil referred to Plaintiff's religion as "voodoo," and that Sgt. Short also interfered with his religious practice.  *Id.*  The first page of Grievance No. MS-24269-19, was stamped received by the "IGP Office" on September 4, 2019.  (*See* Dkt. No. 21-3 at 8.)  Due to the nature of the allegations, Grievance No. MS-24269-19 was forwarded to the Superintendent.  (Dkt. No. 21-2 at ¶ 7.)  On or about April 30, 2020, the Superintendent issued a determination denying Grievance No. MS-24269-19.  *Id.*  There is no record of Plaintiff appealing Grievance No. MS-24269-19 to the Central Office Review Committee ("CORC").  *Id.* at ¶¶ 9, 13.  Thus, Defendants argue summary judgment is appropriate in this case because Plaintiff failed to fully exhaust his administrative remedies prior to the commencement of this action.  (Dkt. No. 21-1.)  As noted above, Plaintiff has failed to submit any opposition to Defendants' motion.

## II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

A court shall grant summary judgment only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law"

and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). A verified complaint, as Plaintiff has filed in this case, is to be treated as an affidavit. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist[.]") (citations omitted).

Where a party is proceeding *pro se*, the court must "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP)(JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

As noted, Plaintiff did not respond to Defendants' motion for summary judgment. Defendants' motion advised Plaintiff of the consequences of failing to respond to the motion. (Dkt. No. 21 at 3.) The Clerk of the Court provided Plaintiff a similar notice. (Dkt. No. 24.) When Plaintiff failed to timely respond to the motion, the Court *sua sponte* granted Plaintiff additional time in which to do so, again advising Plaintiff of the consequences of failing to respond. (*See* Dkt. Nos. 25, 26, 27, 28.)

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, when a motion for summary judgment is unopposed, the court

may "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3); *see also* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion.").  Moreover, all properly supported facts set forth in Defendants' Statement of Material Facts that have not been specifically controverted shall be deemed admitted.  N.D.N.Y. L.R. 7.1(a)(3).

### B.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA"), provides, in pertinent part,  "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement).

To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the institution to which they are confined.  *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S.

81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly").

In New New York State prisons, DOCCS has a well-established three-step administrative review process. *See* 7 N.Y.C.R.R. § 701.5. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* § 701.5(a). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's Superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the Superintendent must issue a written decision within twenty calendar days of receipt of the grievant' s appeal. *Id.* § 701.5(c)(3)(ii).

Third, a grievant may appeal to CORC within seven working days of receipt of the Superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Where the grievance involves allegations of employee misconduct, as alleged here, there is an expedited administrative process. *See id.* § 701.8. Complaints of harassment, once given a number and recorded by the IGP clerk, are forwarded directly to the Superintendent of the facility. *Id.* In such cases the Superintendent is required to order an investigation and render a decision within twenty-five calendar days. *Id.* § 701(a)-(f). If the Superintendent fails to

respond within the required twenty-five day time limit, the inmate may appeal his grievance to CORC. *Id*. § 701.8(g). Disagreement with the Superintendent's decision in the expedited review process also requires an appeal to the CORC. *See id*. § 701.8-(g)-(h); *see also Espinal v. Goord*, 588 F.3d 119, 125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC). Thereafter, CORC must render a written decision within thirty days of receipt of the appeal. *Id*. § 701.8(i). The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA. *See Hall v. Cty. of Saratoga*, No. 10-CV-1120 (NAM/CFH), 2013 WL 838284, at \*1-2 (N.D.N.Y. Mar. 6, 2013).

At each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or Superintendent do not timely respond, an inmate must appeal to 'the next step,'" assuming there is a "next step" in the grievance process. *Eleby v. Smith*, No. 9:15-CV-0281(TJM/DEP), 2017 WL 986123, at \*4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)).

Generally, if a plaintiff fails to follow each of the required steps prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks and citations omitted)).

Nevertheless, while the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, Section 1997e(a) provides only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" (quotation marks and

citations omitted)).  In the PLRA context, the Supreme Court has determined "availability" means "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of."  *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find internal administrative remedies are not available to prisoners under the PLRA.  *Id*. at 1859-60.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id*. at 1859.  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  *Id*.  Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*. at 1860.

Because failure to exhaust is an affirmative defense, the defendants bears the burden of showing that an inmate has failed to satisfy the exhaustion requirements.  *See Jones*, 549 U.S. at 216; *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).  Whether the plaintiff has exhausted his administrative remedies is a question of law.  *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999).  Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu of an answer.  *Crichlow v. Fischer*, No. 6:15-CV-06252 EAW, 2017 WL 920753, at *5 (W.D.N.Y. Mar. 7, 2017) (citing *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a motion for summary judgment *made in lieu of* an answer where inmate failed to exhaust administrative remedies)).

Here, it is undisputed Plaintiff failed to avail himself of the full panoply of administrative remedies prior to commencing this action.  (Dkt. No. 21-2.)  The record before the Court

demonstrates Plaintiff completed only the first step of the grievance process before commencing this lawsuit. *Id.* As stated above, Plaintiff filed a series of letters that were consolidated into Grievance No. MS-24269-19. *Id.* at ¶ 7. Due to the nature of the allegations, Grievance No. MS-24269-19 was forwarded to the Superintendent for investigation in accordance with DOCCS policy on or about Septmeber 4, 2019. *Id.* at ¶ 8. On April 30, 2020, the Superintendent issued a determination denying Grievance No. MS-24269-19. *Id.* at ¶ 9. However, Plaintiff did not appeal the Superintendent's denial of Grievance No. MS-24269-19 to CORC. *Id.* at ¶ 10.

For these reasons, the Court finds Plaintiff failed to exhaust his administrative remedies. *See Bennett v. Fletcher*, No. 9:17-CV-849 (GTS/CFH), 2020 WL 872491, at *7 (N.D.N.Y. Jan. 16, 2020) (citing *Omaro v. Annucci*, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well-established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies.")), *report-recommendation adopted by* 2020 WL 871156 (N.D.N.Y. Feb. 21, 2020); *see, e.g.*, *Hamm v. Farney*, No. 9:13-CV-1302 (BKS/CFH), 2017 WL 8894723, at *5 (N.D.N.Y. Dec. 22, 2017), *report and recommendation adopted by* 2018 WL 922149 (N.D.N.Y. Feb. 16, 2018) (dismissing the plaintiff's complaint for failure to exhaust where the IGP supervisor and DOCCS Assistant Director of IGP both declared that "a search of the DOCCS database confirmed plaintiff's original grievance, as well as an appeal to the Superintendent, but produced no record of an appeal to CORC"); *see also Teaque v. Mullen*, No. 9:18-CV-01412 (GTS/CFH), 2019 WL 8589277, at *7 (N.D.N.Y. Dec. 17, 2019) ("Because plaintiff commenced this action before receiving a response from the Superintendent of Mid-State regarding his grievance, plaintiff did not fully exhaust his administrative remedies before commencing this action."), *report and recommendation adopted by* 2020 WL 858355 (N.D.N.Y. Feb. 21, 2020).

"[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability" under *Ross*. *Ferrer v. Racette*, No. 14-cv-1370 (GTS/DJS), 2017 WL 6459525, at *12 (N.D.N.Y. Dec. 18, 2017) (citation omitted); *see Perez v. Colon*, No. 9:19-CV-722 (GTS/DJS), 2020 WL 4549206, at *4 (N.D.N.Y. June 16, 2020) (finding no basis appeared on the record for concluding that DOCCS' grievance procedure was unavailable to the plaintiff given he failed to respond to the defendants' motion"), *report and recommendation adopted by* 2020 WL 4530602 (N.D.N.Y. Aug. 6, 2020).

Although he did not respond to Defendants' motion, Plaintiff's verified complaint suggests administrative remedies were unavailable to him at the time he commenced this action because the "grievance officer [did] not respond[.]" (Dkt. No. 1 at 7.) Defendants recognize the Superintendent's decision was issued beyond the 25 calendar days set forth in 7 N.Y.C.R.R. § 701.8(f). (Dkt. No. 21-1 at 7-8.) However, it is well-settled that where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding a lack of response at any level of review. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, C.J.) ("[Any failure by the IGRC or the Superintendent to timely respond to a grievance . . . can—and must—be appealed to the next level . . . to complete the grievance process.").

Here, when the Superintendent did not render a decision on Plaintiff's grievance within 25 days (i.e., by September 29, 2019), Plaintiff had the ability to file an appeal with CORC. *See* 7 N.Y.C.R.R. § 701.8(g). "[I]nstead of doing so, [Plaintiff] rushed to Court, without attempting to appeal (the Superintendent's non-response) to [CORC] eviscerating the purpose of the

administrative remedy process." *Teaque v. Mullen*, 2020 WL 858355, at *4 (citing *Woodford*, 548 U.S. at 89 (articulating two main purposes of exhaustion of administrative remedies)).  Thus, because Plaintiff failed to appeal the Superintendent's non-response to the next level, he cannot be excused from the grievance process.  *See Heyliger v. Gebler*, 624 F. App'x 780, 782 (2d Cir. 2015) (summary order) ("Under the regulations . . . , if at any step of the grievance process, an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to 'appeal[ ] to the next step.'") (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2) (2015)).

Based on the foregoing, the Court agrees with Defendants that Plaintiff failed to avail himself of the full panoply of administrative remedies prior to commencing this action.  *See James v. Doty*, No. 9:17-CV-1145 (MAD/CFH), 2019 WL 1474309, at *5 (N.D.N.Y. Jan. 4, 2019) ("Plaintiff does not suggest, and the record does not demonstrate, that plaintiff appealed the non-response to CORC."), *report and recommendation adopted by* 2019 WL 457694 (N.D.N.Y. Feb. 6, 2019).

Moreover, there is no evidence in the record showing the grievance procedure "operate[d] as a simple dead end" to Plaintiff, nor is there any evidence to establish an issue of fact as to unavailability due to an "opaque" administrate scheme.  *See Ross*, 136 S. Ct. at 1859-60.  As pointed out by Defendants, Plaintiff filed and appealed the denial of an unrelated grievance (Grievance No. MS-24271-19) to CORC on or about November 7, 2019.  (Dkt. No. 21-2 at ¶ 10.)  *See also Gonzalez v. Coburn*, No. 6:16-cv-6174, 2017 WL 6512859, at *6 (W.D.N.Y. Dec. 20, 2017) (finding the plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end nor so opaque that he could not avail himself of it).  Lastly, the record does not demonstrate prison

administrators prevented Plaintiff from using the grievance procedure due to "machination, misrepresentation, or intimidation."  *See Ross*, 136 S. Ct. at 1859-60.  Thus, given the record and considering the evidence in the light most favorable to Plaintiff, the Court finds there is no genuine dispute of fact that administrative remedies were available.

In light of the foregoing, the Court recommends granting Defendants' motion for summary judgment, as there is no genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies.  Generally, a dismissal for failure to exhaust administrative remedies is without prejudice, so that the inmate-plaintiff can cure the defect by exhausting his administrative remedies and then reinstituting his suit.  *See Snider v. Melindez*, 199 F. 3d 108, 111-12 (2d Cir. 1999).  However, dismissal with prejudice is appropriate where the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is unable to cure his failure to exhaust.  *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004).

Here, more than six months have passed since Plaintiff should have appealed Grievance No. MS-24269-19 to CORC.  (*See* Dkt. No. 21-2 at ¶¶ 8, 9, 13.)  As Plaintiff's failure to exhaust his administrative remedies is incurable at this point, the Court recommends dismissing Plaintiff's complaint with prejudice.  *See Castineiras v. Helms*, No. 9:17-CV-1084 (BKS/ATB), 2019 WL 2870300, at *5-6 (N.D.N.Y. June 6, 2019).

## III.    CONCLUSION

After carefully considering the record, the Court finds Plaintiff failed to exhaust his administrative remedies.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 21) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated:  November 16, 2020
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[3]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,

v.

Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone, New
York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York, New
York, for Defendant.

*MEMORANDUM & ORDER*

PAULEY, J.

**\*1** The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary judgment
and dismissing the amended complaint, and United States
Magistrate Judge James C. Francis IV having issued a report
and recommendation, dated August 20, 1999, recommending
that the motion be granted, and upon review of that report and
recommendation together with plaintiff's letter to this Court,
dated August 28, 1999, stating that plaintiff does "not contest
the dismissal of this action", it is

ORDERED that the attached report and recommendation of
United States Magistrate Judge James C. Francis IV, dated
August 20, 1999, is adopted in its entirety; and it is further

ORDERED that defendant Pflueger's motion for summary
judgment is granted, and the amended complaint is dismissed;
and it is further

ORDERED that the Clerk of the Court shall enter judgment
accordingly and close this case.

*REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42 U.S.C.
§ 1983. Mr. Cole alleges that the defendant Richard Pflueger,
a corrections officer, violated his First Amendment rights
by refusing to allow him to attend religious services. The
defendant now moves for summary judgment pursuant to
Rule 56 of the Federal Rules of Civil Procedure. For the
reasons set forth below, I recommend that the defendant's
motion be granted.

*Background*

During the relevant time period, Mr. Cole was an inmate
in the custody the New York State Department of
Correctional Services ("DOCS"), incarcerated at the Green
Haven Correctional Facility. (First Amended Complaint
("Am.Compl.") ¶ 3). From June 21, 1993 to July 15, 1993, the
plaintiff was in keeplock because of an altercation with prison
guards. (Am.Compl.¶¶ 17–25). An inmate in keeplock is
confined to his cell for twenty-three hours a day with one hour
for recreation. (Affidavit of Anthony Annucci dated Dec. 1,
1994 ¶ 5). Pursuant to DOCS policy, inmates in keeplock must
apply for written permission to attend regularly scheduled
religious services. (Reply Affidavit of George Schneider
in Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.") ¶ 3).
Permission is granted unless prison officials determine that
the inmate's presence at the service would create a threat to
the safety of employees or other inmates. (Schneider Aff. ¶
3). The standard procedure at Green Haven is for the captain's
office to review all requests by inmates in keeplock to attend
religious services. (Schneider Aff. ¶ 3). Written approval is
provided to the inmate if authorization is granted. (Affidavit
of Richard Pflueger dated April 26, 1999 ("Pflueger Aff.")
¶ 5). The inmate must then present the appropriate form to
the gate officer before being released to attend the services.
(Pflueger Aff. ¶ 5).

**\*2** On June 28, 1993, the plaintiff submitted a request
to attend the Muslim services on July 2, 1993. (Request
to Attend Scheduled Religious Services by Keep–Locked
Inmate dated June 28, 1993 ("Request to Attend Services"),

attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*
Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at \*3

(S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se'* s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

**B.** *Constitutional Claim*

It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent individuals posing an active threat to security from being released. The procedure is not overbroad since it does not

permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

[1]  In light of this finding, there is no need to consider the defendant's qualified immunity argument.

*Conclusion*

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

    Respectfully submitted,

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983876

---

                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 838284
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

William HALL, Plaintiff,

v.

COUNTY OF SARATOGA, John Doe, Individually
and in his capacity as an Employee of the County
of Saratoga, New York, Sheriff's Department
and the Saratoga County Sheriff, Lt. Corbet,
Jane Doe, the persons intended being all Civilian
personnel as employees or under Contract as
independent medical personnel, Defendants.

No. 1:10–CV–1120 (NAM/CFH).
|
March 6, 2013.

**Attorneys and Law Firms**

Grasso, Rodriguez & Grasso, Nicholas J. Grasso, Esq., of Counsel, Schenectady, NY, for Plaintiff.

Bailey Kelleher & Johnson, P.C., Nannette R. Kelleher, Esq., of Counsel, Albany, NY, for Defendants.

MEMORANDUM–DECISION and ORDER

NORMAN A. MORDUE, District Judge.

I. INTRODUCTION

*1 This action arises under the auspices of 42 U.S.C. § 1983. Plaintiff asserts that while he was an inmate at the Saratoga County Correctional Facility ("SCCF"), defendants denied him adequate medical care, committed a battery upon him and are liable in negligence for personal injuries he sustained while in their custody. Defendants have moved for summary judgment dismissing the complaint. Plaintiff has not submitted papers in opposition to this motion.[1]

[1]    The Court's Docket indicates that defense counsel initially served plaintiff's counsel, Mr. Grasso, with the present motion papers via the Court's mandated electronic filing system ("CM/ECF") system, unaware that he is exempt from use of the ECF system as he has been in practice for

over fifty years. Mr. Grasso contacted the Court on September 12, 2012, requesting an extension due to his exemption and the fact that he had just received notice that a dispositive motion had been filed. Though defendants opposed his request, the Court granted Mr. Grasso's request for a thirty day extension to prepare responsive papers. Mr. Grasso did not file his response papers as ordered by October 12, 2012. On October 19, 2012, this Court received additional correspondence from defense counsel requesting that no further extensions be granted to Mr. Grasso and that the pending motion for summary judgment be granted in its entirety. Mr. Grasso did not respond to this correspondence. The Court granted the former request and denied the latter pending review of the motion on its merits. The Court has had no further communication with Mr. Grasso.

II. DISCUSSION

A. *Standard of Review*

Summary judgment is appropriate when there is no genuine issue with regard to any material fact, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). When deciding a summary judgment motion, the Court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999).

When, as here, a summary judgment motion is unopposed, "[t]he fact that there has been no [such] response ... does not ... [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996); *see also Vt. Teddy Bear Co. v. 1–800 Beargram Co., Inc.,* 373 F.3d 241, 244 (2d Cir.2004). Instead, a court must (1) determine what material facts, if any, are disputed in the record present on the motion; and (2) assure itself that, based on those undisputed material facts, the law indeed warrants judgment for the moving party. *See Champion,* 76 F.3d at 486. The motion may fail if the movant's submission fails to establish that no material issue of fact remains for trial, *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001), or if the "undisputed facts fail to show that the moving party is entitled

to judgment as a matter of law," *Vt. Teddy Bear,* 373 F .3d at 244 (internal citation and quotation marks omitted).

B. *Exhaustion of Administrative Remedies*
The Prisoner Litigation Reform Act of 1995 ("PLRA"), mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions of confinement. *See* 42 U.S.C. § 1997e(a). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Supreme Court has held that the PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

 **2** " 'Conditions of confinement' is not a term of art; it has a plain meaning." *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999). "It quite simply encompasses all conditions under which a prisoner is confined for his term of imprisonment." *Id.* These include terms of disciplinary or administrative segregation such as keeplock or solitary confinement, as well as more general conditions affecting a prisoner's quality of life such as ... the deprivation of exercise, medical care, adequate food and shelter, and other conditions that, if improperly imposed, could violate the Constitution. *Id.* (citing *Figueroa v. Rivera,* 147 F.3d 77, 82 (1st Cir.1998); *Channer v. Mitchell,* 43 F.3d 786, 788 (2d Cir.1994)) (*per curiam* ). In short, any deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement.

In *Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004), the Second Circuit "read together," *Macias v. Zenk,* 495 F.3d 37, 41 (2d Cir.2007), a number of decisions and consolidated cases and formulated a three-part test for examining the scope of the PLRA's exhaustion requirement:

> Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact available to the prisoner. The court should also inquire as to whether the defendants

may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

*Hemphill,* 380 F.3d at 686.

New York State law provides a three tier inmate grievance procedure applicable to plaintiff's claims. *See,* N.Y. Correct. Law § 139; N.Y. Comp.Codes R. & Regs. tit. 7, § 701.1 *et seq.* (2003). Courts in the this Circuit have long recognized this procedure as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* No. 96–CV–5396, 2004 WL 324898, at *4 (S .D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003) and *Snider v. Melindez,* 199 F.3d 108, 112–13 (2d Cir.1999)). Richard Emery, the Chief Administrator with the rank of Colonel for SCCF submitted an affidavit wherein he averred that the facility maintained an inmate grievance program established by the New York State Department of Corrections and Community Supervision ("DOCCS") pursuant to the above-referenced law and regulations. Further, Emery stated that the grievance program is enumerated in the policies and procedures of SCCF and is distributed to each inmate in an Inmate Handbook. Review of the complaint and the entire record for that matter reveals no suggestion that plaintiff filed or attempted to pursue a grievance of his claims administratively at SCCF prior to filing the instant action.

 **3** Regarding part two of the *Hemphill* analysis, plaintiff does not allege in the complaint or anywhere in the record that defendants inhibited his ability to utilize the grievance

program which was indisputably available to him at SCCF. Finally, review of the record does not reveal any "special circumstances" which would justify plaintiff's failure to comply with administrative requirements prior to filing the present federal claim. See *Hemphill,* 380 F.3d at 686. Thus, the Court finds there is no genuine issue of material fact concerning plaintiff's failure to have exhausted administrative remedies prior to commencing his § 1983 claims against defendants. Based thereupon, these federal claims are subject to dismissal on procedural grounds.

C. *Plaintiff's Claims Under 42 U.S.C. § 1983*

1. Inadequate Medical Treatment
Even if the Court ignored plaintiff's procedural failings, his § 1983 claims fare no better on their merits. According to the complaint and his response to interrogatories filed in this matter, plaintiff claims that defendants violated the Eighth Amendment when failed to provide adequate medical care to him while he was an inmate at SCCF by: 1) failing to comply with care and treatment consistent with the diagnosis of renal failure; 2) failing to address the plugging of an A.V. fistula in his left arm in a timely fashion despite his complaints about it, putting a shunt in his neck; 3) not allowing him to shower or bathe for eight days which led to a septic infection; and 4) failing to follow a special diet of low calcium, phosphorous and potassium which was recommended by plaintiff's physician, Dr. Daoui and the Rubin Dialysis Center.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes, which includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173 (1976) (citations omitted). The Eighth Amendment also applies to prison officials when they provide medical care to inmates. See *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). To establish an unconstitutional denial of medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." *Id.* at 104.

The deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). See *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting) (standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain") (citations omitted). Second, the charged official must act with a sufficiently culpable state of mind. See *Wilson,* 501 U.S. at

298. Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. See *Farmer v. Brennan,* 511 U.S. 825, 835 (1994). More specifically, a prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

**\*4** "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Nevertheless, a pattern of omissions may permit the inference of deliberate unconcern for the prisoner, and gross negligence by prison employees creates a strong presumption of deliberate indifference. *Doe v. New York City Department of Soc. Servs.,* 649 F.2d 134, 143–44, 145 (2d Cir.1981), *cert. denied,* 464 U.S. 864 (1983); *Langley v. Coughlin,* 715 F.Supp. 522, 537 (S.D.N.Y.1989). Furthermore, a health provider cannot claim to have exercised his or her "best judgment" where that judgment is based on a cursory examination or inadequate diagnostic procedures. *Williams v. United States,* 747 F.Supp. 967, 1009 (S .D.N.Y.1990). Finally, prison officials cannot defend practices that fall below the norm of what is generally accepted in the medical community merely on the ground that such practices are common throughout the correctional system. See *Todaro v. Ward,* 565 F.2d 48, 53 (2d Cir.1977).

Stephen Strader, the Medical Director at SCCF, who oversees all medical personnel at SCCF and participates in the care and treatment of all inmates at the facility, submitted an affidavit detailing the medical care provided to plaintiff during the relevant time period. According to Dr. Strader, plaintiff entered the facility on December 1, 2008, on a driving while intoxicated charge. Thus, he was automatically subject to monitoring for ETOH withdrawal. An Inmate Physical Assessment Form completed at the time of his arrival indicated that plaintiff was being treated for Stage IV Renal Disease. Dr. Strader explained that chronic renal disease is the gradual loss of kidney function which can occur over months or years. According to Dr. Strader, Stage IV is considered the most severe stage of the disease; it is usually irreversible and will often progress to complete kidney failure. At that point, Dr. Strader explained, the kidneys can no longer adequately filter waste and excess fluids from the body and dangerous levels of fluids, electrolytes and wastes can accumulate. Dr. Strader stated that the only option available to patients at this stage of kidney disease is dialysis or renal transplant.

2013 WL 838284

Dr. Strader noted that when an inmate enters SCCF with a chronic disease such as plaintiff's, the facility obtains the inmate's medical records when possible and facilitates continuing treatment by local specialists in accordance with security policies. According to Dr. Strader, inmates are transferred to all outside medical provider appointments by the Saratoga County Sheriff's Department road patrol unless emergency ambulatory services are required. Dr. Strader averred that review of plaintiff's medical records confirmed the diagnosis of Stage IV chronic kideny disease or renal failure and a medical evaluation by plaintiff's nephrologist prior to his incarceration evidenced worsening renal failure. Dr. Strader noted that when plaintiff entered SCCF, he had an A.V. fistula already in place. Dr. Strader explained that an A.V. fistula is essentially an artificial vein that connects directly to an artery. Dr. Strader stated that A.V. fistulas are commonly created surgically to be used for dialysis treatments. According to Dr. Strader, plaintiff's A.V. fistula was inserted in 2007 due to his progressing kidney disease and anticipation that dialysis would be necessary in the future.

 *5  Within the first few days of plaintiff's incarceration, SCCF contacted plaintiff's nephrologist, Dr. Daoui to determine when he would have to be seen and what treatment was necessary. According to Dr. Strader, Dr. Daoui advised that plaintiff would need monthly blood work to monitor his kidney function and electrolyte levels. Dr. Daoui asked that the results of the bloodwork be faxed to his office for review. Plaintiff saw Dr. Daoui for evaluation on January 9, 2009. Dr. Strader averred that in the course of his duties as the facility physician, he reviewed Dr. Daoui's notes and recommendations following each visit. Dr. Strader also stated that while it was his practice to defer to specialist recommendations, he maintained final authority over the medical treatment provided to inmates. Dr. Strader stated that his review of the notes from plaintiff's follow-up evaluation with Dr. Daoui on March 9, 2009, revealed worsening kidney function in the months prior to plaintiff's incarceration and Dr. Daoui's observation that plaintiff would likely soon need dialysis.

On May 11, 2009, Dr. Strader averred that Dr. Daoui recommended that plaintiff adhere to a low potassium diet. Dr. Strader understood this recommendation to require that plaintiff avoid eating excess potassium. According to Dr. Strader, limiting one's potassium intake is necessary in advanced stages of kidney disease. This is because when one's kidney's are failing, it leads to the inability to maintain a

normal potassium level as the kidneys begin to lose the ability to remove potassium from the blood. Dr. Strader stated that it was likely that the base diet provided to plaintiff at SCCF already contained lower levels of potassium than he would be ingesting outside the facility. Notably, Dr. Strader opined that "when a renal patient is placed on a low potassium diet, it is because his kidneys have already failed thereby leading to the inability to maintain normal potassium levels. A high potassium diet will not cause kidney failure." Nevertheless, as Dr. Daoui did not prescribe a specific level of potassium intake for plaintiff, SCCF medical staff advised the kitchen staff to restrict plaintiff's meals so they did not include overly high levels of potassium. Dr. Strader stated that SCCF also continued monitoring plaintiff's metabolic blood panel and electrolytes to gauge whether his kidney functions were worsening and unable to maintain normal potassium levels.

Dr. Strader also stated that in his May 9, 2009, office note, Dr. Daoui recommended that plaintiff start hemodialysis. Indeed, the Court notes that in the May 9, 2009, note, Dr. Dauoi changed plaintiff's diagnosis to " 'CKD' [or chronic kidney disease] stage 5." However, on May 17, 2009, days before plaintiff's dialysis was to start, he complained that the fistula in his left arm had stopped working. Dr. Strader averred that while he was not a nephrologist, he had a medical understanding of how fistulas are used, complications that can arise with a fistula, and what procedures may be needed to correct those complications. According to Dr. Strader, one complication that can arise is that a fistula can clot or clog which prevents fluid from passing through it. Dr. Strader's review of plaintiff's medical records revealed that a clot or clog in plaintiff's A.V. fistula had occurred at least one time before he entered SCCF. Dr. Strader stated that a clogged or clotted fistula is not a life threatening condition and it is unlikely to cause any pain to a patient. When it occurs, Dr. Strader stated that a nephologist will examine the fistula to determine if a surgical revision will need to be performed. If the patient is on dialysis, Dr. Strader stated that a temporary catheter is placed to allow continuing dialysis pending repair of the fistula.

 *6  When plaintiff complained that his fistula had stopped working, a nurse at SCCF contacted Dr. Daoui to see how he would like to proceed as plaintiff was scheduled to begin dialysis. Dr. Daoui recommended that a temporary catheter be placed to allow dialysis to proceed while the fistula was repaired. Dr. Strader said that he then scheduled a fistulogram, a procedure used to determine whether any fluid can pass through a fistula, for the beginning of June. On May 21,

2009, Dr. Strader stated that plaintiff underwent a procedure at Saratoga Hospital for the insertion of a temporary right internal jugular tunnel hemodialysis catheter. Following this procedure, Dr. Strader averred that Dr. Dempsey at Saratoga Hospital contacted SCCF and expressed concern regarding plaintiff being returned to the general inmate population with the catheter in place. Dr. Dempsey recommended that plaintiff be taken out of the general population to reduce the risk that the catheter would be pulled out which could cause plaintiff to bleed to death before medical help could arrive. Though plaintiff strenuously objected to the restriction, Dr. Strader stated that plaintiff was separated from the general population and placed on medical watch unit.

Dr. Strader stated that following the catheter insertion on May 21, 2009, showering restrictions were placed on plaintiff because it was deemed medically necessary to keep the catheter site dry. On May 28, 2009, SCCF medical staff were advised by plaintiff's specialists at the Rubin Dialysis Center that he could resume showering and the restriction was lifted. Plaintiff began his dialysis treatments on May 29, 2009, and received a total of 17 dialysis treatments between then and the time of his release from the facility in July 2009.

Dr. Strader opined to a reasonable degree of medical certainty that the treatment plaintiff received at SCCF did not hasten his kidney disease and did not cause his fistula to become clotted. Rather, according to Dr. Strader, the care and treatment provided to plaintiff at SCCF was in compliance with all accepted standards of care and in compliance with the recommendations of plaintiff's own specialists. Overall, Dr. Strader said that plaintiff's blood pressure and weight were monitored weekly and at times daily during his six month incarceration and blood work was performed once to twice monthly to monitor his kidney function and electrolyte levels. Plaintiff's medical records confirm Dr. Strader's statement that plaintiff was evaluated three times by his nephrologist and was in daily contact with the medical staff at SCCF. Dr. Strader averred:

> His medications were constantly monitored, he was placed on a restricted diet [ ], and relocated to a medical unit to ensure his safety. [Plaintiff's] records evidenced that his kidney was [sic] worsening with each visit to his nephrologist before he entered SCCF. [Plaintiff] received

the same care for his renal disease while at SCCF that he would have received had he not been incarcerated. I can affirm to a reasonable medical certainty that it was not [plaintiff's] incarceration which resulted in his requiring dialysis, but the natural progression of his disease.

a. Treatment of Plaintiff's Fistula

**\*7**  Turning to plaintiff's claims of inadequate medical care, plaintiff alleges that defendants "fail[ed] to address the plugging of the A.V. fistula in his left arm in a timely fashion." Plaintiff testified at a 50–h hearing and at his deposition in connection with this matter that defendants waited five to six weeks to treat the clogged fistula. Notably, plaintiff did not allege or testify that the clogged fistula caused him extreme pain and there is no medical evidence in the record which indicate that the failure to treat plaintiff's condition immediately as he requested would or could have resulted in "death, degeneration or extreme pain." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (quoting *Nance,* 912 F.2d at 607). Based thereupon, defendants are correct when they argue that there is no evidence to support plaintiff's claim that failure to act immediately to remedy his clogged fistula, in and of itself, was a deprivation "sufficiently serious" to warrant review under the Eighth Amendment. *Wilson v. Seiter,* 501 U.S. at 298.

Nevertheless, even if a clogged fistula is a serious medical condition under the standard described in *Nance, supra,* the record here reveals that defendants' treatment of the problem was reasonable and in accordance with the directives of Dr. Daoui. Plaintiff alleges that SCCF's actions in evaluating the clogged fistula took too long and caused him to have a catheter inserted. However, it was Dr. Daoui who recommended insertion of the catheter to ensure plaintiff's dialysis treatments could start as scheduled. Plaintiff believes that he should have had the fistula repaired immediately instead of having to undergo placement of the catheter. However, it is well settled that "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). "These issues implicate medical judgments and, at worst, negligence amounting to

medical malpractice, but not the Eighth Amendment." *Id.* (citing *Estelle v. Gamble,* 429 U.S. at 107

b. Inadequate Diet
The intentional failure to provide an inmate with a medically prescribed diet for a prolonged period of time can state a viable Eighth Amendment claim. *Abdush— Shahid v. Coughlin,* 933 F.Supp. 168, 180 (N.D.N.Y.1996) (citing *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (Eighth Amendment's prohibition against cruel and unusual punishment requires serving inmates nutritionally adequate food prepared and served under conditions that do not present imminent danger to health and well-being of inmates who consume it)). However, the "objective component" of an Eighth Amendment claim requires a plaintiff to show evidence of some adverse health impact caused by the discontinuance of or failure to provide the prescribed diet. *Davidson v. Desai,* 817 F.Supp.2d 166, 190 (W.D.N.Y.2011).

**\*8** Plaintiff asserts that defendants failed to follow the special diet of low calcium, phosphorous and potassium recommended by his doctor and the specialists at the Rubin Dialysis Center. However, there is no evidence in the record that Dr. Daoui ever ordered that plaintiff's intake of calcium and phosphorous be limited. Indeed, the only restriction Dr. Daoui placed on plaintiff's diet was "low potassium." The record shows that once, Dr. Daoui placed this restriction on plaintiff's diet, the facility kitchen was made aware of the restriction and plaintiff's diet was altered. Although plaintiff asserts that his diet was not properly altered, defendants are correct when they contend that plaintiff's blood levels were continuously monitored and Dr. Daoui made no changes based on his subsequent review of plaintiff's laboratory results. Thus, there is no evidence that plaintiff received an inadequate diet while incarcerated at SCCF. Moreover, there is no objective evidence that the alleged inadequacy of his diet caused any worsening of his health or renal condition. As referenced above, Dr. Strader opined that high levels of potassium do not cause kidney failure. Rather, Dr. Strader noted that plaintiff's inability to maintain normal potassium levels was due to the natural progression of his kidney disease.

c. Showering Restriction
Plaintiff asserts that he was not allowed to shower for several days after placement of the catheter for dialysis and that this caused a "septic infection." Regardless of whether restriction of shower privileges for the time period in question rises to level of denial of a serious medical need, there is no evidence

in the record that plaintiff ever developed any type of septic infection while incarcerated at SCCF. Indeed, while plaintiff testified at his 50–H hearing that he got a septic infection at the site of the catheter placement and was "in the hospital for four days," the Court finds no record of such a hospital visit or infection his medical records. Moreover, the showering restriction was implemented at the instruction of plaintiff's specialists at the Rubin Dialysis Center who ordered that the catheter site be kept dry. On the day that medical personnel at SCCF were advised by the Rubin Dialysis Center that plaintiff could resume showering, the restriction was lifted.

d. Overall Treatment of Plaintiff's Renal Disease
Plaintiff contends that the care he received at SCCF resulted in his requiring dialysis and was not in his "best interest." However, as referenced above, plaintiff entered the facility with Stage IV renal disease and his medical records demonstrate that his condition was worsening in the months just prior to his incarceration. Plaintiff arrived at SCCF with an A.V. fistula because his physician anticipated that he would soon require dialysis. Within three months of entering the facility, Dr. Daoui noted that plaintiff's bloodwork warranted a change in his diet and the initiation of hemodialysis. The record fully supports defendants' contention that it was the natural progression of plaintiff's disease, not the care or treatment he received at SCCF, which led to his requiring dialysis. There is nothing in the record which suggests that plaintiff's care and treatment at SCCF was not in accordance with generally accepted medical principles and the advice and recommendation of his own specialists.

**\*9** Consequently, there are no material questions of fact concerning plaintiff's claims of inadequate medical treatment under the Eighth Amendment and these claims must be dismissed.

2. Excessive Force
Defendants contend that while plaintiff's complaint did allege a claim for deliberate indifference to his medical needs, he did not assert a claim under 42 U.S.C. § 1983 for excessive force. Defendants argue that even if his complaint was deemed to include a claim of excessive force under § 1983, it would still fail. "The test of whether use of force in prison constitutes excessive force contrary to the Eighth Amendment is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Scott v.Coughlin,* 344 F.3d 282, 291 (2d Cir.2003) (citing *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). "The absence of

**Hall v. County of Saratoga, Not Reported in F.Supp.2d (2013)**
Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 24 of 131
2013 WL 838284

serious injury is ... relevant to the Eighth Amendment inquiry, but does not end it." *Id.* (quoting *Hudson,* 503 U.S. at 7.)

In this case, plaintiff's complaint alleges simply that defendant Corbett struck him in the face with a dish, milk and other objects. The complaint does not assert that plaintiff suffered any injury as a result of this incident. In his response to interrogatories, plaintiff asserts further that on May 11, 2009, "Lt. Corbett committed an assault on [him] by intentionally smashing a plate of food against the edge of a table and hitting [plaintiff] in the face with it and then throwing a glass of milk in his face causing [plaintiff] reasonable apprehension of the immediate harmful and offensive contact, which was the food and milk hitting [his] face." However, in the Court's record, plaintiff's interrogatory responses are not complete and it is unclear whether they are signed or sworn to by plaintiff. At his 50–H hearing, plaintiff testified that he was "not real happy that Lieutenant Corbett threw that plate of food in my face and a glass of milk." Following this answer, there is only one additional page of testimony provided by defendant in which plaintiff testified further concerning the incident:

> I wasn't real happy about the shunt being put in my neck, and I told them that they lied to me and I wasn't pleased with it, and I told him, and I said, Give me a phone. I'll call my lawyer and I'll have this thing out of my neck tomorrow, and he smashed a plate of food into my face and threw a glass of milk at me and said, Do you know how much money they've spent on you upstairs over that? And I said, I don't care.

When plaintiff was asked what he meant when he said that Corbett "smashed a plate of food into [his] face," he said "The plate was sitting on the table, and we were arguing back and forth across the table, and he smashed it on the edge and it flipped up in my face."

In an affidavit submitted in connection with defendants' motion, Lt. Corbett averred:

> [Plaintiff] had recently returned from Saratoga Hospital, where he had

a catheter inserted in his neck.... [Corbett] was advised by the on-duty nurse, R.N. Bilka, that [plaintiff] became angry upon learning that he was to be separated from general population.... As [plaintiff] was extremely agitated about this move, [Corbett] was asked to speak with him to attempt to calm him down.

**\*10** Corbett further stated that when he entered plaintiff's cell, he was "quite angry." "[Plaintiff] claimed that the hospital had lied to him by telling him that he could remain in general population. [Plaintiff]'s anger continued to escalate and he began yelling and threatened to remove the catheter himself."

> There was a metal table in the room that held [plaintiff]'s plate of food with a glass of milk. I sat across the table from [plaintiff] and reminded him that he was being separated from general population for his own safety. [Plaintiff's] temper was further escalated and I went to leave the holding cell to afford him the opportunity to calm down. When I rose from the table, my hand accidently knocked into [plaintiff]'s glass of milk, spilling milk on both [plaintiff] and me. I had [plaintiff] moved to another holding cell so that the cell could be cleaned while he had a chance to calm down.

> ...

> I understand that [plaintiff] has now alleged that I assaulted him by throwing the glass of milk at him during this incident. At no point, did I intentionally cause milk to spill on [plaintiff.] Had I acted in an aggressive manner towards [plaintiff] during that incident and physically assaulted him, the matter would have been reviewed by SCCF administration. Further, at no point did [plaintiff] complain of our interaction during his incarceration....

The force plaintiff describes herein not sufficiently serious or harmful to reach constitutional dimensions. *See Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993). Plaintiff does not maintain that he experienced any pain or injury as a result of the milk or food being allegedly thrown in his face, even assuming the incident occurred as he states. Moreover, plaintiff does not allege facts that show that Lt. Corbett used force "maliciously and sadistically to cause harm," rather than

2013 WL 838284

"in a good-faith effort to maintain or restore discipline" or calm him down and prevent him from removing his catheter. *Hudson,* 503 U.S. at 7. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973). Indeed, not even "every **malevolent** touch by a prison guard gives rise to a federal cause of action." *Hudson,* 503 U.S. at 9. (emphasis added). Plaintiff has therefore not stated facts that meet either the objective or subjective component of the test used to determine whether Lt. Corbett's alleged excessive physical force constituted cruel and unusual punishment.

D. Qualified Immunity

Even if the above were not true, Lt. Corbett and the other individually named defendant are also protected against plaintiff's various § 1983 claims by qualified immunity. As noted recently in the Supreme Court case of *Pearson v. Callahan,* 555 U.S.223, 129 S.Ct. 808, 815 (2009):

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (KENNEDY, J., dissenting) (citing *Butz v. Economou,* 438 U.S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

**\*11** For example, excessive force claims are properly analyzed under the Fourth Amendment's "objective reasonableness standard," because of the uncertainty and rapidity inherent in police work. *Graham v. O'Connor,* 490 U.S. 386, 396 (1989). Indeed, *Graham* sets forth a list of factors relevant to the merits of the constitutional excessive force claim which include analysis of the crime at issue, the threat posed by a suspect and any attempt by the suspect to evade or resist arrest. *See id.* If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. *See id.* "[T]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier v. Katz,* 533 U.S. 194, 205 (2001), overruled on other grounds, *Pearson, supra:*

> It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Id.* Indeed:

> [O]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution. Yet, even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, *Anderson [v. Creighton,* 483 U.S. 635 (1987) ] still operates to grant officers immunity for reasonable mistakes as to the legality of their actions.

*Id.* at 206 (emphasis added).

In the circumstances presented to defendant Corbett who was asked to attempt to calm plaintiff who was threatening to pull out his catheter which medical personnel said could cause him to bleed to death, he was justified in using a degree of force to prevent plaintiff from harming himself. However, Lt.

Corbett averred that no such force was necessary and that the spilled milk was simply an accident. While plaintiff's 50–H testimony indicated that defendant Corbett intentionally spilled milk and food on him, the Court's conclusion that no cause of action lies here is confirmed by the "uncontested fact that the force was not so excessive that [plaintiff] suffered hurt or injury." *See Saucier, supra,* 533 U.S. at 208.

At the very least, defendants Buttofocco and Smith have established that reasonably competent police officers could disagree on the question of excessive force in this case. Based thereupon, the motion by defendants to dismiss plaintiff's claim of excessive force on the alternative ground of qualified immunity must be granted.

E. State Law Claims

1. Battery

 **\*12** Defendants assert that plaintiff's cause of action for battery is barred by the statute of limitations. The normal statute of limitations for battery is one year. *See* N.Y. C.P.L.R. § 215(3). However, in this case, the defendant is a municipal subdivision so the one-year period is extended per General Municipal Law by 90 days. *See* N.Y. Gen. Municipal Law 50–i. Thus, plaintiff was required to file his complaint within one year and ninety days from the date the alleged battery occurred. Here, plaintiff testified at his 50–H hearing that the battery occurred on the "day that [he] got the shunt put in [his] neck," which his medical records establish was May 21, 2009. Plaintiff testified that the incident with Lt. Corbett happened "as soon as he returned from the hospital," for the outpatient procedure. Plaintiff filed his Summons and Complaint in New York Supreme Court for Saratoga County on August 26, 2010. Accordingly, plaintiff's complaint was filed one year and 96 days after the alleged battery occurred. As such, the Court agrees his action for battery is time-barred as a matter of law and must be dismissed.

2. Negligence

Plaintiff claims that defendants were negligent in failing to address his medical needs at SCCF in three ways: first, that they ignored refused to follow the dietary restrictions set by his nephrologist, Dr. Daoui; second, that they failed to timely address his A.V. fistula; and third, that they refused to allow him to shower following his catheter surgery which

resulted in a septic infection. Fatal to plaintiff's claims is the absence of any expert medical evidence submitted in support of thereof. "Whether the claim is grounded in negligence or medical malpractice, '[w]here medical issues are not within the ordinary experience and knowledge of lay persons, expert medical testimony is a required element of a *prima facie case* ' " *Myers v. State of New York,* 46 A.D.3d 1030, 1031 (3d Dep't 2007) (citing *Tatta v. State of New York,* 19 A.D.3d 817, 818 (3d Dep't 2005), *lv. denied* 5 N.Y.3d 712 (2005) quoting *Wells v. State of New York,* 228 A.D.2d 581, 582 (2d Dep't 1996), *lv denied* 88 N.Y.2d 814 (1996); *see Trottie v. State of New York,* 39 A.D.3d 1094, 1095 (3d Dep't 2007)). In *Myers,* the claimant inmate contended that medical personnel at the Sullivan Correctional Facility erred in the treatment of his knee injury by delaying necessary surgery. 46 A.D.3d at 1030. Specifically, the claimant alleged that he was required to undergo physical therapy, which he contended worsened his condition, instead of knee surgery, despite the medical personnel's knowledge that he had a foreign object lodged in his knee. *See id.* Following a trial, at which claimant was his only witness, the Court of Claims, in a written decision, dismissed the claim. *See id.* at 1030–31.

Plaintiff's claims of medical negligence are likewise subject to dismissal. Setting aside the proof offered by SCCF that its treatment of plaintiff was entirely reasonable and within the standards of care established by his own specialists, plaintiff has offered no expert medical evidence demonstrating that SCCF deviated from accepted standards of medical care and treatment in this case. Based thereupon, his claims of negligence or malpractice must be dismissed.

III. CONCLUSION

 **\*13** Based on the foregoing, it is therefore

ORDERED that defendants' motion for summary judgment (Dkt.# 24) is hereby GRANTED and it is further

ORDERED that the complaint is dismissed in its entirety.

IT IS SO ORDERED.

All Citations

Not Reported in F.Supp.2d, 2013 WL 838284

End of Document

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 27 of 131

2017 WL 986123

2017 WL 986123
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrell K. ELEBY, Plaintiff,

v.

G. SMITH and N. Vevone, Defendants.

Civil Action No. 9:15-CV-0281 (TJM/DEP)

|

Signed January 9, 2016

|

Filed 01/09/2017

**Attorneys and Law Firms**

TERRELL K. ELEBY, 86-A-0908, Sing Sing Correctional Facility, 354 Hunter Street, Ossining, NY 10562, Pro Se.

FOR DEFENDANTS: ERIC T. SCHNEIDERMAN, New York State Attorney General, OF COUNSEL: CHRISTOPHER J. HUMMEL, ESQ., Assistant Attorney General, The Capitol, Albany, NY 12224.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

 **\*1** This is a civil rights action brought by *pro se* plaintiff Terrell Eleby against three individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), one of whom has since been dismissed from the action, pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges that two of the defendants assaulted him in violation of his Eighth Amendment rights, and the third defendant violated his Fourteenth Amendment rights by issuing an allegedly false misbehavior report against him and confining him in the special housing unit ("SHU") at the prison facility in which he was housed.

Currently pending before the court is a motion brought by the remaining two defendants seeking the entry of summary judgment in their favor based upon plaintiff's alleged failure to exhaust available administrative remedies before filing suit. For the reasons set forth below, I recommend that the defendants' motion be granted.

I. BACKGROUND [1]

[1]
In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

Plaintiff is a prison inmate currently held in the custody of the DOCCS. *See, e.g.*, Dkt. No. 29-2 at 13. Although plaintiff is now confined elsewhere, at the times relevant to this action he was housed in the Auburn Correctional Facility ("Auburn") located in Auburn, New York. *Id.* at 18.

In his complaint, plaintiff alleges that on January 14, 2015, he was waiting in one of Auburn's hospital dormitory rooms to be escorted to an outside facility for a medical examination. Dkt. No. 1 at 4; Dkt. No. 29-2 at 54. At approximately 10:00AM, defendants Smith and Vevone, both of whom are corrections officers, arrived at plaintiff's room to escort him on the medical trip. Dkt. No. 1 at 4. While plaintiff was attempting to remove his clothes for a mandatory strip search, defendant Smith "violently and physically attacked [him]." *Id.*; *see also* Dkt. No. 29-2 at 58. According to plaintiff, both defendants Smith and Vevone "jumped on [his] back," and defendant Smith punched him repeatedly in the eye, head, neck, back, and ribs. Dkt. No. 29-2 at 58, 62-63. After approximately five minutes Sergeant Cudla, who is not a named defendant in the action, arrived at plaintiff's dorm, physically intervened, and ordered defendants Smith and Vevone to cease the assault and leave the room. Dkt. No. 1 at 4-5; Dkt. No. 29-2 at 58-59, 64. As a result of the alleged assault, plaintiff suffered various injuries, including a bloody and swollen eye, swelling and redness to his neck, and sore ribs. Dkt. No. 1 at 5; Dkt. No. 29-2 at 62-63, 67.

Following the use-of-force incident, defendants Smith and Vevone issued plaintiff a misbehavior report accusing him of violating six prison rules. Dkt. No. 22 at 9; Dkt. No. 29-2 at 72. Following a superintendent's hearing to address the charges, plaintiff was found guilty on four of the six counts. Dkt. No. 22 at 13; Dkt. No. 29-2 at 72. As a result of that finding, plaintiff was sentenced to serve thirty days of disciplinary SHU confinement, with a corresponding loss of commissary, package, and telephone privileges. Dkt. No. 22 at 13; Dkt. No. 29-2 at 73-72.

II. PROCEDURAL HISTORY

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 28 of 131

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

 **\*2** Plaintiff commenced this action on or about March 12, 2015, with the filing of a complaint and accompanied by an application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. On May 12, 2015, Senior District Judge Thomas J. McAvoy issued a decision and order granting plaintiff's IFP application and accepting his complaint for filing, with the exception of one cause of action. [2] Dkt. No. 11. In his third cause of action, plaintiff asserted a Fourteenth Amendment claim against defendant Lieutenant Quinn based on the allegation that defendant Quinn "conspire[d] and aided ... in writing a false [misbehavior] report after ascertaining the facts [sic] that [defendants Smith and Vevone] were in the wrong." Dkt. No. 1 at 6. Judge McAvoy dismissed that cause of action for failure to state a cognizable claim pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11 at 9-12.

[2]      Plaintiff's first and second IFP applications were
        denied as incomplete. Dkt. Nos. 4, 7. Following
        those denials, plaintiff filed a third IFP motion, on
        or about April 2, 2015, which was then granted by
        Judge McAvoy. Dkt. Nos. 9, 11.

Following the close of discovery, defendants Smith and Vevone filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint, arguing that plaintiff failed to fully exhaust available administrative remedies before filing this action. Dkt. No. 29-5. Plaintiff has filed a response in opposition to defendants' motion, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

 A. Legal Standard Governing Summary Judgment
Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson*, 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

 B. Plaintiff's Exhaustion of Administrative Remedies
 **\*3** In their motion, defendants contend that plaintiff's complaint is subject to dismissal because plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), prior to commencing this action. *See generally* Dkt. No. 29-5 at 2.

 1. Legal Principles Governing Exhaustion Under the PLRA

The PLRA, which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516,

Case 9:19-cv-01352-GTS-TWD  Document 29  Filed 11/17/20  Page 29 of 131

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, —— Fed.Appx. ——, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [3] *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

[3]   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

New York affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a grievance procedure that is designated as the Inmate Grievance Program ("IGP"). *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") [4] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

[4]   The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal. [5] *Id.* at § 701.5(c)(3)(i), (ii).

[5]   Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of an appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

**\*4**   The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of an appeal. *Id.* at § 701.5(d)(2)(i).

It is worth noting that, as in this case, where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" *Id.* at § 701.8(a). As was noted above, section 701.5(a)(1) provides that, *inter alia*, the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. *Id.* at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." *Id.* at § 701.8(b).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(2); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can —and must—be appealed to the next level ... to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 30 of 131

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA. [6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

[6]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

## 2. Analysis

**\*5** The record now before the court firmly establishes that plaintiff did not exhaust the available administrative remedies in accordance with the PLRA before commencing this action. According to plaintiff, following the alleged assault, he submitted a (1) grievance, [7] (2) letter to the superintendent at Auburn, (3) memorandum to the IGP supervisor at Auburn, and (4) letter to the New York State Inspector General ("IG") complaining of the alleged assault by defendants Smith and Vevone. [8] Dkt. No. 29-2 at 25-26, 39-40, 46-47, 50, 94-99, 104. Plaintiff did not receive any written response to any of his correspondence. Dkt. No. 29-2 at 40-42, 48-49, 51-53. He claims, however, that an officer stationed at Auburn, Sergeant Cudla, conducted an in-person interview of him on January

22, 2015, in connection with the grievance allegedly filed, and the IG's office conducted an investigation that included an interview of plaintiff in or about April 2015. *Id.* at 40-42, 48-49, 51-53. He also contends that he spoke directly to Deputy Robisson, the Deputy of Superintendent for Security at Auburn, regarding the assault. *Id.* at 31-32, 47-48, 100.

[7]    Aside from plaintiff's testimony at his deposition, there is no record evidence to support his allegation that he filed a grievance in accordance with the IGP. *See, e.g.*, Dkt. No. 29-3 at 4; Dkt. No. 29-4 at 2.

[8]    In or about 2014 the DOCCS Office of Special Investigations assumed the role previously played by the IG, including investigating complaints regarding prison conditions. *See* DOCCS Directive No. 0700, available at http://www.doccs.ny.gov/Directives/0700.pdf.

Notwithstanding the fact that he did not receive a written response to any of his correspondence regarding the alleged assault, plaintiff admittedly neglected to appeal the lack of a response to the next level of the IGP. *Id.* at 48-51. Because the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance, plaintiff should have appealed to the superintendent and/or the CORC when he failed to receive a written response to the grievance he allegedly filed. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano*, 604 Fed.Appx. 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ..., if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy." (quotation marks, alteration, citation, and footnote omitted)). The record in this case shows, without contradiction, that while plaintiff appealed other grievance denials to the CORC, he did not do so in connection with defendants' alleged assault. Dkt. No. 29-3 at 4. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA.

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 31 of 131

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

Liberally construing plaintiff's response to defendants' pending motion, he contends that he fully exhausted administrative remedies before commencing this action because his grievance involved allegations of employee harassment, and, consequently, by sending his letter directly to the superintendent he satisfied the requirements of the IGP. Dkt. No. 31 at 5. The IGP, however, clearly mandates that even those grievances complaining of employee harassment must be filed with the IGP clerk, who then must forward the grievance to the superintendent on the day of receipt. 7 N.Y.C.R.R. § 701.8(a). Writing and sending a letter directly to a superintendent does not satisfy the IGP. *See Dabney,* 604 Fed.Appx. at 3 ("The IGP also has an expedited process for harassment grievances, which pertains to employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." (quotation marks, citations omitted)); *see also Lopez v. Bushey,* No. 11-CV-0418, 2014 WL 2807532, at *9 (N.D.N.Y. Apr. 7, 2014) (Dancks, M.J.) ("If the grievance involves a claim of misconduct by staff, harassment or discrimination, it receives a code of 49.... [T]he grievance is handled expeditiously by passing through the IGRC and going directly to the superintendent of the facility.").

**\*6** Plaintiff next argues that he appealed the disciplinary hearing determination related to the misbehavior report he was issued, following the alleged assault by defendants Smith and Vevone, on January 14, 2015. Dkt. No. 31 at 3. Appealing a disciplinary hearing determination, however, is no substitute for filing and pursuing to completion a grievance through the IGP. [9] *See, e.g., McCoy v. Goord,* 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003).

[9]     In any event, plaintiff's appeal of the disciplinary hearing determination does not complain of excessive force used by defendants Smith and Vevone. Dkt. No. 22 at 22-23. Instead, plaintiff argued on appeal that the hearing determination was based on insufficient evidence. *Id.* Accordingly, even assuming the appeal from the disciplinary hearing could act as a substitute for filing and pursuing a grievance through the IGP, plaintiff's appeal did not place prison officials on notice of his complaints of excessive force because he did not raise them in his appeal. *Id.*

Plaintiff also "asserts ... that the defendants hinder[ed] [his] complaint from reaching the CORC and from being properly filed with the IGRC." Dkt. No. 31 at 5. While I am mindful of my obligation to draw all inferences in favor of the non-moving party on summary judgment, *Terry,* 336 F.3d at 137, this conclusory allegation is not supported by any record evidence. Indeed, plaintiff sets forth this contention in an unsworn memorandum of law, which is decidedly not evidence. *See Giannullo v. City of N.Y.,* 322 F.3d 139, 142 (2d Cir. 2003) ("In support of the assertion that the police had received complaints of drug activity in the area, the district court cited, not to admissible evidence, but to the defendants' memorandum of law, which is not evidence at all."). In any event, even assuming plaintiff's contention constitutes competent evidence, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corrs.,* 84 F.3d 614, 619 (2d Cir. 1996). At his deposition in this matter, plaintiff unequivocally testified that he did not file an appeal of his grievance to the CORC. Dkt. No. 29-2 at 49-51. He now attempts to create a dispute of fact by arguing that defendants thwarted his appeal from reaching the CORC. Dkt. No. 31 at 5. This he cannot do. *Hayes,* 84 F.3d at 619.

Finally, to the extent plaintiff contends that his letter to the IG and any subsequent investigation constitutes exhaustion under the PLRA, plaintiff is incorrect. *See, e.g., Goodson v. Silver,* No. 09-CV-0494, 2012 WL 4449937, at *9 (N.D.N.Y. Sept. 25, 2012) (Suddaby, C.J.) ("[A]n IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement[.]" (citing cases)).

In summary, because plaintiff admittedly failed to pursue a grievance filed under the IGP to completion by filing an appeal to the CORC, and because he has failed to set forth any evidence that the IGP was rendered unavailable to him, I recommend that defendants' motion be granted.

## IV. SUMMARY AND RECOMMENDATION

Plaintiff's remaining cause of action alleges that defendants Smith and Vevone applied excessive force against him on January 14, 2015. Although plaintiff alleges that he filed various written documents—including a grievance in accordance with the IGP—complaining of defendants' use of force, he admits that he did not pursue the matter through the IGP by seeking review of his grievance by the CORC, as required under the available grievance program. Accordingly, it is respectfully

2017 WL 986123

**\*7** RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 29) be GRANTED and that plaintiff's complaint in this matter be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

[10]   If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 986123

---

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

 © 2020 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment
Clarified on Denial of Reconsideration by   *Crichlow v. Fischer,*   W.D.N.Y.,
March 26, 2018

2017 WL 920753
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Kevin Damion CRICHLOW, Plaintiff,

v.

Brian FISCHER et al., Defendants.

6:15-CV-06252 EAW

|

Signed March 7, 2017

**Attorneys and Law Firms**

Kevin Damion Crichlow, Romulus, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office
Department of Law, Rochester, NY, for Defendants.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, United States District Judge

**INTRODUCTION**

 *1  Plaintiff Kevin Damion Crichlow ("Plaintiff") filed this
action pursuant to 42 U.S.C. § 1983 in the Southern District
of New York on October 16, 2012. (Dkt. 2). Plaintiff filed
an amended complaint seeking relief against 136 Defendants
on June 17, 2013. (Dkt. 12). The action was transferred to
this Court on April 28, 2015. (Dkt. 168). The action was
then severed by this Court on February 10, 2017. (Dkt. 223).
Following severance, 35 Defendants (together "Defendants")
remain. (*See id.* at 5-6).

Presently before the Court are: Defendants' motion for
summary judgment (Dkt. 177); Plaintiff's motion for
discovery (Dkt. 182); Plaintiff's motion to appoint counsel
(Dkt. 182); Plaintiff's motion for a stay (Dkt. 182); Plaintiff's
motion for a medical exam (Dkt. 187); Plaintiff's motion for
reconsideration (Dkt. 192); Plaintiff's motion to amend (Dkt.
192); Plaintiff's motion for a hearing (Dkt. 192); Defendants'
motion for sanctions (Dkt. 195); and Plaintiff's motion for
sanctions (Dkt. 198).

For the reasons stated below, Defendants' motion for
summary judgment is granted in part and denied in part;
Plaintiff's motion for discovery is denied without prejudice;
Plaintiff's motion to appoint counsel is denied without
prejudice; Plaintiff's motion for a stay is denied without
prejudice; Plaintiff's motion for a medical exam is denied;
Plaintiff's motion for reconsideration is denied; Plaintiff's
motion to amend is denied as moot; Plaintiff's motion for a
hearing is denied; Defendants' motion for sanctions is denied
without prejudice; and Plaintiff's motion for sanctions is
denied.

**I. Plaintiff's Allegations**

Plaintiff's amended complaint spans 142 pages. (*See* Dkt.
12). Following severance of the action into three separate
parts, this Court retained Plaintiff's claims in which he asserts
violations of his constitutional rights by Defendants relating
to Plaintiff's incarceration at the Wende Correctional Facility
("Wende") and treatment at Wyoming Community Hospital.
(*See* Dkt. 223).

Plaintiff alleges actions occurring at Wende beginning on or
about September 27, 2008—the date Plaintiff was transferred
to Wende—through his transfer to Eastern Correctional
Facility on November 16, 2010. (*See* Dkt. 12 at 14-36; Dkt.
12-1 at 1-12).

Plaintiff alleges inadequate or nonexistent medical care
throughout his incarceration at Wende, in violation of the
Eighth Amendment. Plaintiff argues that he was not provided
mental health treatment as required (Dkt. 12 at 19), and that
he was "unreasonably exposed to infectious disease" (*id.* at
25, 36; Dkt. 188 at 35-36, 38-39). Plaintiff alleges deficient
dental care from "2008 into 2013 at 3 [New York Department
of Corrections and Community Supervision] prisons." (Dkt.
12 at 36). He contends he was not provided care for "alot of
pain hip, jaw, hand, tooth's also need replacement of four's
lost teeths & restoration of function and 'oral surgery &
periodontics.' " (*Id.* at 31; *see, e.g.,* Dkt. 12-1 at 1). Plaintiff
further alleges that he was denied dental care at Wende on
June 30, 2008, to fix a "broken jaw." (Dkt. 12 at 36). As
to his medical care, Plaintiff states that Defendant George
Boucher, M.D., was grossly negligent in misdiagnosing an
injury to Plaintiff's hand, which led to Plaintiff's receiving
the "wrong surgery" on January 13, 2010. (Dkt. 12-1 at 2).
Plaintiff complains that he was denied treatment for "injuries
hip, back, shoulder, head" for "about 68 months." (*Id.* at 3).
Plaintiff also asserts that he was subjected to a risk of disease

2017 WL 920753

due to asbestos in Wende. (Dkt. 12 at 21-24, 31; Dkt. 188 at 35).

**\*2** Plaintiff also charges he was deprived of adequate nutrition and hygiene while incarcerated at Wende. Plaintiff claims that from April to September 2009, Defendants C.O. Bartels and C.O. Kevin Barlow "routinely deprived [Plaintiff] ... meaningful opportunities for yard, food, shower, exercise, adequately nutrition." (Dkt. 12 at 25). He makes similar claims against Defendants C.O. Richard Brooks ("Brooks") (*id.* at 32), and C.O. Alicia Humig ("Humig") (*id.* at 26). Plaintiff complains that he was "taken off" of a mandatory religious diet for months because he was not allowed to go to the mess hall. (*Id.* at 32). Plaintiff also alleges that because he is H.I.V. positive, a nutritious diet is critical to his health, and he was deprived of such a diet. (Dkt. 12-1 at 1, 3). Plaintiff asserts that on November 11, 2009, Humig and Defendant Sergeant Paul Olszewski ("Olszewski") refused to let him out of his cell, and placed him in keeplock for about six weeks. (Dkt. 12 at 32). Plaintiff further alleges that he was refused basic laundry services from 2008 through November 1, 2009. (*Id.* at 27).

Plaintiff complains that Defendant T.M.C. Christopher Zaluski ("Zaluski") and others failed to provide reasonable accommodations for Plaintiff's hearing disability. (Dkt. 12 at 14-16; Dkt. 12-1 at 1). Plaintiff alleges that he was in New York Department of Corrections and Community Supervision ("DOCCS") custody for six months before receiving hearing aids. (Dkt. 12 at 30; Dkt. 12-1 at 1). He also claims that he was denied equal access to opportunities and recreation in Wende because of his hearing disability, and that the failure to accommodate his hearing disability was retaliation for his standing up for himself and other disabled inmates. (Dkt. 12 at 33-35; Dkt. 12-1 at 11-12).

Plaintiff claims he was harassed and verbally abused while at Wende. He alleges numerous instances of sexual harassment by Defendant C.O. Attea, and states that he reported such harassment to others, including the superintendent of Wende. (*Id.* at 17-18, 19, 31). Plaintiff claims that on June 18, 2010, Brooks verbally abused and threatened Plaintiff. (Dkt. 12-1 at 8-9). Plaintiff asserts C.O. Corey Petties verbally abused and threatened Plaintiff on July 12, 2010. (*Id.* at 9-10). Plaintiff alleges that DOCCS has a "common practice to encourage and further its employee's, and officers discrimination and harassment and assault and [deprivation] of proper nutrition." (Dkt. 12 at 20).

Plaintiff also raises Fourteenth Amendment due process claims. Plaintiff complains of unspecified disciplinary proceedings that led a total of 180 days of disciplinary confinement between 2008 and 2010. (*Id.* at 29). Plaintiff claims his due process rights were violated because of the handling of "over 150" grievances filed through November 16, 2010, by Defendants Director Karen Bellamy ("Bellamy") and Sergeant William Scott ("Scott"). (*Id.* at 27-30). Plaintiff asserts that he was retaliated against for filing grievances and that no investigations were conducted into his claims. (*Id.* at 28). Plaintiff states that he filed over 300 grievances. (Dkt. 209-3 at 8; *see, e.g.,* Dkt. 211 at 1).

He also alleges that on July 4, 2010, C.O. Hojsan destroyed Plaintiff's legal documents in the Wende law library, thereby depriving Plaintiff of an opportunity to be heard by the courts. (Dkt. 12-1 at 10-11). Hojsan also allegedly denied Plaintiff access to the law library. (*Id.* at 11).

Plaintiff complains that a fire broke out in his cell block on April 12, 2010, and that the correctional officers in the area, including Olszewski, failed to respond to calls for help. (*Id.* at 6-7). Plaintiff claims that he was denied "fresh-air" and was thereafter denied medical care. (*Id.* at 7).

Plaintiff further contends that on some unspecified date Zaluski instructed others not to let Plaintiff out of his cell, in retaliation for Plaintiff's filing of grievances against Zaluski. (Dkt. 12 at 30).

Plaintiff complains that Defendant Brian Fischer ("Fischer") —the commissioner of DOCCS during Plaintiff's incarceration at Wende—knew of constitutional violations against Plaintiff and failed to take action. (Dkt. 12-1 at 4-5). Plaintiff states that he personally sent "several letters" detailing inadequate health care and assault. (*Id.* at 4). Plaintiff also contends that Defendants "disregarded conditions posing an excessive risk to [his] health and safety ...," and that prison staff was inadequately trained. (*Id.*).

## II. Defendant's Motion for Summary Judgment

### A. Standard of Review

**\*3** Federal Rule of Civil Procedure 56 provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most

Case 9:19-cv-01352-GTS-TWD     Document 29     Filed 11/17/20     Page 35 of 131

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)). The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after discovery has occurred. *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.,* 337 F.3d 201, 206 (2d Cir. 2003).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec.,* 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). But, summary judgment is generally not appropriate until after some discovery has occurred. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (stating that summary judgment is appropriate on the proper showing "after adequate time for discovery"); *see, e.g., Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000) ("[S]ummary judgment should only be granted if *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." (emphasis original) (internal quotation marks and citations omitted)). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom,* 201 F.3d at 97; *see also Trebor Sportswear Co. v. The Ltd. Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." (citing *Celotex,* 477 U.S. at 326)).

## B. Statute of Limitations

Defendants argue that some of Plaintiff's claims are time-barred by the statute of limitations. (Dkt. 177-5 at 3). "In [§] 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions....' " *Pearl v. City of Long Beach,* 296 F.3d 76,

79 (2d Cir. 2002) (quoting *Owens v. Okure,* 488 U.S. 235, 249-50 (1989)). A § 1983 action filed in New York is subject to a three-year statute of limitations. *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013).

Here, Plaintiff filed this action October 16, 2012. (Dkt. 1). Therefore, any claim arising before October 16, 2009, is barred by the statute of limitations. Plaintiff points to the "continuing violation doctrine" to save his otherwise time-barred claims. (Dkt. 209-3 at 21-22).

> [The continuing violation doctrine] applies to claims composed of a series of separate acts that collectively constitute one unlawful practice. The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a serial violation, but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment. Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim. A claim will be timely, however, only if the plaintiff alleges some non-time-barred acts contributing to the alleged violation.

**\*4** *Gonzalez v. Hasty,* 802 F.3d 212, 220 (2d Cir. 2015). Although the continuing violation doctrine generally applies to claims "composed of a series of separate acts that collectively constitute one unlawful practice," *id.* at 220, a plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Fahs Constr. Grp., Inc. v. Gray,* 725 F.3d 289, 292 (2d Cir. 2013) (quoting *Harris v. City of N.Y.,* 186 F.3d 243, 250 (2d Cir. 1999)); *see, e.g., Shomo v. City of N.Y,* 579 F.3d 176, 182 (2d Cir. 2009).

Here, Plaintiff alleges four patterns of conduct which occurred both before and after October 16, 2009: (1) denial of adequate medical and dental treatment; (2) denial of adequate nutrition and hygiene; (3) discrimination and failure

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 36 of 131

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

to accommodate based on Plaintiff's disability; and (4) denial of due process rights.

The continuing violation doctrine applies to Eighth Amendment claims for deliberate indifference to medical needs. *See Shomo,* 579 F.3d at 182 ("[T]he continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."). Plaintiff raises a number claims that he was denied adequate medical and dental treatment, which, taken together, could comprise an Eighth Amendment claim for deliberate indifference to serious medical needs. Plaintiff also complains of ongoing deprivations of adequate food and access to showers and laundry. Prison officials' Eighth Amendment obligations require that they "ensure that inmates receive adequate food, shelter, and medical care...." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994).

Defendants argue that Plaintiff failed to allege the existence of a policy of deliberate indifference. (Dkt. 196-2 at 10). The Court disagrees. Plaintiff's amended complaint includes allegations that senior prison officials, including Fischer, knew of ongoing violations related to Plaintiff's inadequate heath care but failed to take action. Plaintiff claims he sent letters to Fischer to point out the inadequacies of his health care at Wende. Plaintiff also attaches a reply letter from Bellamy in which Bellamy states that she is responding to Plaintiff's letters on behalf of "governor Cuomo and Commissioner Fischer." (Dkt. 209-4 at 2). Plaintiff also asserts that the practices complained of "are widespread, longstanding, and deeply embedded in the culture of all [DOCCS] agenc[ies], constitut[ing] unwritten [DOCCS] policies & customs." (Dkt. 12-1 at 5).

Similarly, the amended complaint can be read as alleging a continuing violation as to Defendants' indifference to Plaintiff's nutrition and hygiene needs. Plaintiff alleges that he was routinely deprived of meaningful opportunities to shower and exercise, and was not provided adequate nutrition. (Dkt. 12 at 25; *see, e.g., id.* at 26). Plaintiff states that while he was in keeplock, corrections officers were told not to feed him. (*Id.* at 26). He also claims that he was only allowed to shower six times in a nine-month period, and that "his clothing and linen's [sic] were never laundered." (*Id.* at 27).

Plaintiff's allegations are sufficient to establish a plausible claim of "an ongoing policy of deliberate indifference and acts taken in accordance with that policy." *See Taylor v.*

*Goord,* Civil Action. No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825661, at *7 (N.D.N.Y. Sept. 2, 2010), *report and recommendation adopted by* No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825656 (N.D.N.Y. Sept. 24, 2010). *Cf. Bussey v. Fischer,* Civil Action No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4862478, at *5 (N.D.N.Y. Aug. 1, 2011) (finding a plaintiff failed to allege an ongoing policy of deliberate indifference sufficient to show a continuing violation where the alleged unwritten policy was inconsistent with written policies and requirements), *report and recommendation adopted by* No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4499324 (N.D.N.Y. Sept. 27, 2011). Thus, particularly at this stage of the proceedings, Plaintiff's pre-October 16, 2009, claims as to inadequate medical and dental treatment, as well as inadequate food and hygiene, survive Defendants' statute of limitations defense.

**\*5** Similarly, Plaintiff alleges ongoing discrimination because of his hearing disability in violation of the Eighth and Fourteenth Amendments, as well as the "Rehabilitation Act" and the Americans with Disabilities Act.[1] (Dkt. 12-1 at 1). Plaintiff alleges a pattern of discriminatory conduct, arguing that DOCCS and individual Defendants at Wende failed to accommodate his hearing disability. The last complained-of act of discrimination at Wende occurred on August 18, 2010, well within the three-year statute of limitations. Plaintiff alleges that prison staff at Wende continuously failed to provide him reasonable accommodations, such as providing working hearing aids. Plaintiff also states that other disabled prisoners were not provided reasonable accommodations. Such *pro se* allegations are sufficient, at this stage, to state the existence of an ongoing policy of disability discrimination against Plaintiff.

[1]    Defendants have not made any statute-of-limitations arguments regarding Plaintiff's claims under the Rehabilitation Act or the Americans with Disabilities Act. (*See* Dkt. 177-5 at 3). Thus, the Court only addresses Defendants' statute-of-limitation argument as it relates to Plaintiff's constitutional claims of discrimination under § 1983.

Plaintiff also claims due process violations related to the processing of his grievances and disciplinary hearings. In this context, the continuing violation doctrine does not apply to Plaintiff's Fourteenth Amendment due process claims because "[e]ach decision made without due process is a discrete violation, and the statute of limitations begins to run from the

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 37 of 131

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

date that the plaintiff was denied the full and fair hearing he was entitled to." *Bunting v. Fischer,* 14-CV-0578-RJA-MJR, 2016 WL 4939389, at *3 (W.D.N.Y. Aug. 4, 2016) (citing *Gonzalez,* 802 F.3d at 223), *report and recommendation adopted by* 14-CV-578A, 2016 WL 4804099 (W.D.N.Y. Sept. 14, 2016). Thus, all of Plaintiff's claimed due process violations which occurred before October, 16, 2009, are subject to the statute of limitations and must be dismissed.

In sum, at this stage in the proceedings, Plaintiff's claims of deliberate indifference to medical care, inadequate food and hygiene, and the failure to provide reasonable accommodations for his hearing disability all survive Defendants' statute of limitations challenge. Plaintiff's due process claims which are based on the processing of his grievances and which arose before October 16, 2009, are time barred and must be dismissed.

### C. Failure to Exhaust Administrative Remedies

Next, Defendants argue that many of Plaintiff's claims must be dismissed for failure to exhaust administrative remedies. (Dkt. 177-5 at 4-6). An inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment made in lieu of an answer. *See Crenshaw v. Syed,* 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a summary judgment motion made in lieu of answer where inmate failed to exhaust administrative remedies). Pursuant to 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> To satisfy that requirement, prisoners in New York must ordinarily follow a three-step [DOCCS] grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). In general, it is only upon completion of all three levels of review

that a prisoner may seek relief in federal court under § 1983.

*Crenshaw,* 686 F. Supp. 2d at 236 (citations omitted). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews,* 655 F.3d 89, 96 (2d Cir. 2011). "[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord,* 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003). Pursuant to the Second Circuit's decision in *Hemphill v. New York,* 380 F.3d 680 (2d Cir. 2004), a failure to exhaust administrative remedies may be excused where: "(1) the administrative remedies were not in fact available; [or] (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) 'special circumstances justify the prisoner's failure to comply with administrative procedural requirements.' " *Dabney v. Pegano,* 604 Fed.Appx. 1, 3 (2d Cir. 2015) (quoting *Hemphill,* 380 F.3d at 686). However, the third prong of *Hemphill,* relating to "special circumstances" was abrogated by the Supreme Court's decision in *Ross v. Blake,* 136 S. Ct. 1850 (2016). *Williams v. Corr. Officer Priatno,* 829 F.3d 118, 123 (2d Cir. 2016). The inquiry which used to be under the third prong of *Hemphill,* is now considered "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Id.*

**\*6** Here, Plaintiff claims he filed over 300 grievances, and seems to suggest that this is sufficient to exhaust his administrative remedies. (*See* Dkt. 209-3 at 8; *see, e.g.,* Dkt. 211 at 1). Plaintiff misunderstands the exhaustion requirement. The filing of a grievance is but the first step in exhausting administrative remedies. To exhaust DOCCS administrative remedies, a prisoner must appeal to CORC. Plaintiff's filing of 300 grievances, even if true, is insufficient to exhaust his remedies under § 1997e.

In response to Defendants' assertion that Plaintiff failed to exhaust his administrative remedies for most of his claims, Plaintiff claims that DOCCS lost or destroyed his grievances. (Dkt. 209-3 at 19 (claiming that DOCCS destroyed meritorious grievances); Dkt. 211 at 1 (same)). "Plaintiff's wholly conclusory and unsupported allegations that grievances are tampered with at [Wende] do not create a material issue of fact in this case." *See Mims v. Yehl,* Nos. 13-CV-6405-FPG, 14-CV-6304-FPG, 14-CV-6305-FPG, 2014 WL 4715883, at *4 (W.D.N.Y. Sept. 22, 2014).

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 38 of 131

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

However, Defendants' submissions show that Plaintiff has satisfied the exhaustion requirement for some potential claims. Defendants' sworn declaration from Jeffery Hale—the Assistant Director of the DOCCS Inmate Grievance Program—states that Plaintiff exhausted 25 grievances between the beginning of his incarceration in 2008 and the filing of this action in October 2012. (Dkt. 177-3 at 2). Of those 25 exhausted grievances, 23 relate to Plaintiff's incarceration at Wende. (*See id.* at 5-6). Defendants provide only a printout listing the titles and grievance numbers of the 23 exhausted grievances that arose at Wende (*see id.*); they did not submit any paperwork relating to the grievances themselves or the final resolution of any exhausted grievance. (*See* Dkt. 177).

Plaintiff clearly exhausted some potential claims which could be raised in federal court pursuant to § 1997e. However, the Court cannot determine whether the claims Plaintiff raises in this action are those which have been exhausted because neither party submitted sufficient information which would allow the Court to make such a determination. It is possible that none of Plaintiff's exhausted grievances relate to the named Defendants in this action; it is equally possible that all 23 exhausted grievances relate to actions taken by the named Defendants. Since Defendants seek summary judgment on this basis, it is their burden to establish the lack of any issue of material fact on the exhaustion argument. They have failed to meet this burden. Thus, Defendants' motion based upon Plaintiff's alleged failure to exhaust is denied.

### D. **Plaintiff's Due Process Claims**

Regardless of whether grievances were exhausted or whether the claims were timely asserted, Plaintiff's due process claims relating to disciplinary confinement and grievance processing fail as a matter of law and summary judgment is appropriate.

### 1. **SHU Confinement**

Plaintiff alleges due process claims related to disciplinary proceedings which led to disciplinary confinement. (Dkt. 12 at 29). "[A] prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law." *Aguirre v. Kendra,* 123 F. Supp. 3d 419, 422 (W.D.N.Y. 2015). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life.' " *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). Where a prisoner alleges that he was confined to the Special Housing Unit ("SHU") as the result of a disciplinary hearing, the court considers how long the confinement lasted, along with "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population," in determining whether a liberty interest is implicated. *Vasquez v. Coughlin,* 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir. 1999) (internal citation omitted).

**\*7** There is no "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004). However, the Second Circuit has held that confinement for fewer than 101 days under "normal" SHU conditions does not amount to an atypical and significant hardship and thus does not implicate a liberty interest under the Due Process Clause. *Ortiz,* 380 F.3d at 654-55; *see also Tafari v. McCarthy,* 714 F. Supp. 2d 317, 375 (N.D.N.Y. 2010) (stating that SHU confinements of up to 90 days "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions.' " (quoting *Palmer,* 364 F.3d at 65)).

Here, Defendants argue that none of Plaintiff's disciplinary confinements violated Plaintiff's due process rights. (Dkt. 177-5 at 6-7). Defendants submitted Plaintiff's prison disciplinary record. (*See* Dkt. 177-4). The records show Plaintiff was subjected to only one non-time-barred SHU confinement at Wende. (*See id.* at 8). That SHU confinement was for 30 days. (*Id.*). Plaintiff does not argue that the conditions of his confinement were in any way abnormal or atypical. Because Plaintiff's disciplinary confinement fell within the "short" range and did not involve any abnormalities, it did not implicate any liberty interest sufficient to raise a due process violation. Plaintiff's due process claims as to disciplinary confinement at Wende fail as a matter of law.

### 2. **Grievance Processing**

Plaintiff also raises due process complaints about the handling of his grievances. (*See* Dkt. 12 at 27-30; Dkt. 209-2 at 21). It

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 39 of 131

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

is well-established that inmates do not have a protected liberty interest in the processing of their prison grievances. *See Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003). "[Although] there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." *Cancel v. Goord*, No. 00 CIV 2042 LMM, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (internal citations omitted).

Plaintiff has no liberty interest in the prison grievance program. Even if Defendants violated their own procedures in processing Plaintiff's grievances, Plaintiff cannot find relief under § 1983. A prisoner may raise due process claims related to disciplinary hearings. *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 608 (W.D.N.Y. 2015); *Richard v. Fischer*, 38 F. Supp. 3d 340, 358-59 (W.D.N.Y. 2014). However, Plaintiff's allegations here relate only to allegedly faulty grievance processing; Plaintiff makes no allegations of due process violations related to disciplinary hearings. Therefore, these claims fail as a matter of law.

Plaintiff's only claim against Defendants Bellamy and Scott are the due process claims related to the grievance process. Because Plaintiff's claims fail, Defendants Bellamy and Scott must be dismissed from the action.

### E. Retaliation
Finally, Plaintiff alleges that he was retaliated against because he filed grievances. (Dkt. 12 at 28).

> A prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of grievances. Retaliating against inmates for filing grievances by filing false disciplinary reports violates the First Amendment. In fact, our Circuit has held that the filing of a false disciplinary report is a serious enough action that temporal proximity between an inmate grievance and the filing of a report is enough to state a retaliation claim. Accordingly,

> a plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.

**\*8** *Richard v. Fischer,* 38 F. Supp. 3d 340, 358 (W.D.N.Y. 2014) (internal quotation marks and citations omitted). Here, Plaintiff asserts that because of his filing of numerous grievances, unspecified Defendants retaliated by filing false misbehavior reports. (*See* Dkt. 12 at 28). Defendants have not raised any argument related to Plaintiff's retaliation claim. (*See* Dkt. 177-5). Therefore, the Court will not dismiss the retaliation claim.

### F. Summary
For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to Plaintiff's alleged due process claims, but is denied as to Plaintiff's Eighth Amendment claims related to the alleged denial of adequate medical treatment and adequate food and nutrition, and it is also denied with respect to Plaintiff's claims alleging retaliation and the failure to provide reasonable accommodations for Plaintiff's disability.

### III. Plaintiff's Motion for Discovery
Plaintiff moves this Court to open discovery. (Dkt. 182). Plaintiff states that he is "asking for interrogatory answers and other evidence [to] show that the material facts are in dispute." (*Id.* at 2). Plaintiff also states that discovery will allow him to show that he filed "over 300 grievances." (*Id.*).

The Court construes Plaintiff's motion as one under Fed. R. Civ. P. 56(d). In opposing a summary judgment motion, if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

> A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials "must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient."

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 40 of 131

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

*Alphonse Hotel Corp. v. Tran,* 828 F.3d 146, 151 (2d Cir. 2016) (quoting *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir. 1994)).

Here, Plaintiff has not submitted any sworn affidavit or declaration requesting particular information, nor has he described how the material requested is germane to his defense related to the due process claims (the only claims on which the Court has granted summary judgment). As discussed above, the due process claims are barred as a matter of law, and Plaintiff has not made a showing that discovery would alter that conclusion. Therefore, the motion for discovery is denied without prejudice to Plaintiff seeking discovery with respect to the claims that remain.

## IV. Plaintiff's Motion to Appoint Counsel

As part of Plaintiff's motion for discovery, he also moves this Court to appoint counsel "to assist [Plaintiff] in preparing his case...." (Dkt. 182 at 5). Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants, *see, e.g., Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.,* 865 F.2d 22, 23-24 (2d Cir. 1988), and the assignment of *pro bono* counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona,* 737 F.2d 1254, 1260 (2d Cir. 1984). The court must evaluate "the merits of [the] plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir. 1989). Particular attention must be paid to the merits of the plaintiff's claim. *Id.* ("Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." (quoting *Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir. 1986))). Additionally, for prison inmates, the court must also give weight to the plaintiff's lack of practical access to attorneys. *Id.* at 173-74.

**\*9** Plaintiff was in prison when he filed the complaint, and remains in custody. (*See* Dkt. 1; Dkt. 4). Plaintiff has already been granted *in forma pauperis* status in this case. (Dkt. 5). In his *in forma pauperis* motion, Plaintiff stated that he was incarcerated, had not worked in the past 12 months, and did not have any cash or other assets. (Dkt. 4 at 1-2). A prison official certified that Plaintiff's average account balance for the previous six months was $1.07. (*Id.* at 3). Plaintiff has conclusively shown that he is indigent, and has met the threshold test for appointing counsel.

However, the *Cooper* factors all weigh against appointing counsel at this time. Plaintiff's motion papers provide no information suggesting that he attempted to obtain counsel to assist in his case. (*See* Dkt. 182 at 5). As the Second Circuit has noted, "[t]he vast majority of litigation on behalf of personal claimants is financed initially by lawyers who accept the representation for a contingent fee in the expectation of being rewarded by a share of the winnings." *Cooper,* 877 F.2d at 173. In the absence of an affirmative statement by Plaintiff otherwise, the Court assumes that he has not sought an attorney to represent him. This weighs against the appointment of counsel.

The Court also finds that the Plaintiff has failed to show anything more than a remote possibility of success on the merits. Plaintiff's ultimate success on the merits faces significant hurdles, including Defendants' defense that Plaintiff failed to exhaust his administrative remedies. This too weighs heavily against the appointment of counsel.

Balancing the factors set forth in *Cooper,* the Court finds that appointing counsel is inappropriate at this time, and Plaintiff's motion is denied without prejudice.

## V. Plaintiff's Motion for a Stay

Plaintiff moves this Court to stay the action while he undergoes surgery on his wrist, arm, and back. (Dkt. 182 at 6). Plaintiff does not disclose the date of the surgery, or any further information which would allow the Court to evaluate the necessity of such a stay. (*See id.*). Plaintiff has not sufficiently shown a need for a stay in the litigation. Therefore, the motion is denied without prejudice.

## VI. Plaintiff's Motion for a Medical Exam

Plaintiff asks this Court, pursuant to Fed. R. Civ. P. 35, to order a medical examination so that he can access medical care for currently occurring medical issues. (Dkt. 187). Rule 35 permits a court to order "a party whose ... condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody...." Fed. R. Civ. P. 35. "In order to obtain a medical examination under Rule 35, the moving party must establish 'good cause....' " *Kelly v. Times/review Newspapers Corp.,* CV 14-2995 (JMA) (SIL), 2016 WL 2901744, at *1 (E.D.N.Y. May 18, 2016). " 'Rule 35 does not, however, authorize a party to file a motion for his own

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 41 of 131

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

physical examination.' Neither may a plaintiff invoke Rule 35 in order to receive medical care." *Rodriguez v. Conway*, No. 10-CV-6243L, 2011 WL 4829725, at *3 (W.D.N.Y. Sept. 6, 2011) (citations omitted), *affirmed in relevant part by* No. 10-CV-6243L, 2011 WL 4829869 (W.D.N.Y. Oct. 12, 2011).

Here, Plaintiff's current medical condition is not "in controversy." Plaintiff has already submitted records regarding his medical and dental maladies for the time period at issue in this action. (*See* Dkt. 209-5 at 1-27). Defendants have in no way challenged the substance of Plaintiff's claimed medical needs during his incarceration at Wende from 2008 to 2010. Further, Plaintiff cannot use Rule 35 to receive medical care. Therefore, Plaintiff's motion is denied.

## VII. Plaintiff's Motion for Reconsideration

 **\*10**  Plaintiff titles his motion at Dkt. 192 as a "motion for reconsideration," however, he does not point to any order or decision of the Court for which he seeks reconsideration. Although the Court has the inherent power to reconsider and modify interlocutory orders prior to the entry of judgment, *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other ... that adjudicates fewer than all the claims ... does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Williams v. Cty of Nassau*, 779 F. Supp. 2d 276, 280 & n.2 (E.D.N.Y. 2011) ("A district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal."), *aff'd*, 581 Fed.Appx. 56 (2d Cir. 2014), Plaintiff has not provided sufficient information to allow the Court to decide his motion. Therefore, Plaintiff's motion is denied.

## VIII. Plaintiff's Motion to Amend

Plaintiff also filed a motion which, in essence, asks the Court to allow Plaintiff to amend his response to Defendants' motion for summary judgment. (Dkt. 192). The Court granted such relief already (Dkt. 208), and Plaintiff already filed amended response papers (Dkt. 209; Dkt. 211). Therefore, Plaintiff's motion is denied as moot because he has already received the requested relief.

## IX. Plaintiff's Motion for a Hearing

Plaintiff further asks the Court to hold a hearing "to cover several issue[s] that Plaintiff [does not] fully[ ] understand." (Dkt. 192 at 3). Plaintiff also seeks scheduling conferences or orders pursuant to Fed. R. Civ. P. 16(b) and

26(f). The Court finds that neither a hearing nor a scheduling order is necessary at this time. If Plaintiff has legal questions, he may retain an attorney or do further legal research to answer those questions. It is not the Court's role to answer such questions. Thus, Plaintiff's motion is denied. Once an answer is filed, the case will proceed to discovery.

## X. Defendant's Motion for Sanctions

Defendants move this Court to impose sanctions on Plaintiff pursuant to Fed. R. Civ. P. 11. (Dkt. 195). Defendants argue that, as part of his response to the motion for summary judgment, Plaintiff filed a grievance exhausted by another inmate, claiming the grievance as one Plaintiff had himself exhausted. (Dkt. 195-2 at 1-2 (citing Dkt. 188-8 at 2)). Plaintiff allegedly did so in an attempt to show that the Jeffery Hale declaration was knowingly false and that Defendants had destroyed Plaintiff's grievances. (*Id.* (citing Dkt. 188 at 12)).

A party or counsel for a party is required by the Federal Rules of Civil Procedure to certify that, to the best of their knowledge, the factual contentions made have evidentiary support. Fed. R. Civ. P. 11(b)(3). Rule 11 allows the court to "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Sanctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (citation omitted). "Further, even when a district court finds a violation of Rule 11, 'the decision whether to impose a sanction is committed to the district court's discretion.' " *Id.* (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)).

Defendants argue that "the only appropriate sanction in this matter is dismissal." (Dkt. 195-2 at 3). The Court disagrees. The grievance at issue relates to a complaint which arose during 2012 and 2013. (Dkt. 188-8 at 2). Even if Plaintiff was the grievant, the grievance itself would be irrelevant to this Court's inquiry into Plaintiff's incarceration conditions from 2008 until 2010. Indeed, the grievance at issue was not taken into account during the Court's review of the motion for summary judgment because it is irrelevant to the time frame at issue. Further, although the filing of false documents in bad faith to a court can, in egregious cases, result in dismissal, *see* *Ceglia v. Zuckerberg*, No. 10-CV-00569A(F), 2013 WL 1208558 (W.D.N.Y. 2013), *report and recommendation*

2017 WL 920753

adopted by 2014 WL 1224574 (W.D.N.Y. 2014), aff'd, 600 Fed.Appx. 34 (2d Cir. 2015), such an extreme sanction is not warranted at this time. However, **Plaintiff is hereby warned that any future violation of Rule 11 may result in dismissal of the action or other appropriate sanctions.**

**\*11**  Defendants' motion is denied without prejudice.

## XI. Plaintiff's Motion for Sanctions

Finally, Plaintiff asks this Court to impose sanctions on Defendants for making materially misleading and false statements to the Court in its response in opposition (Dkt. 174) to Plaintiff's letter motion (Dkt. 172). (Dkt. 198). The Court denied Plaintiff's motion as unrelated to the claims at issue in this action. (Dkt. 176).

Read generously, Plaintiff argues that Defendants' counsel failed to acknowledge in his response that one of the individuals named in the letter motion was also a named Defendant in this action. (See Dkt. 198 at 1-2). Such a misstatement is immaterial and does not warrant sanctions. As Plaintiff failed to assert any material violation of Rule 11, sanctions are inappropriate, and Plaintiff's motion is denied.

## **CONCLUSION**

For the foregoing reasons, the Court

GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment (Dkt. 177);

INSTRUCTS the Clerk of Court to terminate Defendants Bellamy and Scott from this action;

DIRECTS Defendants to answer the complaint within 30 days of the filing of this Decision and Order;

DENIES Plaintiff's motion for discovery (Dkt. 182) without prejudice;

DENIES Plaintiff's motion to appoint counsel (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a stay (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a medical exam (Dkt. 187);

DENIES Plaintiff's motion for reconsideration (Dkt. 192);

DENIES Plaintiff's motion to amend (Dkt. 192) as moot;

DENIES Plaintiff's motion for a hearing (Dkt. 192);

DENIES Defendants' motion for sanctions (Dkt. 195) without prejudice; and

DENIES Plaintiff's motion for sanctions (Dkt. 198).

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2017 WL 920753

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 872491
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Delville BENNETT, Plaintiff,
v.
FLETCHER, et al., Defendants.

No. 9:17-CV-849 (GTS/CFH)
|
Signed 01/16/2020

**Attorneys and Law Firms**

Delville Bennett, c/o BoBo Bergen House, 1173 Bergen Street, Brooklyn, New York 11213, Plaintiff pro se.

OF COUNSEL: DAVID A. ROSENBERG, ESQ., Assistant Attorney General., Attorney General for the, State of New York, The Capitol, Albany, New York 12224, Attorney for Defendants.

**REPORT-RECOMMENDATION AND ORDER** [1]

[1]    This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, U.S. Magistrate Judge

*1  Plaintiff pro se Delville Bennett ("plaintiff"), who was, at all relevant times, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Correction Officer ("C.O.") T.A. Jiguer ("C.O. Jiguer") and C.O. Robert J. McGrath ("C.O. McGrath")—who, at all relevant times were employed at Franklin Correctional Facility ("Franklin")—violated his constitutional rights under the Eighth Amendment. See Dkt. No. 26 ("Amen. Compl.").

Following initial review of plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), Chief District Judge Glenn T. Suddaby dismissed numerous claims and defendants from the action. See Dkt. No. 30 at 24-25. The Court held that the following claims survived *sua sponte* review: plaintiff's (1) Eighth Amendment excessive force claims (a) against C.O. Jiguer related to an incident that allegedly occurred on November 10, 2014, and (b) C.O. McGrath related to incidents that allegedly occurred on February 28, 2015, and August 18, 2016 [2] ; and (2) racial discrimination claims against C.O. Jiguer and C.O. McGrath. See id. at 25.

[2]    The date of this incident is listed as August 19, 2016, in the Court's previous orders. See Dkt. No. 7 at 10, 14, 39; Dkt. No. 30 at 2, 6, 7. However, plaintiff's grievance concerning this alleged incident makes clear that the correct date is August 18, 2016. See Dkt. No. 65-6 at 26. Accordingly, herein, the Court will accept August 18, 2016 as the date of the alleged incident.

Presently pending before the Court is C.O. McGrath's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt. No. 65. Plaintiff opposed C.O. McGrath's motion, see Dkt. No. 71, and C.O. McGrath filed a reply. See Dkt. No. 73. For the reasons that follow, it is recommended that C.O. McGrath's motion be granted.

**I. Background**

**A. Facts** [3]

[3]    Only the facts relevant to plaintiff's claims against C.O. McGrath—the only moving defendant—will be discussed herein. See Dkt. No. 65 at 1.

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. See subsection II.A., infra. At all relevant times, plaintiff was an inmate incarcerated at Franklin. See Amen. Compl. at 4 ¶ 13. [4]

[4]    "Plaintiff was released from DOCCS custody on or about March 14, 2018." Dkt. No. 65-2 at 1 n.1.

**1. February 28, 2015 Incident**

On February 28, 2015, at approximately 1:05 P.M., plaintiff visited the Franklin law library to obtain copies of legal materials. See Dkt. No. 26-1 at 36 ¶ 3. C.O. Gumbus [5] asked plaintiff which materials he wanted copies of and for his copy card. See Dkt. No. 65-4 at 218. In reply, plaintiff stated, in a

loud voice, "I don't want you to make the copies, I want one of the [c]lerk's [sic] to make my copies. I'm a grown ass man, and I have a right to speak, so you[‘re going to] hear me." Id. The other inmates present in the law library were "drawn to the commotion that [plaintiff] was" making. Id. C.O. Gumbus instructed plaintiff to exit the law library and to sit on a bench in the hallway until it was time to return to his housing unit. See Dkt. No. 26-1 at 36 ¶ 3; Dkt. No. 65-4 at 75. C.O. Gumbus then "shouted to" C.O. McGrath, who was stationed down the hall, to come down to the law library. Dkt. No. 65-4 at 77.

<sup>5</sup>    C.O. Gumbus was terminated as a party to this action pursuant to the Court's June 2018 Order on initial review of the Amended Complaint. See Dkt. No. 30 at 24.

**\*2** Plaintiff states that while he was waiting on the bench, he "overheard [C.O.] McGrath" tell another correction officer that plaintiff was "a cock sucker mother fucker [who] just can[’]t get it, ... he should be charge[d] with threats, creating a disturbance[,] and direct order." Dkt. No. 26-1 at 35-36 ¶ 3; see Dkt. No. 65-4 at 78. According to plaintiff, C.O. McGrath "threw [him] up on the wall as if he was frisking [plaintiff] for no reason." Dkt. No. 65-4 at 81. Plaintiff also states that C.O. McGrath commented, "I kn[e]w that I would catch you again mother fucker, ... called the [s]ergeant[,] put [plaintiff] on the wall and said ‘if you were not that old I would send you to the infirmary and hit [you] four ... times to the equivalent of [your] age in [your] short ribs[,] and [told plaintiff] that [he was] on full bed." Dkt. No. 26-1 at 36 ¶ 4; see Dkt. No. 65-4 at 78, 80, 87-88.<sup>6</sup> Plaintiff understood C.O. McGrath's statements to mean that "he would [have] attack[ed plaintiff] physically, sadistically," "[i]f [plaintiff] wasn't so old." Dkt. No. 65-4 at 88.<sup>7</sup> In response to defense counsel's question, "[s]o [C.O. McGrath] did not attack you sadistically?" plaintiff stated "[t]hat's what he said he would—that's [C.O.] McGrath." Id. Further, in response to defense counsel's inquiry, "[d]id [C.O. McGrath] actually do anything else after" making the statement about putting plaintiff in the infirmary if he weren't so old, plaintiff replied "[i]f I can recall, sir, he sent me to the dorm." Id. When asked whether he "sustained any injury" from C.O. McGrath placing him against the wall, plaintiff stated, "[j]ust the roughing up, excessive force, sir." Id. at 93. Plaintiff explained that, following this interaction with C.O. McGrath, he walked, unescorted, back to his dorm. See id. at 89. Plaintiff testified that he suffered "mental anguish," "mental distortion," and had "nightmares" as a result of the alleged

incident on February 28, 2015, and informed medical staff that he had been "handled with force." Id. at 93, 94.

<sup>6</sup>    Plaintiff testified at deposition that being on "full bed" meant being on keep-lock status. Dkt. No. 65-4 at 95.

<sup>7</sup>    Plaintiff was approximately 71 years old at the time of the February 28, 2015 incident. See Dkt. No. 65-2 at 2 n.4.

C.O. Gumbus issued plaintiff a misbehavior report relating to the February 28, 2015 incident, charging him with threats, creating a disturbance, and failing to obey a direct order in violation of DOCCS Rules 102.10, 104.13, and 106.10, respectively. See Dkt. No. 65-4 at 218. Plaintiff filed a grievance concerning this alleged incident, asserting that C.O. McGrath used unprofessional language and assaulted him. See Dkt. No. 26-1 at 34, 35-36. On March 3, 2015, plaintiff was examined by Franklin healthcare personnel. See Dkt. No. 65-4 at 215-16. An Inmate Injury Report was completed, in which plaintiff stated, he suffered an injury on February 28, 2015 at approximately 1:05 P.M. See id. at 215. Under the heading "Inmate's Statement," plaintiff wrote "[h]e hit me 4x right here," and Franklin personnel noted that plaintiff "point[ed] to [his right] rib cage." Id. (parenthesis omitted). The report further states under the caption "[d]escription of the injury," "subjective pain [right] rib cage," "0 marks noted." Id. Moreover, the report notes that no medical services were provided to plaintiff as a result of this examination. See id. at 216.

## 2. August 18, 2016 Incident

On the morning of August 18, 2016, after leaving his cell, plaintiff states that he was walking by C.O. McGrath's post when he was "confronted by [C.O. McGrath] and without any form of provocation ... immediately with excessive force at the number [three] booth badly beaten up ... with internal body blows." Amen. Compl. at 2 ¶ 5; see Dkt. No. 65-4 at 102-06. Plaintiff states that C.O. McGrath then brought him "to the ground on his face and inflicted very heavy blows." Id.; see Dkt. No. 65-4 at 111-12. Plaintiff testified at deposition that he did not recall whether C.O. McGrath said anything to him during this alleged assault. See Dkt. No. 65-4 at 107. On August 26, 2016, plaintiff filed a grievance concerning the alleged August 18, 2016 incident in which he asserted that C.O. McGrath "started cursing a lot of profanities," "threw [plaintiff] on the frisking wall with excessive force, then

kicked him to the ground on his face[,] kneeled on his back[,] applied [hand]cuffs," and again "started to kick [him] several times with a lot of body blows." Dkt. No. 65-6 at 26. The superintendent denied plaintiff's grievance on September 27, 2016. See id. at 28; Dkt. No. 26-1 at 34. The superintendent observed that plaintiff "was evaluated by medical staff and did not have any injuries" and that C.O. McGrath "issued [him] a [m]isbehavior [r]eport" as a result of the incident. Id.; Dkt. No. 26-1 at 34. The Appeal Statement on the Inmate Grievance Program (IGP) form ("form 2133") concerning the August 18, 2016 incident was left blank. See Dkt. No. 65-6 at 28; Dkt. No. 26-1 at 34.

### B. C.O. McGrath's Motion for Summary Judgment

#### 1. August 18, 2019 Incident

**\*3** C.O. McGrath first contends that plaintiff's Eighth Amendment excessive force claim against him relating to the alleged August 18, 2016 incident must be dismissed because plaintiff failed to exhaust administrative remedies. See Dkt. No. 65-2 at 8-10. In support of this contention, C.O. McGrath offers the declaration of Judy Tavernier ("Tavernier"), Franklin IGP Supervisor ("IGPS"), who states that, in her role "[a]s the IGPS, [she] is fully familiar with the procedures followed in processing inmate grievances at Franklin" and that, "[a]mong [her] duties as IGPS at Franklin, [she is] responsible for maintaining the grievance records filed by inmates at Franklin." Dkt. No. 65-6 at 2 ¶ 4. Tavernier declares that the IGP policies and procedures are contained in 7 N.Y.C.R.R. 701 *et seq.* and DOCCS Directive No. 4040, which are both available at the Franklin law library, and are attached to her declaration. See id. at 2 ¶ 5; see id. at 7-24. Tavernier states that she "conducted a thorough search of Franklin's grievance records to determine if [he] appealed [his] grievance about the alleged use of force by [C.O.] McGrath on August 18, 2016." Dkt. No. 65-6 at 4 ¶ 14. Tavernier notes that, "[i]f [plaintiff] had returned form 2133 to ... appeal the [s]uperintendent's determination of [his August 26, 2016 grievance], the original would be in his grievance file." Id. at 5 ¶ 18. However, Tavernier states, "[n]o such document is in [plaintiff's] grievance file." Id. Therefore, Tavernier concludes, "[i]nsofar as [p]laintiff never returned form 2133 with a signature and explanation that he wished to appeal, he did not appeal the [s]uperintendent's determination to CORC." Id. at ¶ 20. In further support, defendants observe that the Appeal Statement contained on plaintiff's form 2133 related to his August 26, 2016 grievance,

is blank and unsigned. See Dkt. No. 65-2 at 10; Dkt. No. 65-6 at 28; Dkt. No. 26-1 at 34.

C.O. McGrath also proffers the sworn declaration of Rachael Seguin ("Seguin"), Assistant Director of DOCCS IGP. See Dkt. No. 65-7 at 1 ¶ 2. Seguin states that her "duties and responsibilities include maintaining records of appeals of grievances filed by inmates" and that she "oversee[s] records that DOCCS maintains of appeals received by the Central Office Review Committee ("CORC"), which is the final level of administrative review in the DOCCS [IGP]." Id. Seguin declares that "[w]hen an inmate appeals a grievance to CORC, DOCCS Directive [No.] 4040 stipulates that it is [d]epartment policy to maintain grievance files and logs for the current year and the previous four calendar years," and that "CORC [also] maintains files of grievance appeals to CORC in accordance with the directive." Id. at 4 ¶ 12. "In fact," Seguin explains, "the CORC computer database" maintains "records of appeals of grievances received from [IGP] since the 1990s." Id. In addition, Seguin explains that, "DOCCS policies and procedures regarding the IGP are set forth in [7 N.Y.C.R.R. § 701 et seq.] and mirrored in DOCCS Directive [No. 4040]," which "is available in the [l]aw [l]ibrary at every DOCCS correctional facility (and was so available at all times relevant to this action.)." Id. a 1-2 ¶¶ 4,5.

Moreover, Seguin declares that "[c]omplaints or issues such as those" described by plaintiff concerning C.O. McGrath's alleged August under 18, 2016 assault "are the proper subject for a grievance under DOCCS grievance procedures." Dkt. No. 65-7 at 3 ¶ 11. Seguin states that "a diligent search of CORC records ... for appeals received from facility-level grievance determinations for plaintiff" revealed that "CORC did not receive any appeal from plaintiff regarding [his] grievance ... alleging that [C.O.] McGrath assaulted him at Franklin on August 1[8], 2016." Id. at 4 ¶¶ 15, 16. Attached to Seguin's declaration is the "computer printout from the CORC database reflecting the results of [her] search." Id. at ¶ 15; see id. at 8. Seguin notes that, "[a]lthough CORC ... received over 40 grievances from plaintiff while he was incarcerated at Franklin and other facilities ..., CORC did not receive any appeals from him or any grievances he initially filed at the facility level between July 2016 and December 2016." Id. at 5 ¶ 17. Thus, Seguin concludes, "plaintiff did not appeal to CORC regarding the alleged incident involving [C.O.] McGrath on August 1[8], 2016." Id. at ¶ 18.

Bennett v. Fletcher, Slip Copy (2020)

2020 WL 872491

### 2. February 28, 2015 Incident and
### Plaintiff's Racial Discrimination Claims

C.O. McGrath contends that plaintiff's Eighth Amendment excessive force and racial discrimination claims based on the alleged February 28, 2015 incident must be dismissed because plaintiff has failed to establish that C.O. McGrath used improper force against him or used racial slurs. See Dkt. No. 65-2 at 10-12. In support of this contention, C.O. McGrath points to plaintiff's deposition testimony in which plaintiff stated only that, on February 28, 2015, C.O. McGrath placed him against the wall in a frisk position and that plaintiff walked, unescorted, back to his dorm immediately after speaking with C.O. McGrath. See id. at 12; see Dkt. No. 65-4 at 89. Moreover, C.O. McGrath notes, although plaintiff alleges that C.O. McGrath placed him against the wall, he does not explain what, if any, force was used, and does not allege that he suffered physical injury as a result thereof. See Dkt. No. 65-2 at 12. Furthermore, C.O. McGrath argues that plaintiff's allegation that C.O. McGrath made hypothetical threats against him on February 28, 2015, is insufficient to support his claim for excessive force because "verbal threats 'do not amount to violations of constitutional rights.' " Id. at 13 (quoting Malsh v. Austin, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)) (additional citations omitted).

*4  In further support of his arguments, C.O. McGrath proffers his own sworn declaration in which he states that, "[o]n February 28, 2015, [he] assisted another [C.O.] when [p]laintiff was creating a disturbance and disobeying orders in the [l]aw [l]ibrary at Franklin," and declares that he "did not strike [p]laintiff, ... did not use any manner of physical force on him, and ... did not threaten him." Dkt. No. 65-5 at 2 ¶ 9. In addition, C.O. McGrath declares that he "never use[s] vulgar or racist language when talking to inmates, and ... did not do so on February 28, 2015, August 19, 2016, or at any other time." Id. at ¶ 10. Thus, C.O. McGrath posits, plaintiff's excessive force and racial discrimination claims relating to the alleged February 28, 2015 incident must be dismissed.

### C. Plaintiff's Response

Plaintiff contends that his response, which he styles as a "motion," "is being submitted ... to dismiss any and every summary judgment [in] connection to the [present] case." Dkt. No. 71 at 1. [8] Without once specifically mentioning C.O. McGrath, plaintiff argues only that "[d]efendants have

violated the law by using physical force against [him] without need or provocation ... maliciously, sadistically, assault and battery, constituted cruel and unusual punishment." Id. at 2. In addition, plaintiff states that he is currently suffering permanent injuries and uses a walker and a cane. See id.

[8]    Although plaintiff styled his response as a "motion," the Court will treat this pro se submission as only an opposition to C.O. McGrath's motion for summary judgment, as "plaintiff makes no argument and provides no evidence that suggests that a motion for summary judgment in [his] favor ... is warranted (or even sought)." Cotz v. Mastroeni, 476 F. Supp. 2d 332, 354 (S.D.N.Y. 2007).

### D. C.O. McGrath's Reply

In reply, C.O. McGrath contends that plaintiff's response "fails to address any of the legal arguments supporting the granting of summary judgment ..., let alone raise any genuine issues of material fact." Dkt. No. 73 at 1. Accordingly, C.O. McGrath "rests on the arguments set forth in his [m]emorandum of [l]aw" in support of his motion for summary judgment. Id. In addition, C.O. McGrath argues that, due to plaintiff's failure to submit a proper response, including his failure to respond to C.O. McGrath's statement of material facts, "the Court should deem the facts contained in [C.O. McGrath's] Local Rule 7.1(a)(3) statement as having been admitted." Id. [9]

[9]    In support of his motion, C.O. McGrath filed a Statement of Material Facts in compliance with N.D.N.Y.L.R. 7.1(a)(3), which provides, in relevant part, "WARNING: If you do not submit a proper response to the defendants' statement of material facts, **the Court may deem you to have admitted the defendants' factual statements**," and "[i]f you do not file a proper response to this motion, the Court may grant the motion **and dismiss some or all of your claims**." Dkt. No. 65 at 3; see Dkt. No. 65-1. Plaintiff's response does not include a statement of material facts and fails to address the legal arguments raised in C.O. McGrath's motion. See Dkt. No. 71. Therefore, notwithstanding plaintiff's pro se status, the Court will "follow the practice of enforcing [N.D.N.Y.]L.R. 7.1(a)(3) and accept the facts set

forth in [d]efendant['s] Material Statement of Facts as uncontroverted to the extent those facts are supported by record evidence." Richard v. LeClaire, 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at *4 (N.D.N.Y. May 6, 2019).

## II. Discussion [10]

[10] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

### A. Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine dispute of material fact by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. Celotex, 477 U.S. at 322, 106 S.Ct. 2548; see FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

 *5  If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Id. at 248, 250, 106 S.Ct. 2505; see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 F.3d 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and cannot rely on "mere speculation or conjecture

as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp. (Motors Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985) (per curium)). Furthermore, "mere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (brackets omitted) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law ....

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally." (internal quotation marks and citations omitted)).

### B. Abandonment of Claims

Bennett v. Fletcher, Slip Copy (2020)

2020 WL 872491

Despite C.O. McGrath's express warning of the consequences of failing to properly respond to his motion for summary judgment, see Dkt. No. 65 at 3, plaintiff did not respond to any of the legal arguments raised in the motion for summary judgment. See generally Dkt. No. 71 at 1-2. Accordingly, plaintiff's claims against C.O. McGrath should be dismissed as abandoned. See Maher v. All. Mortg. Banking Corp., 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (internal quotation marks and citation omitted)); see also Wiggan v. New York City Dep't. of Correction, No. 12-CV-1405 (GBD/HBP), 2014 WL 4631456, at *3 (W.D.N.Y. Sept. 16, 2014) (granting summary judgment and dismissing claims, as abandoned, that a pro se inmate failed to address in response to the defendants' motion for summary judgment); Martien v. City of Schenectady, No. 1:04-CV-679 (FJS/RFT), 2006 WL 1555565, at *2 (N.D.N.Y. June 2, 2006) (deeming abandoned and granting summary judgment in favor of the defendant as to a claim that the pro se plaintiff did not address in response to the defendant's motion for summary judgment). In any event, even if plaintiff had responded to the arguments raised in C.O. McGrath's motion for summary judgment, C.O. McGrath would still be entitled to summary judgment for the reasons that follow.

## C. Exhaustion

**\*6** The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies " 'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " Cucchiara v. Dumont, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *4 (N.D.N.Y. Apr. 26, 2019) (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. See Porter, 534 U.S. at 524, 122 S.Ct. 983. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated." Cuadrado v. Brueault, No. 9:14-CV-1293 (DNH/CFH), 2015 WL 1606178, at *3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (internal quotation marks and citation omitted). Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, in Ross v. Blake, the Supreme Court held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, ––– U.S. ––––, 136 S. Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). Thus, the special circumstances exception previously promulgated by the Second Circuit in Hemphill is no longer consistent with the statutory requirements of the PLRA. See Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

However, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, ––– U.S. ––––, 136 S. Ct. at 1858, 195 L.Ed.2d 117. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end —with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

There is no genuine dispute that, at all relevant times, DOCCS had in place a well-established three-step administrative procedure for inmate grievances known as the IGP. See Dkt. No. 65-6 at 7-24; Dkt. No. 65-7 at 2-3 ¶¶ 7-9; see

2020 WL 872491

also N.Y. COMP. CODES R. & REGS. (7 N.Y.C.R.R.) § 701.5. First, the inmate must file a complaint with an IGP clerk within 21 calendar days of the alleged incident. See 7 N.Y.C.R.R. § 701.5(a)(1). An IGP representative has 16 calendar days to informally resolve the issue. See id. at § 701.5(b)(1). If no informal resolution occurs, the Inmate Grievance Review Committee ("IGRC") must hold a hearing within 16 calendar days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. See id. at § 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. See id. at § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to CORC within seven calendar days after receipt of the superintendent's determination. See id. at § 701.5(d)(1)(i). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty 30 calendar days from the time the appeal was received." Id. at § 701.5(d)(3)(ii).

*7 "Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court." Murray v. Goord, 668 F. Supp. 2d 344, 355-56 (N.D.N.Y. 2009). On a motion for summary judgment, "[t]he defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action." McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017), report and recommendation adopted, No. 9:16-CV-277 (MAD/DJS), 2018 WL 879270 (N.D.N.Y. Feb. 14, 2018).

### 1. Plaintiff Failed to Exhaust his Administrative Remedies

As an initial matter, although plaintiff is no longer incarcerated, the exhaustion requirements apply to his claims because he was incarcerated at the time he filed his lawsuit. See Knight v. Mun. Corp., No. 14-CV-3783 (PAE/JCF), 2016 WL 4017208, at *2 (S.D.N.Y. May 27, 2016), report and recommendation adopted, No. 14-CV-3783 (PAE/JCF), 2016 WL 4030632 (S.D.N.Y. July 26, 2016) (citing Berry

v. Kerik, 366 F.3d 85, 87 (2d Cir. 2004)); McNab v. New York, No. 9:12-CV-26 (GTS/ATB), 2015 WL 13744629, at *5 (N.D.N.Y. Dec. 7, 2015) ("[T]he exhaustion requirement applies to former inmates who commenced the action while still in custody but were released while the action was pending."), report and recommendation adopted sub nom. McNab v. Doe, No. 9:12-CV-26 (GTS/ATB), 2016 WL 324994 (N.D.N.Y. Jan. 27, 2016), aff'd, 686 F. App'x 49 (2d Cir. 2017) (summary order); cf. Greig v. Goord, 169 F.3d 165, 167 (2d Cir. 1999) ("[L]itigants ... who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of § 1997e(a) and, therefore, need not satisfy the exhaustion requirements of this provision." (emphasis added)).

C.O. McGrath has met his burden of establishing that no genuine issue of material fact exists concerning plaintiff's failure to exhaust his administrative remedies with respect to his claims relating to the alleged August 18, 2016 incident. The sworn declarations of Tavernier and Seguin and accompanying exhibits make clear that neither Franklin IGP nor CORC have any record of plaintiff filing an administrative appeal relating to that claim. See Dkt. No. 65-6 at 4 ¶ 14, 5 ¶ 18, 20; Dkt. No. 65-7 at 4 ¶¶ 15, 16-18. Indeed, as C.O. McGrath points out, plaintiff's own documentary evidence demonstrates that he never appealed the superintendent's denial of his August 26, 2016 grievance to CORC, as the Appeal Statement on his form 2133 relating to his that grievance was left blank and unsigned. See Dkt. No. 26-1 at 34. Thus, C.O. McGrath has established that plaintiff failed to exhaust all available administrative remedies with respect to his claims relating to the alleged August 18, 2016 incident by failing to appeal his grievance to CORC. See also Omaro v. Annucci, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well-established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies."). Moreover, plaintiff's conclusory assertion that he "has demonstrated exhaustion" is belied by the record and does not create a genuine issue of material fact. Amen. Compl. at 20 ¶ 61; see Hicks, 593 F.3d at 166. Furthermore, no exception to the mandatory exhaustion requirement applies here. As the record evidence demonstrates, the inmate grievance process, as set forth in 7 N.Y.C.R.R. § 701 et seq. and DOCCS Directive No. 4040, was available to plaintiff at the Franklin law library and plaintiff was well-versed in that process as evidenced by the more than 40 grievances and appeals he filed over the course of his incarceration at Franklin and other DOCCS facilities. See Dkt. No. 65-6 at 2 ¶ 5; Dkt. No. 65-7 at 1-2 ¶¶ 4,5, 5 ¶ 17, 8.

**\*8** Where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired. See Berry v. Kerik, 366 U.S. 85, 87-88 (2d Cir. 2004). However, if a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. See id. at 88; see also Richard v. LeClaire, No. 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at \*9 (N.D.N.Y. May 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice."). Here, more than one year and five months passed between the superintendent's September 7, 2016 denial of plaintiff's grievance and his release on March 14, 2018, during which time plaintiff failed to administratively appeal the superintendent's determination to CORC. See Dkt. No. 26-1 at 34; Dkt. No. 65-2 at 1 n.1. Consequently, dismissal with prejudice of plaintiff's Eighth Amendment excessive force and racial discrimination claims relating to the alleged August 18, 2016 incident is appropriate. See Berry, 366 F.3d at 88 (holding that a former inmate's federal lawsuit was properly dismissed with prejudice where he failed to exhaust available administrative remedies despite being incarcerated "for several months after the onset of the conditions that gave rise to his complaints and prior to release").

Accordingly, in the alternative to dismissal of plaintiff's claims relating to the alleged August 18, 2016 incident as abandoned, it is recommended that these claims be dismissed with prejudice for failure to exhaust available administrative remedies.

### D. Eighth Amendment Excessive Force

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)).

### 1. Excessive Force—February 28, 2015

To establish an Eighth Amendment excessive force claim, a plaintiff must satisfy both objective and subjective elements. See Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). The objective element is "responsive to contemporary standards of decency" and requires a showing "that the injury actually inflicted [is] sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 8, 112 S.Ct. 995 (internal quotation marks and citation omitted); Blyden, 186 F.3d at 262. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Sims, 230 F.3d at 22 (internal quotation marks, alteration, and citation omitted). However, "the malicious use of force to cause harm[ ] constitute[s] [an] Eighth Amendment violation *per se*" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9, 112 S.Ct. 995). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10, 112 S.Ct. 995 (internal quotation marks and citations omitted). "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." Id. at 7, 112 S.Ct. 995.

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citations omitted). Thus, the key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically [to] cause[ ] harm." Hudson, 503 U.S. at 7, 112 S.Ct. 995 (internal quotation marks and citations omitted); see also Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (per curiam) (Observing that the Supreme Court has emphasized that the nature of the force applied is the "core judicial inquiry" in excessive force cases—"not whether a certain quantum of injury was sustained.") (internal quotation marks and citation omitted). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider:

*9 the extent of the injury and the mental state of the defendant[;] ... the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response

Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Here, C.O. McGrath has established entitlement to summary judgment dismissing plaintiff's Eighth Amendment excessive force claim based on the alleged February 28, 2015 incident. Even viewing the evidence in the light most favorable to plaintiff as the nonmoving party, the documentary evidence establishes that, at most, C.O. McGrath used de minimis force on plaintiff when he "threw" plaintiff against a wall in a frisk position after plaintiff caused a disruption and disobeyed orders in the Franklin law library on February 28, 2015. Dkt. No. 65-4 at 81; Dkt. No. 65-4 at 218; see Tavares v. City of New York, No. 08-CV-3782, 2011 WL 5877550, at *6 (S.D.N.Y. Oct. 17, 2011) (holding that a pat frisk where the plaintiff was "forcefully 'compressed' against the wall" was not a violation of the Eighth Amendment and noting that "[c]ourts in this Circuit have routinely found such types of minimal injuries and pain insufficiently serious or harmful to satisfy the objective element of the Eighth Amendment analysis"); Show v. Patterson, 955 F. Supp. 182, 192, 193 (S.D.N.Y. 1997) (finding only de minimis force used where officer "push[ed an inmate against the wall" "immediately following a prison disturbance," which resulted in "no broken bones, bruises[,] or swelling"). Indeed, plaintiff's Inmate Injury Report—which does not name C.O. McGrath—indicates only that plaintiff suffered "subjective injuries" for which he received no medical treatment and sustained no visible marks as a result of the alleged February 28, 2015 incident. Dkt. No. 65-4 at 215; see Show, 955 F. Supp at 193; see also Anderson v. Sullivan, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (granting summary judgment and dismissing an inmate's Eighth Amendment excessive force claim where the inmate had no medically determinable injuries after being pushed into a bar while being restrained). Further, although plaintiff states conclusorily that he suffers

"permanent life injuries" and uses a "walker and cane," Dkt. No. 75 at 2; see Amen. Compl. at 18, "neither his deposition testimony nor any other evidentiary material in the record reveals that as a result of" the alleged February 28, 2015 incident, plaintiff "suffered any physical injury" aside from subjective pain in his ribs—which he in no way attributes to his alleged necessity of using a walker and cane. Wright, 554 F.3d at 270; see Phelps v. Szubinski, 577 F. Supp. 2d 650, 663 (E.D.N.Y. 2008) (granting motion for summary judgment where arestee's excessive force claim was "based on mere speculation [and] conclusory allegations" and there was "no demonstrable physical injury" resulting from the officer's actions). Thus, any injury suffered as a result of the February 28, 2015 incident was de minimis. See Wright, 554 F.3d at 270; see also Wilkins v. Gaddy, 559 U.S. 34, 38, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (noting that an example of de minimis use of force is "[a]n inmate who complains of a push or shove that causes no discernible injury." (internal quotation marks and citations omitted)).

*10 Moreover, aside from plaintiff's conclusory statements that Franklin personnel "us[ed] physical force against [him] without need or provocation ... maliciously, sadistically," Dkt. No. 71 at 1, the record is devoid of evidence indicating that C.O. McGrath used force against plaintiff "maliciously and sadistically [to] cause[ ] harm." Hudson, 503 U.S. at 7, 112 S.Ct. 995 (internal quotation marks and citations omitted). Rather, the evidence establishes, at most, that C.O. McGrath used de minimis force "in a good-faith effort to maintain or restore discipline" after plaintiff caused a disruption and disobeyed orders in the Franklin law library. Id. (internal quotation marks and citations omitted). In opposition, plaintiff's conclusory and self-serving allegations that C.O. McGrath "rough[ed him] up" through the use of "excessive force" are insufficient to raise a genuine issue of material fact. See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case") (internal quotation marks and citation omitted), overruled on other grounds; see also Zembko v. Northwestern Mut. Life Ins. Co., No. 3:05-CV-918 (AHN), 2007 WL 948323, at *4 n.1 (D. Conn. Mar. 26, 2007) ("[A] nonmovant's self-serving conclusory statements that dispute the movant's evidence cannot create material issues of fact to avoid summary judgment." (internal quotation marks and citation omitted)).

In addition, as C.O. McGrath correctly argues, even if C.O. McGrath threatened plaintiff that, but for plaintiff's age,

he would have "sen[t him] to the infirmary and hit [him] four ... times" and used profanities, Dkt. No. 26-1 at 36 ¶ 4, given the absence of physical injury resulting from the alleged February 28, 2015 incident, such " 'verbal threats do not amount to violations of [plaintiff's] constitutional rights.' " Dkt. No. 65-2 at 13 (quoting Malsh, 901 F. Supp. at 763); see also Jermosen v. Coughlin, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under [section] 1983."); Wellington v. Langendorf, No. 9:12-CV-1019 (FJS/DEP), 2013 WL 3753978, at *11 (N.D.N.Y. July 15, 2013) ("It is well-established that mere verbal threats, without more, do not rise to a constitutional claim under 42 U.S.C. § 1983."). Accordingly, it is recommended that plaintiff's Eighth Amendment excessive force claim against C.O. McGrath based on the alleged February 28, 2015 incident be dismissed with prejudice.

### E. Racial Discrimination

"[T]he use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to § 1983." Baskerville v. Goord, No. 97-CV-6413, 1998 WL 778396, at *7 (S.D.N.Y. Nov. 5, 1998). "Where, however, such statements are shown to be connected with physical injury, a § 1983 claim may indeed lie." Id. Here, as C.O. McGrath contends, plaintiff has proffered no factual support to establish that he used any racial slurs or epithets whatsoever. Indeed, plaintiff alleges only that C.O. McGrath was "cursing a lot of profanities" with respect to the August 18, 2016 incident, but explicitly testified at deposition that he did not recall what C.O. McGrath said at that time. Dkt. No. 65-6 at 26; see Dkt. No. 65-4 at 107. Further, plaintiff alleges only that C.O. McGrath used profanity and called him vulgar names during the alleged February 28, 2015 incident, but does not contend that he used racial slurs or epithets at that time and, as discussed above, has failed to prove that those statements were made in connection with any physical injury. See Dkt. No. 26-1 at 34-36; Banks v. Annucci, 48 F. Supp. 3d 394, 406 (N.D.N.Y. 2014) ("Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under Section 1983."). In fact, plaintiff's only allegations concerning the use of racial slurs concern C.O. Jiguer's purported statements in relation to the November 10, 2014 incident, which is not at issue on the present motion and which plaintiff does not allege that C.O. McGrath was involved. See Amen. Compl. at 4,5 ¶¶

14, 15. Accordingly, it is recommended that plaintiff's racial discrimination claims against C.O. McGrath be dismissed.

### III. Conclusion

**\*11 WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that C.O. McGrath's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 65) be **GRANTED** in its entirety and the following of plaintiff's claims be **DISMISSED WITH PREJUDICE** insofar as asserted against C.O. McGrath:

(1) Eighth Amendment excessive force claims; and

(2) Racial discrimination claims, and it is further

**RECOMMENDED**, that the action be **TERMINATED** as to C.O. McGrath, and it is further,

**ORDERED**, that that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72. [11]

[11]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day

that is not a Saturday, Sunday, or legal holiday. <u>Id.</u> § 6(a)(1)(C).

**All Citations**

Slip Copy, 2020 WL 872491

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 871156

2020 WL 871156
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Delville BENNETT, Plaintiff,

v.

Thomas A. JIGUERE, Officer, Franklin
Corr. Fac.; and Robert J. McGrath,
Officer, Franklin Corr. Fac., Defendants.

9:17-CV-0849 (GTS/CFH)
|
Signed 02/21/2020

**Attorneys and Law Firms**

DELVILLE BENNETT, Plaintiff, Pro Se, c/o Bobo Bergen
House, 1173 Bergen Street, Brooklyn, New York 11213.

OF COUNSEL: ERIK BOULE PISONNAULT, ESQ.,
Assistant Attorney General, HON. LETITIA A. JAMES,
Attorney General for the State of New York Counsel for
Defendants, 26 Liberty Street, New York, New York 10005.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* prisoner
civil rights action filed by Delville Bennett ("Plaintiff")
against Thomas A. Jiguere ("Defendant Jiguere") and Robert
J. McGrath ("Defendant McGrath"), are (1) Defendant
McGrath's motion for summary judgment, and (2) United
States Magistrate Judge Christian F. Hummel's Report-
Recommendation recommending that Defendant McGrath's
motion be granted in its entirety and that Plaintiff's
claims against Defendant McGrath be dismissed. (Dkt. Nos.
65, 74.) None of the parties have filed an objection to
the Report-Recommendation, and the deadline by which
to do so has expired. (*See generally* Docket Sheet.)
After carefully reviewing the relevant papers herein,
including Magistrate Judge Hummel's thorough Report-

Recommendation, the Court can find no clear-error in
the Report-Recommendation. [1] Magistrate Judge Hummel
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein, Defendant McGrath's
motion for summary judgment is granted in its entirety, and
Plaintiff's claims against Defendant McGrath are dismissed.

[1]     When no objection is made to a report-
        recommendation, the Court subjects that report-
        recommendation to only a clear error review. Fed.
        R. Civ. P. 72(b), Advisory Committee Notes: 1983
        Addition. When performing such a "clear error"
        review, "the court need only satisfy itself that there
        is no clear error on the face of the record in order to
        accept the recommendation." *Id.*; *see also Batista
        v. Walker*, 94-CV-2826, 1995 WL 453299, at *1
        (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
        permitted to adopt those sections of [a magistrate
        judge's] report to which no specific objection is
        made, so long as those sections are not facially
        erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Hummel's Report-
Recommendation (Dkt. No. 74) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Defendant McGrath's motion for summary
judgment (Dkt. No. 65) is **GRANTED**; and it is further

**ORDERED** that those of Plaintiff's claims in his Second
Amended Complaint (Dkt. No. 26) that are asserted against
Defendant McGrath are **DISMISSED with prejudice**, and
the Clerk of the Court shall **TERMINATE** Robert J. McGrath
as a Defendant in this action.

**All Citations**

Slip Copy, 2020 WL 871156

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

2017 WL 8894723
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alan HAMM, Plaintiff,

v.

M. FARNEY, ASAT Counselor; Gouverneur
Correctional Facility, Defendant.

No. 9:13-CV-1302 (BKS/CFH)
|
Signed 12/21/2017
|
Filed 12/22/2017

**Attorneys and Law Firms**

Alan Hamm, King Boro Men's Shelter, 681 Albany Avenue, Brooklyn, New York, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, OF COUNSEL: KEITH J. STARLIN, ESQ., Assistant Attorney General, The Capitol, Albany, New York 12224, Attorney for Defendant.

**REPORT-RECOMMENDATION AND ORDER** [1]

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

**\*1** Plaintiff pro se Alan Hamm ("plaintiff"), a former inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant John Farney (sued herein as "M. Farney") [2]—who, at all relevant times, was employed at Gouverneur Correctional Facility ("Gouverneur")—violated his constitutional rights under the Fourteenth Amendment, as well as Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Dkt. No. 51 ("Am. Compl."). Presently pending before the Court is defendant's Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56. Dkt. No. 112.

Plaintiff did not file a response. For the following reasons, it is recommended that defendant's motion be granted.

[2] The Clerk of the Court is directed to correct the caption on the docket to reflect John Farney as the proper defendant.

**I. Failure to Respond**

Plaintiff did not oppose defendant's Motion for Summary Judgment and did not ask for an extension of time to respond. Plaintiff was notified of the consequences of failing to respond to a summary judgment motion. Dkt. No. 113. Thus, plaintiff was adequately apprised of the pendency of the motion and the consequences of failing to respond. However, "[t]he fact that there has been no response to a summary judgment motion does not ... mean that the motion is to be granted automatically." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Even in the absence of a response, a defendant is entitled to judgment only if the material facts demonstrate his entitlement to judgment as a matter of law. Id.; FED. R. CIV. P. 56(c). Additionally, "[a] verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist...." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citations omitted). Consequently, the facts set forth in defendant's Rule 7.1 Statement of Material Facts are accepted as true, but only as to those facts that are not disputed by the facts set forth in the verified amended complaint. N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.") (emphasis omitted). Plaintiff and defendant offer similar accounts of the events that transpired, and few facts are in dispute. See Am. Compl., Dkt. No. 112-1.

**II. Background**

**A. Plaintiff's Recitation of the Facts**

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection III.A. infra. Plaintiff alleges that on April 16, 2013, while participating in the Alcohol and Substance Abuse Treatment ("ASAT") program at Gouverneur, ASAT Counselor Mr. Farney reprimanded him for using the restroom, "despite Mr. Farney knowing that [he had] a medical condition that requires [him] to urinate frequently." Am. Compl. at 3-4. Mr.

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 56 of 131

**Hamm v. Farney, Not Reported in Fed. Supp. (2017)**

2017 WL 8894723

Farney directed plaintiff to write an essay as to why it was inappropriate to use the bathroom during class, and recite it aloud during the next class. Id. at 4. If he refused, plaintiff would be removed from the ASAT program. Id. Plaintiff voluntarily removed himself from the ASAT program "as neither of the two options that [Mr. Farney] offered ... would have accommodated [him] for his medical disability." Id. In response to plaintiff's resignation from the program, the Time Allowance Committee ("TAC") rescinded his good behavior allowance (good time credits), and directed that DOCCS hold plaintiff in prison until his maximum expiration date. Am. Compl. at 4.

### B. Defendant's Recitation of the Facts

**\*2** In support of this motion, defendant filed a Statement of Material Facts.[3] On April 16, 2013, plaintiff was enrolled in Gouverneur's ASAT program. Dkt. No. 112-1 ¶ 17. The program consists of a series of "program modules" concerning alcohol and substance abuse, which takes between six and twelve months to successfully complete. Id. ¶¶ 7, 18. Prior to admission, inmates must sign an ASAT Screening Questionnaire. Id. ¶¶ 20, 21 (internal quotation marks and citation omitted). The Questionnaire states that inmates "agree to abide by all the ASAT program policies and procedures." Id. ¶ 22 (internal quotation marks and citation omitted). Plaintiff received and signed the ASAT Screening Questionnaire during his program admission process on February 7, 2013. Id. ¶ 20.

[3]   Local Rule 7.1(a)(3) states:
   Summary Judgment Motions
   Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
   The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying

each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.
   N.D.N.Y. L.R. 7.1(a)(3).

Inmates participating in the ASAT program also must sign a Behavior Contract which "specifically states, in part, that participating inmates must abide by all program policies and procedures; must participate in group sessions in a respectful manner; and that failure to comply with ASAT program policies and procedures will result in disciplinary action which may include dismissal from the program." Dkt. No. 112-1 ¶ 25 (internal quotation marks and citation omitted). The Behavior Contract further mandates that inmates "must be present for all treatment activities and may not leave group ... without permission," as well as "sit in an appropriate and attentive manner in [their] assigned seat." Id. ¶¶ 26, 27 (internal quotation marks and citation omitted). A violation of these procedures and policies "may result in discharge from treatment, disciplinary action, behavioral contracts, learning experiences, pull ups, a referral to Treatment Plan Review Committee, or counseling notifications." Id. ¶ 28 (internal quotation marks and citation omitted). Moreover, if an inmate "refuse[s] or sign[ed] out of treatment, or if [he is] unsatisfactorily discharged from treatment, [he] must wait 30 days from the date of discharge before he can request consideration for readmission." Id. ¶ 29. Plaintiff signed the Behavior Contract. Id. ¶ 28.

Although the Behavior Contract mandated that inmates use the restroom during designated breaks, Mr. Farney allowed participating inmates to use the restroom during class, as long as they asked permission in advance. Dkt. No. 112-1 ¶¶ 30, 31. Before April 16, 2013, on at least one other occasion, plaintiff used the restroom during an ASAT program session without first asking permission. Id. ¶ 40. In response, Mr. Farney verbally warned plaintiff that he needed to ask permission before leaving his seat. Id. ¶ 41. Plaintiff did not mention to Mr. Farney that he had a medical condition that caused him to urinate frequently. Id. ¶ 42. On April 16, 2013, plaintiff again left his seat during the ASAT program session to use the restroom without asking permission. Id. ¶ 43. As not to disrupt an ongoing presentation, Mr. Farney waited until plaintiff returned to his seat to counsel plaintiff, reminding him that

2017 WL 8894723

he needed permission to use the restroom. Id. ¶¶ 43, 44, 47. Pursuant to the ASAT program's standards, policies, and procedures, Mr. Farney issued plaintiff an Inmate Counseling Notification and instructed him to write a five hundred word essay on the importance of respecting others in the ASAT program session. Id. ¶¶ 48, 51. Mr. Farney further instructed plaintiff to recite the essay aloud to the class. Id. ¶ 51. Mr. Farney had assigned such "learning experiences" on "countless" other occasions for the same conduct. Id. ¶ 52. Plaintiff refused to write the essay, and, instead, voluntarily signed a Program Refusal Notification form, effectively withdrawing himself from the program. Id. ¶¶ 54, 55. The Program Refusal Notification form affirmed that plaintiff "acknowledged that he was refusing to participate in the ASAT program, and that he understood that his refusal to participate could result in denial of Parole, the loss of Good Time, denial of Merit Time and/or Earned Eligibility Program certificate and ineligibility for an area of preference transfer." Id. ¶ 56. Mr. Farney also verbally informed plaintiff of the consequences of signing the Program Refusal Notification form. Id. ¶ 57.

**\*3** Plaintiff did not mention a medical condition until after Mr. Farney instructed him to write the essay. Dkt. No. 112-1 ¶ 59. Before April 16, 2013, Mr. Farney did not notice plaintiff using the restroom more frequently than normal, nor did plaintiff provide Mr. Farney or the ASAT staff with documentation of such medical condition. Id. ¶¶ 60, 62.

In April 2013, the TAC reviewed plaintiff's file and determined that he should not be granted three months of good time from his total potential allowance of one year, eight months, and twenty days. Dkt. No. 112-1 ¶¶ 74-75. The Committee based its decision on plaintiff's entire file, as well as his withdrawal from a series of programs, including, in part, the April 16, 2013 withdrawal from the ASAT program. Id. ¶ 76.

### III. Discussion [4]

[4]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

### A. Summary Judgment Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. Id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law...."

2017 WL 8894723

*4  Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

**B. Exhaustion**

As a threshold matter, defendant contends that plaintiff has failed to exhaust his administrative remedies. Dkt. No. 112-21 at 4-11. Plaintiff argues that he exhausted his administrative remedies. Am. Compl. at 6. He contends that despite "foul play" on behalf of the Superintendent and Central Office Review Committee ("CORC"), he sent the grievance office his appeal of the Superintendent's decision to send to CORC, and "the grievance office informed plaintiff that they did not receive [his] appeal." Id. at 25. On April 19, 2013, the Gouverneur Inmate Grievance Review Committee ("IGRC") received plaintiff's April 16, 2013 grievance (GOV-16890-13) about the April 16, 2013 incident in the ASAT program. Dkt. No. 112-1 ¶ 108. The IGRC denied that grievance, and plaintiff appealed the decision to the Superintendent. Id. ¶ 109. On May 6, 2013, the Superintendent upheld the IGRC's denial of grievance GOV-16890-13, and served plaintiff with two copies of that decision. Id. ¶ 110. Plaintiff did not appeal the Superintendent's decision to CORC. Id. ¶ 111.

On November 14, 2014, the IGRC received plaintiff's second grievance (GOV-17852-14) dated November 9, 2014, which claimed that he had tried to appeal grievance GOV-16890-13, and inquired whether he would be permitted to file an appeal of that grievance to CORC. Dkt. No. 112-1 ¶ 113. The IGRC denied plaintiff's grievance and informed him that any appeal of grievance GOV-16890-13 should have been submitted within seven days of the Superintendent's decision. Id. ¶ 114. Plaintiff appealed the decision to the Superintendent. Id. On November 28, 2014, the Superintendent affirmed the IGRC's denial of grievance GOV-17852-14, and served plaintiff with two copies of the decision. Id. ¶ 115. Plaintiff did not appeal the Superintendent's decision to CORC. Id. ¶ 116.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The exhaustion requirement applies "to all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532, 122 S.Ct. 983). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524, 122 S.Ct. 983. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, —— U.S. ——, 136 S.Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).[5]

5    In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S.Ct. at 1858-59).

*5  Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S.Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) ). "Next, an administrative scheme might be so opaque

2017 WL 8894723

that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies?

There is no genuine dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5. [6] Defendant concedes that plaintiff completed the first level of the grievance procedure—filing two grievances with IGRC—which were recorded, assigned grievance numbers, and decided. Dkt. No. 112-13 at 2. Defendant also does not dispute that plaintiff appealed both grievances to the Superintendent. See id. Plaintiff claims that he sent the Gouverneur grievance office his appeal of the Superintendent's decision of grievance GOV-16890-13 "to be processed up to [CORC]," but that the grievance office never received his appeal. Compl. at 6. However, the record establishes that plaintiff failed to submit an appeal of grievance GOV-16890-13 to CORC during the time he was housed in Gouverneur. DOCCS' records provide no evidence of plaintiff's appeal to CORC, even though plaintiff maintains that he filed such appeal. Dkt. Nos. 112-13 at 2; 112-17 at 2-3. Gouverneur's IGP Supervisor Laura Looker and DOCCS' Assistant Director of IGP Jeffrey Hale both declared that a search of the DOCCS database confirmed plaintiff's original grievance, as well as an appeal to the Superintendent, but produced no record of an appeal to CORC. Id.; see Dkt. Nos. 112-11 ("Looker Decl.") at 6; 112-16 ("Hale Decl.") at 4-5. Plaintiff has not offered evidence of his Appeal Statement or any other letter to CORC that the undersigned could consider as an attempt to comply with the exhaustion requirements. Moreover, even if plaintiff had submitted an appeal and failed to receive a response from CORC within forty-five days of filing, he was obligated to write to the Gouverneur IGP Supervisor to confirm that the appeal was transferred to CORC. See 7 N.Y.C.R.R. § 701.5(d)(3)(i) ("If a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC."). Plaintiff's October 24, 2014 letter—sent to Gouverneur's IGP office nearly a year and a half after the alleged incident—does not constitute compliance with 7 N.Y.C.R.R. § 701. See 7 N.Y.C.R.R. § 701.6(g)(1)(b) provides:

The IGP supervisor may grant an exception to the time limit for filing an appeal of an IGRC or superintendent's decision based on mitigating circumstances (e.g., failure to implement action required by the IGRC or superintendent's decision within 45 days, etc.). An exception to the time limit may not be granted if the request was made more than 45 days after the date of the decision unless the late appeal asserts a failure to implement the decision.

[6]    First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. Id. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

**\*6** Plaintiff's October 24, 2014 letter does not offer any mitigating circumstances that would exempt him from the time limitations established in the regulations. Am. Compl. at 15. Plaintiff filed a subsequent letter on October 30, 2014, which requests another copy of the Superintendent's decision to appeal to CORC and states that the IGP office's

2017 WL 8894723

failure to receive his appeal was "not due to error on [his] part." Id. at 22. This letter also fails to establish mitigating circumstances as to why plaintiff waited nearly a year and a half to inquire whether CORC reached a decision on grievance GOV-16890-13. Id. Moreover, plaintiff sent both of his letters one year after he commenced this lawsuit, further establishing that plaintiff failed to exhaust his administrative remedies prior to initiating this action. Lopez v. Cipolini, 136 F.Supp.3d 570, 582 (S.D.N.Y. 2015) (internal citation and quotation marks omitted) ("A plaintiff must exhaust his administrative remedies before filing his initial complaint in federal court.... [S]ubsequent exhaustion after suit is filed ... is insufficient.").

Moreover, insofar as plaintiff suggests that letters he wrote to the DOCCS Deputy Commissioner of Program Services, the DOCCS Commissioner, and Acting DOCCS Commissioner regarding the alleged April 16, 2016 incident constitutes an attempt at exhaustion, these letters were not addressed to, nor were they sent to, the Superintendent or CORC as part of the established grievance procedures. Dkt. No. 112-10. It is well-established in the Second Circuit that any informal resolution or relief outside of the administrative procedures does not satisfy exhaustion requirements. See, e.g., Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007); Day v. Chaplin, 354 Fed.Appx. 472, 474 (2d Cir. 2009) (summary order) (noting that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures."). Thus, because these letters were sent to officials outside the grievance chain of command, they do not satisfy the exhaustion requirement. As plaintiff has not provided evidence of exhaustion, the undersigned concludes that plaintiff has failed demonstrate that grievance GOV-16890-13 was properly exhausted.

### 2. Availability of Administrative Remedies

Plaintiff claims that the Superintendent and CORC "gave him a hard time," and suggests that the grievance process is rampant with "foul play." Am. Compl. at 25. Plaintiff further argues that the Gouvenour IGP "play[ed] games" with him, and did not file his appeal in retaliation for his lawsuit. Id. Defendants contend that the record clearly demonstrates that the grievance process was available to plaintiff. Dkt. No. 112-21 at 11. There is no indication in the record that Gouverour staff prevented plaintiff from further appeals, made the grievance process unavailable, or outright ignored his grievances at every step. See Nelson v. Smith, No. 6:12-CV-6581(MAT), 2014 WL 2807557, at *2 (W.D.N.Y. June

20, 2014) (internal quotation marks and citation omitted) ("Where a party makes a clear and positive showing that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the [party] from the requirement.").

To the extent that plaintiff accuses the Gouverneur IGP of "foul play," plaintiff has not offered evidence to support that contention. See Ross, 136 S.Ct. at 1860 (demonstrating that the grievance program is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process" by misleading or threatening inmates "so as to prevent their use of otherwise proper procedure."). Further, plaintiff's argument that the Gouverneur IGP retaliated against him for filing this lawsuit is without merit, because plaintiff was required to have exhausted his administrative remedies prior to the initiation of this lawsuit. See Lopez, 136 F.Supp.3d at 582. Accordingly, as exhaustion is a prerequisite to filing an action in federal court (Woodford, 548 U.S. at 85, 126 S.Ct. 2378), it is recommended that Mr. Farney's Motion for Summary Judgment be granted.

### C. Heck Doctrine

**\*7** As an alternative ground to dismissal for failure to exhaust administrative remedies, defendant argues that plaintiff's claims are barred by Heck v. Humphrey. Dkt. No. 112-21 at 11-13. Plaintiff contends that "the Time Allowance Committee [ ] took all available good time behavior allowance (good time credit) directing that [plaintiff] be held until his maximum expiration date ... thereby ... plac[ing] [him] in a [position] that he has been denied the equal opportunity others without disabilities have" to combat his alcohol and substance abuse through rehabilitation. Am. Compl. at 4.

In Heck v. Humphrey, the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

2017 WL 8894723

invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus.

Heck, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Therefore, when an inmate seeks damages in a § 1983 action, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487, 114 S.Ct. 2364. Where the Heck doctrine applies, a plaintiff "ha[s] no cause of action under § 1983." Poventud v. City of N.Y., 750 F.3d 121, 130 (2d Cir. 2014).

In Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court extended the Heck doctrine to disciplinary proceedings, holding that a plaintiff's procedural due process claim regarding a prison disciplinary hearing was not cognizable under § 1983 where the due process claim necessarily implied the invalidity of the disciplinary disposition and/or punishment unless the disposition has been reversed. Balisok, 520 U.S. at 650, 117 S.Ct. 1584. "The rule announced in Heck v. Humphrey thus applies whenever a prisoner challenges the fact or length of his conviction or sentence. This includes situations in which an inmate challenges the denial of 'good time' credits, where such denial impacts the duration of his confinement." Phelan v. Hersh, No. 9:10-CV-0011 (GLS)(RFT), 2010 WL 277064, at *3 (N.D.N.Y. Jan. 20, 2010) (citing Balisok, 520 U.S. at 646-48, 117 S.Ct. 1584; Higgins v. Coombe, No. 95 Civ. 8696(RCC), 1999 WL 760658, at *3-4, (S.D.N.Y. Sep. 24, 1999); Odom v. Pataki, No. 00 Civ. 3727, 2001 WL 262742, at *3-4 (S.D.N.Y. Mar. 15, 2001) ). In Peralta v. Vasquez, 467 F.3d 98 (2d Cir. 2006), the Second Circuit held:

a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but that he can only do so if he is willing to forgo once and for all any challenge to any*

*sanctions that affect the duration of his confinement.*

Peralta, 467 F.3d at 104 (emphasis in original). The Court concluded that

that the purpose of the Heck favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement, and that punishments related to their term of imprisonment, or the procedures that led to them (if the procedural defect at issue was critical to the imposition of the punishment), must be attacked through a habeas petition.

**\*8** Id.

Plaintiff's equal protection claim challenges the April 2013 TAC's disposition, which ordered the loss of good time credits. Am. Compl. at 4, 5. Because the April 2013 TAC disposition "relates only to good time and thus, to the length of plaintiff's incarceration," plaintiff's claims fall within the gambit of the Heck doctrine. Lebron v. Armitage, No. 9:08-CV-508 (TJM/GJD), 2009 WL 9123270, at *6 (N.D.N.Y. Sept. 23, 2009). The Lebron Court found that claims challenging TAC's decision to withhold good time credits do not fall into Peralta's "mixed sanction" exception, and cannot proceed separately under section 1983. Id. Further, because the plaintiff did not show that the TAC disposition was invalidated, the plaintiff's claims relating to that decision were dismissed. Id. Here, a judgment in plaintiff's favor would necessarily invalidate his April 2013 TAC disposition wherein TAC withheld his good time credits.[7] Therefore, the Heck doctrine bars plaintiff's equal protection claim against Mr. Farney. Heck, 512 U.S. at 487, 114 S.Ct. 2364. Accordingly, it is recommended that Mr. Farney's motion on this ground be granted.

[7]     Basing its decision, in part, on plaintiff's withdrawal from the ASAT program, "TAC took all available good behavior allowance (good time

2017 WL 8894723

credit) [and] direct[ed] that [plaintiff] be held until his maximum expiration date." Am. Compl. at 4.

### D. Equal Protection

Addressing plaintiff's claims on the merits, Mr. Farney argues that plaintiff cannot establish unlawful discrimination due to disability in violation of the Fourteenth Amendment. Dkt. No. 112-21 at 13-17. The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons are treated equally. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.").

> [T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Vegas v. Artus, 610 F.Supp.2d 185, 209 (N.D.N.Y. 2009) (internal quotation marks and citations omitted).

If an individual cannot "allege membership in [a protected] class, he or she can still prevail in ... a class of one equal protection claim." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (internal quotation marks and citations omitted). To succeed, a plaintiff must show "that [he] were intentionally treated differently from other similarly-situated individuals without any rational basis." Clubside, Inc. v. Valentin, 468 F.3d 144, 158-59 (2d Cir. 2006). Additionally, plaintiffs must establish an extremely high "level of similarity between plaintiffs and the persons with whom they compare themselves...." Neilson, 409 F.3d at 104. "Generally, whether parties are similarly situated is a fact-intensive inquiry" best suited for the jury unless "no reasonable juror could find that

the persons to whom plaintiff compares itself are similarly situated," and then summary judgment is appropriate. Id. (citations omitted).

**\*9** Plaintiff contends that Mr. Farney unlawfully discriminated against him because of his disability in violation of his equal protection rights. Am. Compl. at 5. It is well-settled that "[u]nless a classification trammels fundamental personal rights or is drawn upon inherent suspect distinctions such as race, religion or alienage," it is presumed that a distinction is constitutional as long as they are "rationally related to a legitimate state interest." City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). "Persons with disabilities are not a suspect class and review of their equal protection claims are subject to rational basis review." Marino v. City University of N.Y., 18 F.Supp.3d 320, 340 (E.D.N.Y. 2014) (citing City of Cleburne, 472 U.S. at 439). As plaintiff claims that Mr. Farney discriminated against him because of his disability, a heightened level of scrutiny does not apply. See id. Thus, plaintiff's claim will be assessed on status as a "class of one." Id. "To state a valid equal protection 'class of one' claim, a plaintiff must allege (1) that he has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment." Scott v. Dennison, 739 F.Supp.2d 342, 362 (W.D.N.Y. 2010) (internal quotation marks and citation omitted).

### 1. Similarly-Situated Persons

As to the first prong, plaintiff does not contend, and the record does not suggest, that Mr. Farney treated plaintiff differently than other similarly-situated persons. Plaintiff has not introduced evidence of Mr. Farney failing to punish another ASAT program participant who used the restroom without first asking permission. Rather, the record establishes that Mr. Farney treated plaintiff the same as any other ASAT program participant. The ASAT Behavior Contract requires that participants be "present for all treatment activities," "sit in an appropriate and attentive manner in an assigned seat," and that "all personal hygiene activities [ ] be attended to at appropriate times." Dkt. No. 112-4 at 2, 3. ASAT standards also provide that "violation of [such rules] may result in discharge from treatment, disciplinary action, behavioral contracts, *learning experiences*, pull ups, a referral to Treatment Plan Review Committee, or counseling notifications." Id. at 3 (emphasis added). Plaintiff received

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 63 of 131

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

and signed the ASAT Behavior Contract. See Farney Decl., Ex. B.

Mr. Farney declared that it was his general practice to let participants use the restroom while the program was in session, as long as they first asked permission. Farney Decl. at 4. If a participant broke that rule, Mr. Farney routinely assigned essays as a "learning experience." Id. Mr. Farney declared that, in his twenty-four years as an ASAT instructor, he asked "countless inmates on countless occasions to write such essays and read them aloud to the class, including other inmates who have used the restroom during class without asking for permission." Id. There is no indication in the record that on April 16, 2013, after plaintiff used the restroom without asking permission, Mr. Farney treated plaintiff differently than other ASAT program participants who neglected to follow program rules. Mr. Farney followed ASAT standards, as well as his own general practice, and assigned plaintiff a 500-word essay as a learning experience. Id. at 6.

Insofar as plaintiff bases his equal protection claim on denial of re-entry into the ASAT program (Am. Compl. at 4-5), the ASAT standards, policies, and procedures state that "should [an inmate] refuse [to abide by the Behavior Contract] or sign out of treatment, or is [he is] unsatisfactorily discharged from treatment, [he] must wait 30 days from the date of discharge before [he] can request consideration for readmission." Dkt. No. 112-4 at 5. Plaintiff has not introduced evidence supporting a finding that Mr. Farney allowed another ASAT program participant to re-apply to the program without waiting the mandated thirty days. Accordingly, plaintiff has not established that Mr. Farney intentionally treated him differently than other similarly-situated persons. Scott, 739 F.Supp.2d at 362.

### 2. Rational Basis

*10 Under the second prong of an equal protection 'class of one' claim, if a plaintiff can demonstrate that he was intentionally treated differently from other similarly-situated persons, the Court must determine if that treatment was "rationally related to a legitimate state interest." Lee, 87 F.3d at 60.[8] "In the prison context, preservation of security and discipline constitutes a legitimate penological interest.... Conduct expressly aimed at protecting prison security is 'legitimate' beyond question and is in fact 'central to all other correctional goals.' " Kimbrough v. Fischer, No. 9:13-

CV-100 (FJS/TWD), 2016 WL 660919, at *6 (N.D.N.Y. Feb. 18, 2016) (citations omitted). Mr. Farney declared that "there are at least 30 inmates per ASAT class, and the ASAT instructor is often the only facility staff member present." Farney Decl. at 5.

> If inmates were allowed to [ ] get up in the middle of the ASAT program sessions, whenever, and however often they wished, without having to ask permission first ... [it] would make it exponentially more difficult to keep track of inmates, their activity, and their location, while also monitoring what was going on with the program itself, thus creating unacceptable gaps in security and leading to potentially dangerous situations.

Id. at 4-5. Pursuant to Mr. Farney's declaration, it is clear that the ASAT policy that inmates ask permission prior to using the bathroom is aimed at ensuring prison security. Id.

8    Here, the undersigned concluded that plaintiff failed to demonstrate that plaintiff was intentionally treated differently from other similarly-situated persons. See subsection II.D.1. supra. However, for purposes of a complete analysis, the undersigned will perform a rational basis analysis.

Insofar as plaintiff suggests that there is no rational basis for the assigned discipline, Mr. Farney declared that "essays of [that] nature, also known as a 'learning experience,' is a standard behavioral mechanism employed in the ASAT program." Farney Decl. at 6. Plaintiff's assignment to write an essay on the importance of respecting others in the group falls within the programs goal of "group and individual counseling." Id. at 2, 6. Therefore, a rational basis exists for any difference in treatment. Thus, because plaintiff has failed to establish that Mr. Farney treated him differently than similarly-situated persons, and because a rational basis exists for the ASAT standards, policies, and procedures, it is recommended that defendant's Motion for Summary Judgment be granted.

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 64 of 131

2017 WL 8894723

Even assuming *arguendo*, that plaintiff alleged a prima facie claim of equal protection, plaintiff requested that the Court grant him injunctive relief by "restoring plaintiff to the ASAT program." Am. Compl. at 7. Plaintiff was released from prison on February 16, 2017, while his action was pending. [9] Plaintiff's amended complaint requested, in part, injunctive relief in the form of readmission to the ASAT program, however, when plaintiff was released from prison "he no longer had a continuing personal stake in the outcome of the action, and his claims were rendered moot." Khalil v. Laird, 353 Fed.Appx. 620, 621 (2d Cir. 2009) (summary order) (internal quotation marks omitted) (quoting Muhammad v. City of N.Y., 126 F.3d 119, 123 (2d Cir. 1997) ); see Pugh v. Goord, 571 F.Supp.2d 477, 489 (S.D.N.Y. 2008) ("Where a prisoner has been released from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot."); Douglas v. Hollins, 160 Fed.Appx. 55, 56 (2d Cir 2005) (summary order) ("Because [the plaintiff] has been released from prison, his request for injunctive relief is moot."); Smith v. Fischer, 13-CV-6127-FPG, 2016 WL 3004670, at *2 (W.D.N.Y. May 23, 2016) ("It is settled in the Second Circuit that an inmate's release from prison moots his claims for declaratory and injunctive relief against the prison's officials."); Henrius v. County of Nassau, 13-CV-1192 (SJF)(SIL), 2016 WL 1171598, at *3 (E.D.N.Y. Mar. 24, 2016) (internal quotation marks omitted) (concluding that because the plaintiff was released from prison, any injunctive relief "would afford no legally cognizable benefits to him since he was no longer imprisoned within the DOC system."). Further, because plaintiff "had the same opportunity to reapply for admission to the ASAT program after his withdrawal as any other inmate in his situation would have had," he is not prevented from seeking such counseling in the future, if the he ever were to find himself incarcerated and in need of the program in the future. See Dkt. No. 112-5 ("Kelly Decl.") at 7. Therefore, even if plaintiff could establish that Mr. Farney violated his equal protection rights—a finding the undersigned does not make—his release from incarceration renders his injunctive relief in the form of re-admission to the ASAT program moot.

[9]   The DOCCS look up website provides that plaintiff was conditionally released to parole on February 16, 2017. See DOCCS LOOKUP, http://nysdoccslookup.doccs.ny.gov/ (last visited Dec. 18, 2017).

## E. ADA

**\*11** As an alternative ground to dismissal, defendant argues that plaintiff cannot establish that Mr. Farney violated his rights under the ADA. Dkt. No. 112-21 at 17-22. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity includes "any department, agency ... or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1)(B). A qualified individual with a disability is defined as

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

Id. § 12141(2). To state a claim under the ADA, an inmate must demonstrate that

> (1) he or she is a "qualified individual with a disability"; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) [the facility that] provides the service, program or activity is a public entity.

Clarkson v. Coughlin, 898 F.Supp. 1019, 1037 (S.D.N.Y. 1995); 42 U.S.C. § 12132.

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

Under the ADA, a "qualified individual with a disability" is an "individual with a disability who, with or without reasonable modifications ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the public entity." 42 U.S.C. § 12131(2). A person is an individual with a disability if he has "a physical or mental impairment ... [that] substantially limits one or more of the major life activities of such individual," there is a "record of such an impairment," or the person is "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C); see also Manon v. Albany Cnty., No. 11-CV-1190 (GTS/CFH), 2012 WL 6202987, at *6 (N.D.N.Y. Oct. 9, 2012).

> To determine if an individual meets any of the above criteria, courts apply a three part test.... First, a plaintiff must show that [he or] she suffers from a physical or mental impairment. Second, the plaintiff must establish that the activity [he or] she alleges to be impaired constitutes a "major life activity." Third, the plaintiff must show that [his or] her impairment "substantially limits" the major life activity previously identified.

Smith v. Masterson, 538 F.Supp.2d 653, 657 (S.D.N.Y. 2008) (internal citations omitted); see also Manon, 2012 WL 6202987, at *7. Major life activities include, inter alia, caring for oneself, walking, standing, sitting, concentrating, and interacting with others, as well as the "operation of a major bodily function" such as the function of the bowel or bladder. 29 C.F.R. § 1630.2(i)(1)(i), (ii).

Although the functioning of the bladder statutorily constitutes a "major life activity," plaintiff has not established that he suffers from a physical or mental impairment, or that such impairment substantially limits his major life activity. See Smith, 538 F.Supp.2d at 657. Plaintiff only refers to his disability as a "medical condition that requires [him] to urinate frequently," but offers no testimony or medical records identifying a specific medical condition. Am. Compl. at 4. In determining whether a major life activity is "substantially limited," the Court must analyze: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; (3) the permanent

or long-term impact, or expected long-term impact of or resulting from the impairment." Baerga v. Hosp. for Special Surgery, No. 97 Civ.0230 (DAB), 2003 WL 22251294, at *5 (S.D.N.Y. Sept. 30, 2003). Plaintiff's amended complaint offers little information as to the nature and severity of his alleged impairment, other than it causes him to "urinate frequently." Am. Compl. at 4. He fails to allege how long he has suffered from frequent urination, or the long-term impact of this condition. Moreover, it has been held that "the need to urinate frequently is not a disability recognized by the courts." Giles v. NBC Universal, Inc., No. 10 Civ. 7461 (DAB), 2011 WL 4376469, at *5 (S.D.N.Y. Sept. 20, 2011) (citing Lewis v. Hill, No. 97 Civ. 3213 (DAB), 2005 WL 292748, at *4 (S.D.N.Y. Feb. 8, 2005) ) (finding that the plaintiff's prostate condition, which caused frequent urination, was not "so severe as to constitute a substantial limitation ... [and] he has not met his burden to prove that he is 'disabled' within the meaning of the ADA."); see Rider v. General Motors Corp., No. 03-CV-0701C (F), 2006 WL 1520084, at *7 (W.D.N.Y. May 26, 2006) ("While plaintiff's urinary incontinence is a permanent condition and affects her on a daily basis, the impact of the condition on plaintiff's daily life is not so severe as to prevent or restrict her from doing activities that are of central importance to most people's daily lives."); Spruill v. New York City Health and Hosps. Corp., No. 06 Civ. 11362(WHP), 2008 WL 3911015, at *3 (S.D.N.Y. Aug. 25, 2008) ("Nor does [the plaintiff's] medication-induced need to urinate frequently substantially limit any major life activity."); Williams v. H.N.S. Mgmt. Co., Inc., 56 F.Supp.2d 215, 221 (D. Conn. 1999) (finding that frequent urination only substantially limits a major life activity "where restrooms are not frequently accessible.").

**\*12** Even if the undersigned concluded that plaintiff constituted a "qualified individual" under the ADA, plaintiff has failed to establish that he was excluded from participation in, or denied the benefits of, the ASAT program. See Clarkson, 898 F.Supp. at 1037. The record is clear that, although plaintiff withdrew voluntarily from the program, he could request readmission. In response to plaintiff's April 18, 2013 letter requesting "help [getting] him back into the program, DOCCS Deputy Commissioner of Program Services Jeff McKoy informed plaintiff that he "may request readmission to ASAT 30 days [from his withdrawal] or earlier at the discretion of treatment staff." Dkt. No. 112-20 at 6. Mr. McKoy also told plaintiff that to apply for readmission, he "must complete and submit a 'Readmission Request for Substance Abuse Treatment' [form] to ASAT staff for review/recommendation." Id. Mr. McKoy again referred plaintiff to

2017 WL 8894723

these requirements in response to plaintiff's April 28, 2013 letter. Id. at 7, 9. The readmission requirements are also detailed in the ASAT standards, policies, and procedures that plaintiff signed on March 26, 2013. Dkt. No. 112-4 at 5. Plaintiff does not allege, and the record does not support, that Mr. Farney prevented plaintiff from re-applying to the program.

Moreover, insofar as plaintiff attempts to establish that Mr. Farney failed to offer him a reasonable accommodation for his disability, this argument must also fail. Am. Compl. at 5. To succeed on a failure to accommodate claim, a plaintiff must, in part, demonstrate that the "defendant had notice of the disability and failed to provide such accommodation." Lyons v. Legal Aid Soc., 68 F.3d 1512, 1515 (2d Cir. 1995). Plaintiff does not contend, and the record does not suggest, that Mr. Farney knew of plaintiff's alleged disability and that it caused him frequent urination prior to the April 16, 2013 incident. Mr. Farney declared that plaintiff never informed him of a medical condition, nor did he submit medical documentation as to any restrictions or accommodations needed. Farney Decl. at 7-8. Therefore, because plaintiff failed to provide notice of his medical condition and any accommodation needed, he failed to state a prima facie claim for failure to accommodate. See Lyons, 68 F.3d at 1515.

Finally, to the extent that plaintiff's complaint can be read as arguing that he was denied the benefits of the ASAT program because TAC recommended withholding three months of his good time credit, plaintiff acknowledged and signed the Program Refusal Notification, which stated that "refusal to participate in recommended programming may result in ... the loss of Good Time." Dkt. No. 112-4 at 9. Additionally, it is well-settled that "an inmate has no constitutionally protected [liberty] interest in parole[,] ... discretionary good time release[,] .... or to participation in prison programs which might expedite release." McMillan v. Perez, No. 14-CV-3854 (KMK), 2016 WL 4926202, at *5 (S.D.N.Y. Sept. 14, 2016) (internal quotation marks omitted) (citing Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); Fifield v. Eaton, 669 F.Supp.2d 294, 297 (W.D.N.Y. 2009); Johnson v. Baker, 108 F.3d 10, 11 (2d Cir. 1997) ).

Accordingly, because plaintiff has failed to establish that he was a "qualified individual" and that he was excluded from participation in or denied access to the ASAT program, or that he was wrongfully denied a reasonable accommodation,

it is recommended that Mr. Farney's Motion for Summary Judgment on this ground be granted.

### F. Personal Involvement

As an alternative ground to dismissal, defendant contends that plaintiff has failed to establish his personal involvement in the constitutional violations. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (additional citations omitted) ). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

*13  (1) the defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (additional citation omitted) ). [10] Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact. See, e.g., Brown v. Artus, 647 F.Supp.2d 190, 200 (N.D.N.Y. 2009).

[10]     Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F.Supp.2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 Fed.Appx. 16 (2d Cir. 2012)

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 67 of 131

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

(summary order) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F.Supp.2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster...."); D'Olimpio v. Crisafi, 718 F.Supp.2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

Plaintiff contends that, as a result of his withdrawal from the ASAT program, "TAC took all available good behavior allowance (good time credit) [and] direct[ed] that [plaintiff] be held until his maximum expiration date." Am. Compl. at 4. The record is clear that TAC, not Mr. Farney, recommended withholding three months of plaintiff's good time credit. Kelly Decl. at 7-8; Dkt. No. 112-6 (detailing TAC's decision). Plaintiff has not alleged, and the record does not support, that Mr. Farney is a member of TAC, or that he in any way influenced TAC's decision. Therefore, it cannot be said that Mr. Farney was personally involved in the decision to withhold three months of good time credit from plaintiff, and, therefore, he is not liable under the Colon factors. See Thompson v. LaClair, No. 9:08-CV-0037 (FJS/DEP), 2009 WL 2762164, at *8 (N.D.N.Y. Aug. 25, 2009) (finding no personal involvement where the plaintiff's loss of good time credit was based on TAC's decision, not that of the defendant).

### G. Qualified Immunity

Mr. Farney argues that, even if plaintiff's constitutional claims are substantiated, he is entitled to qualified immunity. Dkt. No. 112-21 at 24-25. Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified ... immunity might still be available ... if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted). A court must first determine whether, if the plaintiff's allegations are accepted as true, there would

be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken v. Nixon, 236 F.Supp.2d 211, 230 (N.D.N.Y. 2002).

**\*14** Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test. See subsection III.B.-F. supra. Moreover, it was objectively reasonable for Mr. Farney, abiding by ASAT standards, policies, and procedures and his twenty-four years of experience as an ASAT instructor, to counsel plaintiff following his rule violation, especially because he did not know that plaintiff allegedly suffered from a medical condition. See subsection III.D. supra. By assigning plaintiff a "learning experience" consistent with the ASAT standards, it cannot be said that Mr. Farney objectively knew he was violating plaintiff's constitutional rights because he was unaware that plaintiff suffered from an alleged medical condition that caused frequent urination. See Am. Compl. at 4. Because there is no constitutional violation, the undersigned does not reach whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F.Supp.2d at 230. Accordingly, in the alternative, it is recommended that Mr. Farney's motion on this ground be granted.

### H. Eleventh Amendment

Mr. Farney argues that he is entitled to Eleventh Amendment immunity relating to plaintiff's claims against him in his official capacity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21, 10 S.Ct. 504, 33 L.Ed. 842 (1890) ). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100, 104 S.Ct. 900. Section 1983 claims do not abrogate the Eleventh

2017 WL 8894723

Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

Moreover, suit against a state official in his or her official capacity is a suit against the entity that employs the official. Faird v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer in his official capacity. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

Because plaintiff seeks monetary damages against Mr. Farney for acts occurring within the scope of his duties, the Eleventh Amendment bar applies. However, although plaintiff lists Mr. Farney's "official position" on his amended complaint, the Court, in deference to plaintiff's pro se status, infers that plaintiff has also brought suit against Mr. Farney in his individual capacity. See Thomas v. Calero, 824 F.Supp.2d 488, 498-99 (S.D.N.Y. 2011) ("We do not read plaintiff's allegations as [suing defendants only in their official capacities], since they appear to be intended to plead that the individual defendants were acting under color of state law, a pleading requirement for stating a claim under section 1983."). However, to the extent that plaintiff asserts claims against Mr. Farney in his official capacity, it is recommended that defendant's motion be granted, as such claims are barred by the Eleventh Amendment.

## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendant's Motion for Summary Judgment (Dkt. No. 112) be **GRANTED**, and plaintiff's amended complaint (Dkt. No. 51) be **DISMISSED in its entirety with prejudice**; and it is

 **\*15 ORDERED**, that the Clerk of the Court correct the caption on the docket to reflect John Farney as the proper defendant; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [11]

[11]       If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 8894723

---

**End of Document**                © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 69 of 131

Hamm v. Farney, Not Reported in Fed. Supp. (2018)

2018 WL 922149

2018 WL 922149
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alan HAMM, Plaintiff,

v.

John FARNEY, Defendant.

9:13-cv-1302 (BKS/CFH)
|
Signed 02/16/2018

**Attorneys and Law Firms**

Alan Hamm, Brooklyn, NY 11203, pro se.

Keith J. Starlin, Esq., Hon. Eric T. Schneiderman, Office of New York State Attorney General, The Capitol, Albany, NY 12224, Attorney for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

**\*1** Plaintiff Alan Hamm, a former New York State inmate, commenced this civil rights action asserting claims under 42 U.S.C. § 1983 arising out of his incarceration at Gouverneur Correctional Facility. (Dkt. No. 51). On April 7, 2017, Defendant John Farney filed a motion for summary judgment under Fed. R. Civ. P. 56, seeking dismissal of the complaint with prejudice. (Dkt. No. 112). Plaintiff did not file a response to the motion despite being given two extensions of time to do so. (Dkt. Nos. 117, 121). On November 6, 2017, mail that had been sent from the Court to Plaintiff at his last known address, a men's shelter in Brooklyn, [1] was returned to the Court as "not deliverable as addressed, unable to forward." (Dkt. No. 122).

---

[1]    On October 24, 2017, in a phone call with the Clerk's Office, Plaintiff had confirmed that the address at the men's shelter was still the most current address for him.

This matter was referred to United States Magistrate Judge Christian F. Hummel who, on December 22, 2017, issued a Report-Recommendation and Order recommending that Defendant's motion for summary judgment be granted and that Plaintiff's complaint be dismissed in its entirety with

prejudice. (Dkt. No. 123). Magistrate Judge Hummel advised the parties that, under 28 U.S.C. § 636(b)(1), they had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. (Dkt. No. 123, at 34-35). The Report and Recommendation was mailed to Plaintiff at his last known address, via regular and certified mail, but no confirmation of receipt has been received. (Dkt. No. 124). On January 24, 2018 the Court issued a text order directing Plaintiff to confirm his mailing address with the Court by February 7, 2018, and extending the deadline for objections to the Report and Recommendation until February 7, 2018. No objections to the Report-Recommendation have been filed.

Local Rule 10.1(c)(2) states, in relevant part: "All ... pro se litigants must immediately notify the Court of any change of address. Parties must file the notice of change of address with the Clerk and serve the same on all other parties to the action. The notice must identify each and every action to which the address shall apply." N.D.N.Y. L.R. 10.1(c)(2); *see also* N.D.N.Y. L.R. 41.2(b) ("Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action."). "For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes." *Hill v. Donelli*, 05-cv-1245, 2008 WL 4663364, at *1, 2008 U.S. Dist. LEXIS 110595 (N.D.N.Y. Oct. 20, 2008). In *Dansby v. Albany County Correctional Facility Staff*, the court observed:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be

2018 WL 922149

reflected by those inquiries if made in writing.

**\*2** No. 95-cv-1525, 1996 WL 172699, at \*1, 1996 U.S. Dist. LEXIS 4782 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting *Perkins v. King*, No. 84-3310, slip op. at 4, 759 F.2d 19 (5th Cir. May 19, 1985)).

Plaintiff appears to have understood his obligation to keep the Court apprised of his current address because he notified the Court three times, during the course of this litigation, of his changes of address. (Dkt. Nos. 110, 114, 116). On January 24, 2018, the Court provided Plaintiff an additional fourteen days to confirm his mailing address and file objections, if any, to the Report-Recommendation. Plaintiff has not responded. As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F.Supp.3d 223, 228–29 (N.D.N.Y.

2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts it its entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 123) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendant's motion for summary judgement (Dkt. No. 112) is **GRANTED** and Plaintiff's amended complaint is **DISMISSED in its entirety with prejudice**; and it is further

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 922149

---

End of Document

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 8589277
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Derrick TEAQUE, Plaintiff,
v.
K.L. MULLEN, et al., Defendants.

9:18-CV-01412 (GTS/CFH)
|
Signed 12/17/2019

**Attorneys and Law Firms**

Derrick Teaque, 16-A-2967, Collins Correctional Facility, P.O. Box 340, Collins, New York 14034, Plaintiff pro se.

Hon. Letitia James, Attorney General for the State of New York, OF COUNSEL: NICHOLAS LUKE ZAPP, ESQ., Assistant Attorney General, The Capitol, Albany, New York 12224, Attorneys for Defendants.

**REPORT-RECOMMENDATION & ORDER** [1]

[1]     This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

Christian F. Hummel, U.S. Magistrate Judge

**\*1** Plaintiff pro se Derrick Teaque ("plaintiff"), an inmate who was at all relevant times in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action on December 4, 2018, pursuant to 42 U.S.C. § 1983. Dkt. No. 1 ("Compl."); Dkt. No. 27 ("Am. Compl."). Plaintiff contends that defendants deprived him of his constitutional rights under the Eighth Amendment. See Am. Compl. Defendants move, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56, to dismiss the amended complaint. Dkt. No. 32. Plaintiff opposes defendants' motion. Dkt. No. 34. For the following reasons, it is recommended that defendants' motion be granted, and plaintiff's amended complaint be dismissed in its entirety without prejudice.

**I. Background**

**A. Facts**

Plaintiff alleges that at Mid-State Correctional Facility ("Mid-State") on October 11, 2018, at approximately 9:22 P.M., he was pepper-sprayed, "physically mutilated," and harassed by multiple corrections officers. Am. Compl. at 5. [2] While walking through a housing area, plaintiff alleges that he stopped to give another inmate a writing pen. See id. As a result, Defendant Mullen indicated that she would be "writing a misbehavior report for cube visiting[.]" Id. Defendant Mullen also "grab[bed] [plaintiff] by [his] shirt with full force[,]" and when plaintiff tried to pull himself away from Defendant Mullen, she pepper-sprayed him. See id. at 6. Plaintiff contends that after he was pepper-sprayed, several other corrections officers approached the area and "physically mutilated harassed and beat [him] to the point that [he] had bruises on [his] face, neck, back, and scrapes and cuts on [his] feet, knees and behind [his] ears." Id. As a result of this incident, plaintiff was sent to the hospital and required five stitches in his right eye. See id. at 6, 20. Plaintiff contends that Defendants Sexton, O'Donnell, and Ingraham saw and heard this incident, and failed to intervene. See id. at 23, 25.

[2]     Throughout this Report-Recommendation and Order, references to page numbers in items that appear on the docket refer to the pagination of the header numbers generated by CM/ECF, not the page numbers used by the parties in the individual documents.

On October 22, 2018, plaintiff filed grievance #MS-23743-18 regarding the October 11, 2018, incident involving Defendants Mullen, Sexton, Ingraham, and O'Donnell. See Dkt. No. 32-3 ("Tapia Decl.") ¶ 10. In his Amended Complaint, filed on May 22, 2019, plaintiff noted that: (1) his grievance was " 'pending' being investigated by Superintendent of Midstate Correctional Facility"; (2) his grievance was "[f]orwarded to Superintendent for investigation"; (3) he grieved/appealed his claim; (4) "seventy-three days have passed since grievance was filed, still no response from grievance department"; and (5) he grieved/appealed his claim, his grievance was denied, he appealed the denial, and the appeal is now "pending ..." Am. Compl. at 5-7, 13, 14, 20.

**\*2** As plaintiff's grievance qualified as a harassment grievance, it was immediately forwarded to the superintendent for investigation; however, the superintendent did not render a determination regarding grievance MS-23743-18 until February 20, 2019, when plaintiff's grievance was denied. See Tapia Decl. ¶ 11. Plaintiff signed and appealed the superintendent's decision to the Central Office Review Committee ("CORC") on March 5, 2019. See id. ¶¶ 12, 13. CORC received plaintiff's appeal regarding grievance MS-2743-18 on March 18, 2019. See Dkt. No. 32-4 ("Seguin Decl.") ¶ 10. Plaintiff received a "response" from CORC in a letter dated April 25, 2019. See Dkt. No. 34 at 1. As of June 21, 2019, it does not appear that CORC had decided plaintiff's appeal. See generally Tapia Decl.

**B. Procedural History**

On December 4, 2018, the Court docketed the Complaint[3] in the within action, accompanied by an application to proceed in forma pauperis ("IFP"). See Compl.; Dkt. No. 2. Plaintiff subsequently filed numerous documents, including two additional IFP applications and a "supplemental complaint.[4] See Dkt. Nos. 5, 8, 10, 11. On February 1, 2019, Chief District Judge Glenn T. Suddaby issued a Decision and Order granting plaintiff's third IFP application and accepting plaintiff's failure-to-intervene claims against defendants Mullen, Sexton, and Ingram, and directed defendants to respond. See Dkt. No. 13 at 2, 8. On May 21, 2019, Judge Suddaby issued a Decision and Order granting in part and denying in part plaintiff's motion to amend his complaint; (1) adding as a defendant S. O'Donnell, Corrections Officer; (2) directing defendants to answer plaintiff's amended complaint; and (3) dismissing several defendants without prejudice. See Dkt. No. 26 at 13. Plaintiff filed his Amended Complaint on May 22, 2019, dkt. no. 27, and defendants filed their Motion for Summary Judgment in lieu of an answer on June 21, 2019, seeking to dismiss plaintiff's claim in its entirety for failure to exhaust administrative remedies. See Dkt. No. 32. Plaintiff opposes defendants' motion. See Dkt. No. 34.

---

[3]    The Complaint is undated.

[4]    The Supplemental Complaint is dated December 18, 2018. Dkt. No. 11. After plaintiff filed the "Supplemental Complaint," Court combined the Complaint and Supplemental Complaint to be

considered the original Complaint in this action. See Dkt. No. 1.

On November 7, 2019, plaintiff filed a letter motion seeking to "withdraw the above-entitled action against Defendants pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) without prejudice, and to stop the order of fees from his prison account, any future payments mailed to the Court for Civil Case 9:18-CV-01412-GTS-CFH be returned to Collins Correctional Facility to inmate Derrick Teaque 16A2967." Dkt. No. 37. Plaintiff advised the Court that he is "not capable of continuing to prosecute this case alone. I don't have funds for copies, I don't have access to computers & typewriters, I don't have the funds for a lawyer. Please dismiss 9:18-CV-1412 as soon as possible." Id. at 1-2. Defendants filed a response to this letter motion indicating that they would stipulate to dismissal of the action. Dkt. No. 38. On November 15, 2019, plaintiff filed a "reply" to his letter motion. Dkt. No. 39. Therein, plaintiff "request[ed] an Amended Commitment stating 'Do NOT Collect & STOP payments of the filing fee.'" Dkt. No. 39.

On November 27, 2019, the Court issued a Decision & Order denying plaintiff's request for a refund of that portion of the filing fee already paid and for a cessation of the withdrawals of the remainder of the filing fee. Dkt. No. 40. The Court also stayed the case for thirty days to allow plaintiff to inform the Court whether he wished to proceed with the action. Id. On December 4, 2019, plaintiff advised the Court that he wished to proceed with the action. Dkt. No. 41. On December 5, 2019, the Court issued a text order indicating that the case would remain open and that the pending motion for summary judgment would be addressed in due course. Dkt. No. 42. On December 11, 2019, without permission of the Court, plaintiff filed a further response in opposition to the motion for summary judgment. Dkt. No. 43. As plaintiff filed this further submission without leave of the Court and well after the time for submissions relating to the motion for summary judgment were complete,[5] the undersigned has not considered the filing and recommends that it be deemed STRICKEN from the record.

---

[5]    Plaintiff's deadline to file a response to defendants' motion for summary judgment was July 29, 2019, and plaintiff was advised of this deadline by the Court. Dkt. No. 33. Plaintiff timely filed a response in opposition on July 10, 2019, dkt. no. 34, and the undersigned reviewed that filing in rendering the instant Report-Recommendation & Order.

2019 WL 8589277

## II. Discussion

### A. Legal Standard

**\*3** "A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. Id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

In determining a summary judgment motion, "[f]actual disputes that are irrelevant or unnecessary will not be counted." Liberty Lobby, 477 U.S. at 247, 106 S.Ct. 2505. The nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Id. "Mere conclusory statements or reliance on the pleadings, ... will not suffice, ..." Celtex, 477 U.S. at 324, 106 S.Ct. 2548. The court must look to the substantive law to identify which facts are material. Liberty Lobby, 477 U.S. at 248, 106 S.Ct. 2505.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). The Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law ....

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B. Exhaustion

Defendants contend that their motion for summary judgment must be granted because plaintiff failed to fully and properly exhaust his administrative remedies before filing suit. See Dkt. No. 32-1 ("Def. Mem. of Law") at 7-8. In response, plaintiff claims that "CORC has 30 days from receipt of appeal in which to render a decision. They failed to do so. This rendered the grievance opaque to me." Dkt. No. 34 at 1.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); see also Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532, 122 S.Ct. 983. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524, 122 S.Ct. 983. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199,

218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (internal citation omitted).

**\*4** Administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). See N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.1, 701.5. First, the inmate must file a complaint with an inmate grievance program clerk within twenty-one days of the alleged incident. Id. § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c) (1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). As previously stated by Magistrate Judge Peebles:

> It is worth noting that ... where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" Id. at § 701.8(a). [S]ection 701.5(a)(1) provides that, *inter alia,* the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. Id. at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." Id. at § 701.8(b).

Eleby v. Smith, et al., No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at \*4 (N.D.N.Y. Jan. 9, 2016), report-recommendation adopted by 2017 WL 979040 (N.D.N.Y. Marc 13, 2017). [6]

6    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Each step of the IGP process requires that a decision be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Specifically, with a harassment grievance, the superintendent of the facility "will render a decision on the grievance" within twenty-five calendar days of receipt. Id. at § 701.8(f). Should the superintendent fail to respond within the twenty-five day time frame, "the [inmate] may appeal his/her grievance to CORC" which can be done by "filing a notice of decision to appeal [ ] with the inmate grievance clerk." Id. at § 701.8(g). When the inmate receives the superintendent's response and "wishes to appeal the superintendent's response to CORC, he/she must file a notice of decision to appeal [ ] with the inmate grievance clerk within seven calendar days of receipt of that response." Id. at § 701.8(h). If the IGRC and/or superintendent fail to timely respond, an inmate may appeal "to the next step." Id. at § 701.6(g)(1)(b)(ii)(2); see also Eleby, 2017 WL 986123, at \*4; Smith v. Kelly, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal ... can—and must—be appealed to the next level, including CORC, to complete the grievance process.") (citing 7 N.Y.C.R.R. § 701.6(g)).

Although the Supreme Court of the United States has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). In Ross v. Blake, the Supreme Court held in that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, —— U.S. ——, 136 S. Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. Id. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable

where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

**\*5** Generally, if it is found that the inmate has not exhausted all available administrative remedies, his or her case should be dismissed without prejudice. See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 560 F.3d 118, 124 (2d Cir. 2009) (citation omitted). Since "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw. If the time permitted for pursuing administrative remedies has not expired, a prisoner ... can cure the defect by exhausting [the available remedies] and reinstating his suit." Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2003) (amended 2004) (quoting Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999)).

### 1. Did Plaintiff Exhaust Administrative Remedies?

It is well-settled that "the PLRA requires that an inmate plaintiff must exhaust his available administrative remedies before commencing a lawsuit in federal court with respect to prison conditions." Peoples v. Beldock, 212 F. Supp.2d 141, 142 (W.D.N.Y. 2002); see McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at \*2 (N.D.N.Y. Dec. 18, 2017) ("The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.") (citation omitted); White v. Drake, No. 10-CV-1034 (GTS/DRH), 2011 WL 4478988, at \*3 (N.D.N.Y. Aug. 11, 2011) report-recommendation adopted by 2011 WL 4478921 (N.D.N.Y. Sept. 26, 2011) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.") (citation omitted).

The record in the case before the Court demonstrates that plaintiff completed only the first step of the grievance process before commencing this lawsuit. Plaintiff filed his grievance regarding the events giving rise to this action on October 22, 2018. See Dkt. No. 34; Tapia Decl. at ¶ 10. As plaintiff's grievance qualified as a harassment grievance, it was forwarded to the superintendent for further investigation. See Taplia Decl. at ¶ 11. Plaintiff commenced this action on December 4, 2018, forty-three days after filing his grievance with the IGRC. See Compl.; Dkt. No. 32-2 at ¶ 4; Def. Mem. of Law at 7. The superintendent denied plaintiff's grievance on February 20, 2019 (approximately seventy-eight days after

plaintiff initiated this action). See id. at ¶ 11. Plaintiff signed his appeal of the superintendent's determination on March 5, 2019, and his appeal was mailed from the grievance clerk at Mid-State to CORC on March 11, 2019. Id. at ¶ 13. CORC received the appeal of plaintiff's grievance on March 18, 2019, and responded to plaintiff in a letter dated April 25, 2019. See Dkt. No. 34; Seguin Decl. at ¶ 10. To the Court's knowledge, as of June 21, 2019, CORC had not made a final determination regarding plaintiff's grievance.

"If a prisoner has failed to properly follow each of the applicable steps before commencing litigation, he has failed to exhaust his administrative remedies." Scott v. Uhler, No. 9:16-CV-403 (TJM/CFH), 2019 WL 5197139, at \*5 (N.D.N.Y. July 31, 2019), report-recommendation adopted by 2019 WL 4667495 (N.D.N.Y. Sept. 25, 2019); see also Ford v. Smith, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at \*3 (N.D.N.Y. Jan. 16, 2014) (citing Woodford, 548 U.S. at 81, 93, 126 S.Ct. 2378). Because plaintiff commenced this action before receiving a response from the superintendent of Mid-State regarding his grievance, plaintiff did not fully exhaust his administrative remedies before commencing this action. See Jones v. Bock, 549 U.S. 199, 215-16, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (noting that, because failure to exhaust is an affirmative defense, the plaintiff is not obligated to plead facts demonstrating that he complied with the exhaustion requirement; however, where the plaintiff does plead facts showing his failure to exhaust his administrative remedies before commencing his federal lawsuit, the complaint may be dismissed for failure to state a claim); see also Shepherd v. Lempke, No. 9:10-CV-1524, 2017 WL 1187859 (N.D.N.Y. Mar. 30, 2017) ("[I]t is well-established that "post-exhaustion amendment of the complaint does not cure an exhaustion defect existing at the time the action was commenced[.]") (quoting Guillory v. Haywood, 2015 WL 268933, at \*11 (N.D.N.Y. Jan. 25, 2015)) (collecting cases).

### 2. Availability of Administrative Remedies

**\*6** Plaintiff does not appear to argue that he exhausted his administrative remedies before commencing this lawsuit; instead, he contends that administrative remedies were unavailable to him because the superintendent and CORC's failures to timely render a decision "rendered the grievance [o]paque." Dkt. No. 34. Defendants "acknowledge that the Superintendent's decision was issued beyond the twenty-five calendar days set forth in 7 N.Y.C.R.R. § 701.8 (f)[,]" but point out that plaintiff "had the option of filing his appeal

to CORC" since he had not received a response from the superintendent within the twenty-five day time frame. Def. Mem. of Law at 9.

Courts within the Second Circuit, including within this District, appear split over whether a delay in a response during the IGP process constitutes "unavailability" excusing a plaintiff's failure to exhaust his administrative remedies before commencing suit. Compare Fox v. Lee, No. 9:15-CV-0390 (TJM/CFH), 2018 WL 8576600, at *7 (N.D.N.Y. Dec. 18, 2018) (concluding that CORC's approximate four-month delay in responding to the plaintiff's appeal did not render the grievance process unavailable) and Berkley v. Ware, No. 9:16-CV-1326 (LEK/CFH), 2018 WL 3736791, at *6 (N.D.N.Y. July 6, 2018) report-recommendation adopted by 2018 WL 3730172 (N.D.N.Y. Aug. 6, 2018) (concluding "that CORC's approximately five month delay in rendering a decision did not excuse plaintiff from the exhaustion requirement.") with Rodriguez v. Reppert, No. 14-CV-671 (RJA/MJR), 2016 WL 11483439, at *1 (W.D.N.Y. Sept. 28, 2016), report-recommendation adopted by 2016 WL 6993383 (W.D.N.Y. Nov. 30, 2016) (concluding that because CORC failed to respond within the 30-day time frame set by regulation, administrative remedies were unavailable to the plaintiff and dismissal for failure to exhaust was not appropriate) and High v. Switz, No. 9:17-CV-1067 (LEK/DJS), 2018 WL 3736794, at *5 (N.D.N.Y. July 9, 2018), report-recommendation adopted by High v. PA Switz, 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (concluding that administrative remedies were unavailable to the plaintiff after CORC's nearly year-long delay because "there is no direction on any action a[n] [inmate] may take if he does not receive a response from CORC"; thus, dismissal for failure to exhaust was not appropriate).

To the extent plaintiff argues administrative remedies were unavailable to him at the time he commenced this action, the undersigned disagrees. As stated above, plaintiff's grievance was forwarded to the superintendent on an expedited basis [7] due to the "harassment" nature of the grievance. See Tapia Decl. at ¶ 11. Plaintiff initiated the within action on December 4, 2018, approximately forty-three days after filing his October 22, 2018 grievance, but before receiving the superintendent's response. See Compl.; Am. Compl. at 1, 6, 14. As set out in Section 701.8, the superintendent has twenty-five calendar days to render a decision on the grievance. See 7 N.Y.C.R.R. § 701.8(f). If, however, the superintendent does not render a decision within twenty-five calendar days, the inmate "may appeal his/her grievance to CORC." Id. at §

701.8(g). Many courts in this District have held that where the inmate does not receive a timely response, an inmate must appeal the next step or make efforts to track their grievance. Indeed, several courts in this district have determined that fact that the superintendent did not render a decision within the statutory twenty-five calendar days generally does not excuse a plaintiff's failure to exhaust. Courts within this Circuit have found this principle applicable regardless of whether the delay was from the IGRP, superintendent, or CORC. See, e.g., Heyliger v. Gebler, 624 F. App'x. 780, 782 (2d Cir. 2015) (summary order) ("[I]f at any step of the grievance process[ ] an inmate did not receive a response within the specified time frame, he was nonetheless permitted to appeal to the next step ... [W]hen [the plaintiff] did not receive a [ ] response from the IGRC, appeal to the superintendent was still an available administrative remedy."); Cohen v. Welch, 9:16-CV-00593 (FJS/TWD), 2017 WL 3311244, at *5 (N.D.N.Y. July 11, 2017), report-recommendation adopted by, 2017 WL 3309713, at *6 (N.D.N.Y. Aug. 2, 2017) ("[E]ven if Plaintiff did not receive a timely response from the IGRP, he was required to complete steps two and three of the IGP."). In Berkley, for example, this Court determined that, where the plaintiff commenced his federal action before receiving a response from CORC, "CORC's approximately five-month delay in rendering a decision did not excuse plaintiff from the exhaustion requirement." Berkley, 2018 WL 3736791, at *6. The Berkley Court noted that the plaintiff had not mentioned the unavailability of the grievance process in his appeal to CORC and did not write to either the IGRC or CORC to check on his appeal before filing the lawsuit. Id.

[7]   The IGP Supervisor at Mid-State, Christopher Tapia, indicated in his Declaration that plaintiff's grievance was forwarded to the superintendent for immediate investigation because it was a harassment grievance; however, his Declaration does not specify the date on which date plaintiff's grievance was forwarded to the superintendent. See Tapia Decl. at ¶ 11

*7   Whether the delay rendered administrative remedies to the inmate unavailable is a fact-and case-specific determination. However, in assessing availability, this District and others within this Circuit have considered the length of the delay and the inmate's attempts to reach out to CORC (or the relevant level of the IGP process). See High, 2018 WL 3736794, at *5 (noting that "the Second Circuit did not and has not decided the precise issue raised on this Motion—a claim of failure to exhaust where the plaintiff had taken all steps he could to fulfill the last step of the

appeal process; where CORC had neglected to respond, not just during the thirty day time limit, but for a period of numerous months thereafter; where CORC had further neglected to respond when Plaintiff wrote to CORC regarding the status of his appeal; and where CORC had only ultimately decided the appeal a year later, after the present Motion to Dismiss had been filed," and concluding that, although the regulations explained that an inmate should appeal to the next step in the event he does not receive a response, because regulations did not specify what the inmate should do if he does not receive a timely response from CORC, administrative remedies were unavailable to the inmate); see also Gizewski v. N.Y. State Dep't of Corrections and Community Supervision, 692 F. App'x 668, 670 (2d Cir. 2017) (summary order) (noting that, where a clerical error caused one-year delay in superintendent's response to the inmate's grievance, administrative remedies were available as the inmate did not exhaust prior to commencing a lawsuit); Berkley, 2018 WL 3736791, at *6; Hayes v. Dahkle, No. 9:16-CV-1368 (TJM/CFH), 2018 WL 7356343, at *9 (N.D.N.Y. Dec. 11, 2018) (finding that CORC's delay did not excuse the exhaustion requirement where "there is no indication in the record that plaintiff wrote to CORC regarding the status of his appeal and CORC further neglected to respond); cf. Henderson v. Annucci, No. 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) (finding that a two-year delay in CORC response rendered administrative remedies unavailable to the inmate plaintiff).

Here, the record indicates that plaintiff waited for the superintendent's decision before appealing to CORC. There is no evidence in plaintiff's Amended Complaint or his Reply to defendants' Motion for Summary Judgment indicating that he wrote the superintendent to inquire as to the status of his grievance or that he was attempting to appeal directly to CORC. See Am. Compl.; Dkt. No. 34; Fox, 2018 WL 8576600, at *7 (concluding that administrative remedies were available to the plaintiff, despite a four-month CORC delay where there was no evidence that the plaintiff "wrote to the Eastern IGRC or CORC inquiring as to the status of his appeals...." and because NYCRR § 701.5(d)(3)(1) provides, "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal [to CORC], the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC" as does DOCCS Directive 4040). The superintendent rendered a decision regarding plaintiff's grievance on February 20, 2019, approximately ninety-six days beyond the prescribed twenty-five day time frame. See Tapia Decl. at 11. Between

November 16, 2018, and the time this Motion for Summary Judgment was fully briefed, plaintiff made no attempt to appeal his grievance to CORC nor did he attempt to inquire as to status of the superintendent's determination. As noted above, in his Amended Complaint, plaintiff makes clear that he did not fully exhaust his administrative remedies as he addresses the grievance as "pending[,]" and "being investigated by Superintendent of Mid-State Correctional Facility[.]" Am. Compl. at 5-6. Therefore, the record before the Court demonstrates that plaintiff was waiting for the superintendent to make a determination on his grievance before appealing to CORC, and filed this suit before receiving a response.

Further, plaintiff commenced this action before receiving a response from either the superintendent or CORC. Although the superintendent's delay in rendering a decision – forty-three days as of the day plaintiff filed suit – was not brief, plaintiff's failure to check with the superintendent as to the status of his grievance or appeal and his subsequent failure to appeal to CORC before commencing this lawsuit, leads the undersigned to conclude that administrative remedies were available to him. See Scott, 2019 WL 5197139, at *6 (finding that the plaintiff failed to show administrative remedies were unavailable "[c]onsidering the totality of the circumstances, [including the plaintiff's] failure to check with CORC as to the status of his appeal prior to commencing this action, and the relatively short delay in receiving a response from CORC."); Fox, 2018 WL 8576600, at *7 (holding that four-month delay between appeal and CORC response did not render administrative remedies unavailable where the plaintiff did not attempt to contact the IGP or CORC to check the status of his appeal); Arce v. Keane, No. 01 Civ. 2648 (BSJ), 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance."); cf. High, 2016 WL 3039687, at *10 (explaining that the relatively long CORC delay excused the plaintiff from the exhaustion requirement).

**\*8** Significantly, the undersigned must consider the availability of remedies at the time the inmate commenced the action. See Lewis v. Hanson, 9:16-CV-804 (MAD/TWD), 2017 WL 4326084, at *3 (N.D.N.Y. Sept. 28, 2017) (emphasis added) ("Even if the Court were to find that administrative remedies became unavailable ... there are no allegations that administrative remedies were unavailable at the time that [the p]laintiff commenced this action."); see also Pacheco v. Zurlo, No. 09-CV-1330, 2011 WL 1103102, at *3 (N.D.N.Y. Feb. 8, 2011). At the time plaintiff initiated this action, his grievance

was "pending," and he had "[f]orwarded [the grievance] to the superintendent for investigation." Am. Compl. at 5-7. As discussed above, plaintiff could have inquired into the status of his grievance with the superintendent or appealed his grievance to CORC directly while still complying with the IGP. Plaintiff's admission that his grievance was pending and being investigated demonstrates that administrative remedies were available at the time he commenced this action.

Thus, under the totality of the circumstances here, the undersigned finds that administrative remedies were available to plaintiff as: (1) plaintiff did not mention unavailability of the grievance process in his appeal to CORC; (2) plaintiff did not write to the superintendent to check on the status, nor appeal to CORC before filing his federal lawsuit; and (3) the superintendent's delay was fairly brief at the time plaintiff commenced his federal lawsuit. Accordingly, as the undersigned concludes that plaintiff failed to exhaust his administrative remedies and that administrative remedies were available to him, it is recommended that defendants' motion be granted. [8] See Berry, 366 F.3d at 87 (holding that dismissal without prejudice is appropriate where "a prisoner who brings suit without having exhausted these remedies can cure the defect by simply exhausting them and then reinstituting his suit.").

[8]    As the undersigned concludes that plaintiff has failed to exhaust his administrative remedies prior to commencing suit and that administrative remedies were available to him, the undersigned declines to reach the merits of the plaintiff's claims.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 32) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's Amended Complaint (Dkt. No. 27) be **DISMISSED** in its entirety **without prejudice**; and it is

**RECOMMENDED**, that plaintiff's filing in further support of his response in opposition to the motion for summary judgment, dkt. no. 43, be deemed **STRICKEN** from the record as it was filed without leave of the Court and far beyond the deadline for submissions; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 626(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72. [9]

[9]    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**\*9  IT IS SO ORDERED**.

**All Citations**

Slip Copy, 2019 WL 8589277

---

End of Document                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Teague v. Mullen, Slip Copy (2020)

2020 WL 858355

2020 WL 858355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Derrick TEAQUE, Plaintiff,
v.
K.L. MULLEN, Corr. Officer; R.J. Sexton,
Corr. Officer; Ingram, Corr. Officer; and
S. O'Donnell, Corr. Officer, Defendants. [1]

[1]    The Court notes that the Defendant identified
by Plaintiff as "Ingram" has been admitted
by Defendants to be "Robert Ingraham." (*See,
e.g.,* Dkt. No. 17; Dkt. No. 18; Dkt. No. 32,
Attach. 1, at 3 [attaching page "3" of Defs.'
Memo. of Law].) Plaintiff has not challenged
this admission. (*See generally* Dkt. No. 45.) As
a result, the Clerk of Court is directed to amend
the docket sheet to reflect this Defendant's
correct identity.

9:18-CV-1412 (GTS/CFH)
|
Signed 02/21/2020

**Attorneys and Law Firms**

DERRICK TEAQUE, 16-A-2967, Plaintiff, Pro Se, Collins
Correctional Facility, P.O. Box 340, Collins, New York
14034.

HON. LETITIA A. JAMES, Attorney General for the State
of New York, OF COUNSEL: NICHOLAS LUKE ZAPP,
ESQ., Counsel for Defendants, The Capitol, Albany, New
York 12224, Assistant Attorney General.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se*
prisoner civil rights action filed by Derrick Teague
("Plaintiff") against the four above-captioned employees
of the New York State Department of Corrections and
Community Supervision ("Defendants"), are the following:
(1) United States Magistrate Judge Christian F. Hummel's
Report-Recommendation recommending that Plaintiff's

supplemental opposition to Defendants' motion for summary
judgment be stricken, that Defendants' motion for summary
be granted, [2] and that Plaintiff's Amended Complaint be
dismissed without prejudice; and (2) Plaintiff's Objections
to the Report-Recommendation. (Dkt. Nos. 44, 45.) For the
reasons set forth below, Magistrate Judge Hummel's Report-
Recommendation is accepted and adopted in its entirety,
Plaintiff's supplemental opposition to Defendants' motion
for summary judgment is stricken, Defendants' motion for
summary is granted, and Plaintiff's Amended Complaint is
dismissed without prejudice.

[2]    The Court notes that, after defense counsel filed
a Notice of Appearance in this action, Plaintiff
was permitted to, and did, amend his Complaint which,
*inter alia,* identified "S. O'Donnell" as an
additional Defendant. (Dkt. No. 17; Dkt. No. 26, at
13; Dkt. No. 27.) However, because no individual
by that name has ever been employed by the
New York State Department of Corrections and
Community Supervision at Mid-State Correctional
Facility, he or she has been unable to be served
and formally represented by defense counsel. (Dkt.
No. 29; Dkt. No. 31; Dkt. No. 32, Attach. 1,
at 3, n.1 [attaching page "3" of Defs.' Memo.
of Law].) Nonetheless, defense counsel has (in a
motion for summary judgment) notified the Court
of Plaintiff's failure to serve this Defendant, and
submitted an argument for dismissal that affects
Plaintiff's claims against *all* Defendants, including
Defendant "S. O'Donnell." (*See generally* Dkt. No.
32, Attach. 1; Dkt. No. 36.) As a result, for the sake
of simplicity, the Court will refer to the pending
motion for summary judgment as having been filed
on behalf of all Defendants.

**I. RELEVANT BACKGROUND**

**A. Magistrate Judge Hummel's Report-
Recommendation**
Generally, in his Report-Recommendation, Magistrate Judge
Hummel renders the following findings of fact and
conclusions of law: (1) Plaintiff's supplemental opposition
to Defendants' motion for summary judgment should be
deemed stricken from the record because he failed to show
good cause for submitting that supplemental opposition
without prior leave of the Court 133 days after the deadline
for such an opposition; and (2) Defendants' motion for
summary judgment should be granted because they have

established, and Plaintiff has not controverted, the fact that
he failed to exhaust his available administrative remedies
by (a) filing a grievance on October 22, 2018, and then
rushing to file this action on December 4, 2018, long
before receiving the superintendent's determination of that
grievance on February 20, 2019, and without attempting to
appeal (the superintendent's non-response) to the Central
Office Review Committee between November 16, 2018, and
February 20, 2019, and (b) litigating this action without even
having received a decision from the Central Office Review
Committee (with regard to his subsequent appeal) as of June
21, 2019. (Dkt. No. 44, at Part II.)

**B. Plaintiff's Objections to the Report-
Recommendation**
**\*2** Generally, liberally construed, Plaintiff's Objections
assert the following two arguments: (1) Magistrate Judge
Hummel erred by "overlooking ... factual matters" whose
consideration would have altered his findings of fact and
conclusions of law (presumably referring to Plaintiff's
supplemental response to Defendants' motion); and (2)
Magistrate Judge Hummel's finding that Plaintiff failed to
exhaust his available administrative remedies is erroneous
because the Central Office Review Committee had 60 days
to decide his appeal and has waited 10 months to do so,
constructively denying his appeal. (*See generally* Dkt. No.
45.)

**II. STANDARD OF REVIEW**
When a *specific* objection is made to a portion of a
magistrate judge's report-recommendation, the Court subjects
that portion of the report-recommendation to a *de novo*
review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To
be "specific," the objection must, with particularity, "identify
[1] the portions of the proposed findings, recommendations,
or report to which it has an objection and [2] the basis for
the objection." N.D.N.Y. L.R. 72.1(c). [3] When performing
such a *de novo* review, "[t]he judge may ... receive further
evidence...." 28 U.S.C. § 636(b)(1). However, a district court
will ordinarily refuse to consider evidentiary material that
could have been, but was not, presented to the magistrate
judge in the first instance. [4] Similarly, a district court will
ordinarily refuse to consider argument that could have been,
but was not, presented to the magistrate judge in the first
instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011
WL 3610717, at \*1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is
established law that a district judge will not consider new

arguments raised in objections to a magistrate judge's report
and recommendation that could have been raised before the
magistrate but were not.") (internal quotation marks and
citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311,
312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law
that a district judge will not consider new arguments raised in
objections to a magistrate judge's report and recommendation
that could have been raised before the magistrate but were
not.") (internal quotation marks omitted).

[3]     *See also Mario v. P&C Food Markets, Inc.*, 313
F.3d 758, 766 (2d Cir. 2002) ("Although Mario
filed objections to the magistrate's report and
recommendation, the statement with respect to his
Title VII claim was not specific enough to preserve
this claim for review. The only reference made to
the Title VII claim was one sentence on the last
page of his objections, where he stated that it was
error to deny his motion on the Title VII claim '[f]or
the reasons set forth in Plaintiff's Memorandum
of Law in Support of Motion for Partial Summary
Judgment.' This bare statement, devoid of any
reference to specific findings or recommendations
to which he objected and why, and unsupported by
legal authority, was not sufficient to preserve the
Title VII claim.").

[4]     *See Paddington Partners v. Bouchard*, 34 F.3d
1132, 1137-38 (2d Cir. 1994) ("In objecting to a
magistrate's report before the district court, a party
has no right to present further testimony when it
offers no justification for not offering the testimony
at the hearing before the magistrate.") [internal
quotation marks and citations omitted]; *Pan Am.
World Airways, Inc. v. Int'l Bhd. of Teamsters*,
894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that
district court did not abuse its discretion in denying
plaintiff's request to present additional testimony
where plaintiff "offered no justification for not
offering the testimony at the hearing before the
magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667,
676, n.3 (1980) ("We conclude that to construe §
636(b)(1) to require the district court to conduct
a second hearing whenever either party objected
to the magistrate's credibility findings would
largely frustrate the plain objective of Congress
to alleviate the increasing congestion of litigation
in the district courts."); Fed. R. Civ. P. 72(b),
Advisory Committee Notes: 1983 Addition ("The

term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

**\*3** When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [5] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [6]

[5]    *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a) (3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at \*1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at \*3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at \*4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

[6]    *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections

are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

### III. ANALYSIS

After carefully reviewing the relevant papers herein, including Magistrate Judge Hummel's through Report-Recommendation, the Court can find no clear-error in those parts of the Report-Recommendation to which Plaintiff has specifically objected, and no clear error in the remaining parts of the Report-Recommendation: Magistrate Judge Hummel employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. To those reasons, the Court adds the following six points.

First, Plaintiff's first objection to the Report-Recommendation is not specific enough to trigger a de novo review of Magistrate Judge Hummel's recommendation that the Court strike Plaintiff's untimely supplemental opposition to Defendants' motion for summary judgment. For example, Plaintiff does not explain in his Objections why he waited so long to submit his supplemental opposition to the Court, or even why the contents of that supplemental opposition are material. (Dkt. No. 45.) As a result, this part of the Report-Recommendation is entitled to only a clear-error review, which easily survives.

Second, even if the Court were to deem Plaintiff's first objection sufficient to trigger a de novo review of Magistrate Judge Hummel's recommendation that the Court strike Plaintiff's untimely supplemental opposition, the Court would find that the recommendation survives such a review. Despite representing to the Court that "CORC has since denied [Plaintiff's] appeal," the supplemental opposition does not in fact attach such a denial. (Dkt. No. 43.) Indeed, in his Objections, Plaintiff admits this fact, stating that he is still "waiting for" CORC's decision. (Dkt. No. 45, at 1.) Under the circumstances, the Court need not rely on the reasonable inference that Magistrate Judge Hummel had begun work on his 21-page Report-Recommendation before the Court received Plaintiff's supplemental opposition (which would add the waste of judicial resources to the reasons for rejecting

such a belated supplemental response). Plaintiff's failure to show good cause under Fed. R. Civ. P. 16(b)(4) suffices.

**\*4** Third, no part of Plaintiff's second objection contains a specific challenge to Magistrate Judge Hummel's finding and conclusion that Plaintiff failed to exhaust his available administrative remedies by filing a grievance on October 22, 2018, and then rushing to file this action on December 4, 2018, long before receiving the superintendent's determination of that grievance on February 20, 2019, and without attempting to appeal (the superintendent's non-response) to the Central Office Review Committee between November 16, 2018, and February 20, 2019. (*Compare* Dkt. No. 45 *with* Dkt. No. 44, at 14-20.) As a result, this part of the Report-Recommendation is entitled to only a clear-error review, which it easily survives.

Fourth, Plaintiff's second objection merely challenges Magistrate Judge Hummel's finding and conclusion that Plaintiff failed to exhaust his available administrative remedies by litigating this action without even having received a decision from the Central Office Review Committee (with regard to his subsequent appeal) as of June 21, 2019. (*Id.*) The problem is that this challenge is merely a reiteration of an argument that Plaintiff had previously submitted to Magistrate Judge Hummel. (*Compare* Dkt. No. 45 *with* Dkt. No. 34 [arguing, "CORC has 30 days from [their] receipt of [an] appeal in which to render a decision. They failed to do so. This rendered the grievance [o]paque to me"].) As a result, this part of the Report-Recommendation is also entitled to only a clear-error review, which it easily survives.

Fifth, even if the Court were to deem Plaintiff's Objections as triggering a de novo review of Magistrate Judge Hummel's conclusion that Plaintiff failed to exhaust his available administrative remedies, the Court would find that the conclusion survives such a review. For the sake of brevity, the Court will not linger on the fact that, despite having been specifically advised of the consequences of failing to properly respond to Defendants' Statement of Material Facts, Plaintiff failed to do so, rendering admitted all of Defendants' properly supported factual assertions in that Statement. (*Compare* Dkt. No. 32, at 3 *with* Dkt. No. 34.) More important is the fact that, when the superintendent did not render a decision on Plaintiff's grievance within 25 days (i.e., by November 16, 2018), Plaintiff had the ability to file an appeal with the Central Office Review Committee. 7 N.Y. C.R.R. 701.8(g). However, instead of doing so, he

rushed to court, eviscerating the purpose of the administrative remedy process. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (articulating two main purposes of exhaustion of administrative remedies). Courts rather routinely dismiss complaints under such circumstances. *See, e.g., Bennett v. Columbe*, 16-CV-0653, 2018 WL 4627663, at *2 (N.D.N.Y. Sept. 27, 2018) (Sannes, J.), *adopting*, 2018 WL 5728042, at *4 (N.D.N.Y. July 17, 2018) (Hummel, M.J.). This would be the case here even if Plaintiff had received a decision from the Central Office Review Cmmittee by the time the Court issued this Decision and Order. *Bennett v. Columbe*, 2018 WL 5728042, at *5 (citing cases).

Sixth, and finally, Plaintiff's claims against Defendant O'Donnell are dismissed without prejudice on the alternative ground of a failure to serve under Fed. R. Civ. P. 4(m) and Local Rule 4.1 and/or a failure to prosecute under Fed. R. Civ. P. 41(b) and Local Rule 41.2.

**ACCORDINGLY**, it is

**ORDERED** that, in accordance with note 1 of this Decision and Order, the Clerk of Court shall amend the docket sheet to change the name of Defendant Ingram to Defendant "Robert Ingraham"; and it is further

**ORDERED** that Magistrate Judge Hummel's Report-Recommendation (Dkt. No. 44) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**\*5 ORDERED** that the Clerk of the Court is directed to **STRIKE** from the docket sheet Plaintiff's supplemental opposition to Defendants' motion for summary judgment (Dkt. No. 43); and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 32) is **GRANTED**, and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 27) is **DISMISSED without prejudice.**

The Court certifies for purposes of 28 U.S.C. § 1915(a)(3) that an appeal from this Decision and Order would not be taken in good faith.

**All Citations**

Slip Copy, 2020 WL 858355

**Teaque v. Mullen, Slip Copy (2020)**

2020 WL 858355

---

**End of Document**                                        © 2020 Thomson Reuters. No claim to original U.S. Government Works.

---

2017 WL 6459525
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rodney FERRER, Plaintiff,

v.

Steven RACETTE, Former Superintendent, [1] Charles
Kelly, Deputy Superintendent of Security, Craig
Goodman, Captain, Andrew Frazier, Sergeant,
Sergeant Livermore, Sergeant, Brian Schlogl,
Corrections Officer, Gregory Beecher, Corrections
Officer, Eric Morin, Corrections Officer, Jeremy
Burch, Corrections Officer, Daniel McClenning,
Corrections Officer, N. Waite, Corrections Officer,
Joshua Jenkins, Corrections Officer, Defendants.

[1]     The Court notes that it granted a stipulated
motion to dismiss Steven Racette as a
Defendant in this action on June 21, 2017.
(Dkt. No. 125.)

9:14-CV-1370 (GTS/DJS)
|
Signed 12/15/2017
|
Filed 12/18/2017

**Attorneys and Law Firms**

LAW OFFICE OF JESSICA M. GORMAN, OF COUNSEL:
JESSICA M. GORMAN, ESQ., P.O. Box 706, Albany, NY
12201, Counsel for Plaintiff.

HON. ERIC T. SCHNEIDERMAN, OF COUNSEL: LOUIS
JIM, ESQ. Assistant Attorney General, Attorney General
of the State of New York Counsel for Defendants Kelly,
Goodman Waite, and Jenkins The Capitol Albany, NY
12224-0341.

LIPPES MATHIAS WEXLER FRIEDMAN LLP, OF
COUNSEL: JEFFERY P. MANS, ESQ., Counsel for
Defendants Beecher, Burch, and McClenning 54 State Street,
Suite 1001 Albany, NY 12207.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this prisoner civil rights
action filed by Rodney Ferrer ("Plaintiff") against the eleven
above-captioned employees of Great Meadow Correctional
Facility ("GMCF") in Comstock, New York ("Defendants"),
are the following three motions: (1) Plaintiff's motion
for partial summary judgment against Defendants Beecher,
Burch, and McClenning; (2) Defendants Goodman, Kelly,
Waite, and Jenkins' motion for summary judgment; and
(3) Defendants Beecher, Burch, and McClenning's motion
for partial summary judgment. (Dkt. Nos. 126, 127, 128.)
The Court notes that Plaintiff's claims against Defendant's
Livermore, Frazier, and Morin are not at issue in the three
above-referenced motions. In addition, default judgment on
liability was entered against Defendant Schlogl on November
28, 2016. (Dkt. Nos. 105, 106.) For the reasons set forth
below, Plaintiff's motion for partial summary judgment is
denied; Defendants Goodman, Kelly, Waite, and Jenkins'
motion for summary judgment is granted in part and denied
in part; and Defendants Beecher, Burch, and McClenning's
motion for partial summary judgment is denied.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**

Generally, Plaintiff's Complaint asserts three causes of action.
First, Plaintiff alleges that Defendants Frazier, Schlogl,
Beecher, Morin, Burch, McClenning, Waite, Jenkins, and
Livermore violated his constitutional rights under the Eighth
and Fourteenth Amendment to be free from excessive force
and cruel and unusual punishment. (Dkt. No. 1, at ¶¶ 83-88
[Compl.].) More specifically, Plaintiff alleges that Defendants
Frazier, Schlogl, Beecher, Morin, Burch, McClenning, Waite,
and Jenkins assaulted him, and that Defendant Livermore
both failed to intervene and affirmatively participated in the
assault. (Id.) Second, Plaintiff alleges that Defendants Frazier,
Schlogl, Beecher, Morin, Burch, McClenning, Waite, Jenkins,
and Livermore violated his constitutional rights under the
First Amendment to be free from retaliation for practicing his
religion and speaking about unconstitutional acts committed
against him. (Id. at ¶¶ 89-93.) Third, Plaintiff alleges that
Defendants Goodman, Kelly, and Racette violated his right
under the Eighth Amendment to be free from cruel and
unusual punishment by (a) failing to implement or enforce
appropriate policies to stop and prevent such violations, (b)
failing to adequately supervise or train subordinates, and (c)

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 85 of 131

Ferrer v. Racette, Not Reported in Fed. Supp. (2017)
2017 WL 6459525

failing to take any actions to remedy reported violations. (*Id.* at ¶¶ 94-105.)

### B. Undisputed Material Facts on Plaintiff's Motion for Summary Judgment

The following facts were asserted and supported with accurate record citations by Plaintiff in his Statement of Material Facts and expressly admitted by Defendants in their response thereto or denied without appropriate record citations. (*Compare* Dkt. No. 126, Attach. 9 [Pl.'s Rule 7.1 Statement] *with* Dkt. No. 131, Attach. 1 [Defs.' Rule 7.1 Resp.].)

1. Plaintiff commenced this action under 42 U.S.C. § 1983 in the Northern District of New York on November 12, 2014.

 **\*2** 2. Defendants Burch, Beecher, and McClenning answered on September 2, 2015.

3. In their Answer, Defendants Burch, Beecher, and McClenning asserted counterclaims against Plaintiff for State law assault and battery.

4. These counterclaims are alleged to have arisen from events occurring in the draft process area of GMCF on November 15, 2011.

5. The counterclaims are not alleged to have arisen from events occurring on any date other than November 15, 2011.

6. Defendant Beecher claims that he has not seen Plaintiff since November 15, 2011.

7. Defendant Burch claims that the only time he interacted with Plaintiff was on November 15, 2011.

8. Defendant McClenning claims that the only time he saw or interacted with Plaintiff was on November 15, 2011.

9. Defendants' counterclaims were brought on September 2, 2015, which is more than one year after November 15, 2011.

10. Plaintiff answered these counterclaims on September 24, 2015, and asserted an affirmative defense that one or more of the counterclaims were barred by the statute of limitations.

### C. Undisputed Material Facts on Defendants Goodman, Kelly, Waite, and Jenkins' Motion for Summary Judgment

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts and expressly admitted by Plaintiff in his response thereto or denied without appropriate record citations. (*Compare* Dkt. No. 127, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 132, Attach. 10 [Pl.'s Rule 7.1 Resp.].)

1. Plaintiff commenced this action on November 12, 2014. With regard to Defendants Goodman, Kelly, Waite, and Jenkins, the Complaint alleges as follows:

 (a) In June 2011, Plaintiff complained in writing to Defendant Kelly, who was the Deputy Superintendent for Security at GMCF, that corrections officers, including Defendant Waite, had been harassing him, threatening to dispose of his mail, and telling other inmates that he was a "rat."

 (b) Plaintiff believed that the officers were acting in retaliation for his earlier complaints.

 (c) This complaint to Defendant Kelly was ineffective.

 (d) In August 2011, staff refused to provide Plaintiff several religious meals, continued harassing him for his religious beliefs, and destroyed his copy of the Quran.

 (e) Around the same time, Defendant Waite assaulted him in an elevator by punching him.

 (f) In a written complaint submitted to GMCF Superintendent Racette in September 2011, Plaintiff claimed that corrections officers, including Defendant Jenkins, had threatened him, made anti-Islamic remarks, refused to provide him with his religious meals, threatened to take his mail, and assaulted him.

 (g) This complaint was also ineffective.

 (h) In September 2011, Defendant Jenkins again assaulted Plaintiff, shoving his face into the corner of an elevator, shoving his hands into Plaintiff's pants and grabbing his testicles, calling him a "piece of shit Muslim," and telling him to "go ahead and do something" so he could rip his "dick off."

2017 WL 6459525

(i) Defendant Jenkins then put his finger in Plaintiff's anus, and told Plaintiff that "he better not leave his cell" or Defendant Jenkins or one of the "blue shirts" would "get" Plaintiff.

**\*3** (j) Plaintiff complained in writing to Defendant Kelly about this alleged incident and sent copies of the complaint to Racette and Defendant Goodman.

(k) Shortly thereafter, Defendant Jenkins allegedly confronted Plaintiff and told him in a threatening manner that it was "not over."

(l) Later in September 2011, Plaintiff complained in writing to Defendant Kelly about Defendant Jenkins' latest threat and sent copies of the complaint to Racette and Defendant Goodman.

(m) Defendant Goodman responded to Plaintiff's letter in October 2011, stating that the complaint had been investigated and determined to be without merit, and that Plaintiff was interviewed by a supervisor and refused medical attention after the alleged assault.

(n) In a letter to Racette, which was also sent to Defendants Kelly and Goodman, Plaintiff responded that he had neither been interviewed about the alleged assault nor called for a medical examination, and he requested that Defendant Jenkins and his associates leave him alone.

2. Plaintiff testified at his deposition that the alleged incident relating to Defendant Waite occurred on August 23, 2011.

3. Plaintiff wrote a letter to Racette dated September 2, 2011, in which Plaintiff, *inter alia*, claims that Defendant Waite had assaulted him on August 23, 2011.

4. Plaintiff admitted at his deposition that the alleged incidents concerning Defendant Waite described in the September 2nd letter is the same incident described in the Complaint.

5. Defendant Kelly testified at his deposition that he appears to have assigned Defendant Goodman to investigate the conduct alleged in Plaintiff's September 2nd letter.

6. Defendant Kelly also testified that the individual to which he assigned an investigation "may send it down another level lower" for investigation.

7. Indeed, Defendant Kelly testified that Defendant Goodman had the authority to delegate investigations to Defendant Goodman's subordinates, including Sergeants Scarlott and Williams, even though Defendant Kelly had initially assigned the investigations to Defendant Goodman.

8. Defendant Goodman testified at his deposition that, in response to receiving this letter, he would have assigned a lieutenant to investigate it.

9. Defendant Goodman wrote a memo to Plaintiff, dated October 14, 2011, with the subject line "your letter of complaint 9/2/11."

10. Plaintiff admitted at his deposition that he received this memo.

11. Defendant Goodman's October 14th memo states, in pertinent part, "Your complaint was investigated by a Security Supervisor," and concludes, "I find your complaint to be without merit."

12. Plaintiff further testified at his deposition that the alleged incident relating to Defendant Jenkins occurred on September 12, 2011.

13. Plaintiff wrote a letter to Defendant Kelly dated September 14, 2011, in which Plaintiff, *inter alia*, claims that Defendant Jenkins had assaulted Plaintiff on September 12, 2011.

14. Plaintiff admitted at his deposition that this alleged incident concerning Defendant Jenkins described in the September 14th letter is the same incident described in the Complaint.

15. The record shows that Defendant Kelly assigned Defendant Goodman to investigate the conduct alleged in Plaintiff's September 14th letter.

**\*4** 16. Defendant Goodman then assigned this investigation to Sergeant T. Williams.

17. Defendant Goodman wrote a memo to Plaintiff, dated October 5, 2011, with the subject line "Your letter of complaint 9/14/11."

2017 WL 6459525

18. Defendant Goodman's October 5th memo states, in pertinent part, "Your letter of complaint written to DSS Kelly was received and investigated by a security supervisor.... Because of your lack of cooperation during this investigation, your refusal to be medically examined, and the evidence obtained. The complaint is without merit and therefore denied."

19. In his Complaint, Plaintiff does not allege that Defendants Goodman, Kelly, Waite, and Jenkins were personally involved in the November 15, 2011, incident. [2]

20. Plaintiff cannot recall filing any grievances relating to the alleged August 2011 incident concerning Defendant Waite.

21. In addition, Plaintiff admitted at his deposition that he did not file a grievance relating to the alleged September 2011 incident concerning Defendant Jenkins.

22. The issues raised by Plaintiff against Defendants Goodman, Kelly, Waite, and Jenkins are proper subjects for a grievance under New York Department of Corrections and Community Supervision ("DOCCS") grievance procedures as outlined at 7 N.Y.C.R.R. § 701.1 et seq. [3]

23. Central Office Review Committee ("CORC") staff searched CORC's records for determinations upon grievance appeals brought by Plaintiff. [4]

24. DOCCS records reflect that Plaintiff was incarcerated at GMCF during the time period pertaining to this action.

25. During that time, GMCF had a fully functioning inmate grievance process available. [5]

26. Inmates at GMCF have had full access to CORC by which to appeal from facility-level grievance determinations. [6]

27. Based on an examination of DOCCS records, Plaintiff has filed a number of grievance appeals with CORC; however, none of these appeals concern matters stemming from alleged incidents of harassment, assault, threats, retaliation, and religious discrimination during the period from June 2011 through October 2011. [7]

28. Grievance No. GM-51889-11 (Case Code: "Staff Conduct"/Title: "Assaulted by Escort Officers") was filed on May 3, 2011, before the alleged events of June 2011 through October 2011. [8]

29. Grievance No. FPT-25472-11 (Case Code: "Staff Conduct"/Title: "Assaulted at Great Meadow") was filed on November 22, 2011, after Plaintiff had been transferred to Five Points Correctional Facility.

30. This grievance concerned an incident that occurred at GMCF on November 15, 2011, and did not allege that Defendants Kelly, Goodman, Waite, or Jenkins were in any way involved. [9]

[2]   Plaintiff objects to the extent that this statement suggests any legal (rather than factual) conclusions. This statement is therefore admitted only to the extent it is a factual assertion.

[3]   See, supra, note 2 of this Decision and Order.

[4]   Plaintiff admits that the cited Declaration supports this statement but objects because he does not have personal knowledge of CORC staff's actions and because the statements were made in a declaration rather than a deposition or other proceeding where Plaintiff would have been able to question the declarant. (Dkt. No. 132, Attach. 10, at ¶ 23 [Pl.'s Rule 7.1 Statement].) However, because Plaintiff does not cite any evidence contradicting the statement, this fact is deemed admitted. Archie Comic Publ'ns, Inc. v. DeCarlo, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003) (holding that "the facts set forth in [plaintiff's] statement are deemed established" where defendant denied assertions in plaintiffs Rule 56.1 statement but declined to provide record citations in support).

[5]   See, supra, note 4 of this Decision and Order.

[6]   Id.

[7]   Plaintiff denies this statement, but fails to cite evidence supporting his denial. The evidence cited by Plaintiff supports the fact that Plaintiff filed an appeal with CORC regarding the grievance of November 22, 2011, but does not contradict Defendant's statement that Plaintiff had not filed appeals regarding the alleged incidents occurring

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 88 of 131

Ferrer v. Racette, Not Reported in Fed. Supp. (2017)

2017 WL 6459525

between June 2011 and October 2011. This fact is therefore deemed admitted. *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319.

8   Plaintiff denies this statement, arguing that the exhibit supporting this statement in Ms. Seguin's Declaration extends back to June 1, 2011. (Dkt. No. 132, Attach. 10, at ¶ 28 [Pl.'s Rule 7.1 Resp.].) However, Exhibit A to Ms. Seguin's Declaration does in fact contain the entry mentioned and cited by Defendants regarding a grievance filed on May 3, 2011. (Dkt. No. 127, Attach. 7, at 2 [Seguin Decl.].) Plaintiff's denial is therefore unsupported and this statement is deemed admitted. *See Holtz v. Rockafeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001) (noting that "where the cited materials do not support the factual statement in the Statements, the Court is free to disregard the assertions").

9   *See, supra*, note 2 of this Decision and Order.

**D. Undisputed Material Facts on Defendants Beecher, Burch, and McClenning's Motion for Summary Judgment**

**\*5** Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts and expressly admitted by Plaintiff in his response thereto or denied without appropriate record citations. (*Compare* Dkt. No. 128, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 132, Attach. 11 [Pl.'s Rule 7.1 Resp.].)

1.  Plaintiff is an inmate in the custody of DOCCS, serving an indeterminate sentence of 18 to 21 years based upon his convictions for First Degree robbery, Second Degree assault, and two counts of Third Degree criminal possession of a weapon.

2.  Plaintiff was incarcerated at GMCF and housed in the Behavioral Health Unit ("BHU") from approximately April 2011 until the date of the alleged excessive force and retaliation claims on November 15, 2011.

3.  At his deposition, Plaintiff testified that, before November 15, 2011, he had no problems with Defendants Beecher, Burch, or McClenning.

4.  At his deposition, Plaintiff testified that, before November 15, 2011, he was familiar with Defendant Beecher only to the extent that he had seen him around the BHU on occasion as a relief officer.

5.  Before November 15, 2011, Defendant Beecher was not familiar with Plaintiff, and had never interacted with him.

6.  At his deposition, Plaintiff testified that, before November 15, 2011, he was familiar with Defendant McClenning only to the extent that Plaintiff knew that Defendant McClenning was the regular officer who worked in the draft area at GMCF.

7.  At his deposition, Plaintiff testified that, before November 15, 2011, he was not familiar with Defendant Burch.

8.  At their depositions, Defendant Burch and Defendant McClenning testified that they did not know Plaintiff was Muslim.

9.  At his deposition, Plaintiff testified that, before November 15, 2011, he had never filed a complaint or grievance against Defendants Beecher, Burch, or McClenning.

10. Plaintiff's grievance dated November 20, 2011, regarding the underlying November 15, 2011, incident at GMCF did not name Defendants Beecher, Burch, or McClenning, and did not include any claim of retaliation. [10]

11. Although Plaintiff alleges various acts of retaliation at GMCF before November 15, 2011, based on his religion and the writing of complaints and grievances, Plaintiff fails to identify a single act of retaliation that involved Defendants Beecher, Burch, or McClenning.

12. At his deposition, Plaintiff testified that he did not know whether anyone informed Defendant Burch or Defendant McClenning, or that either of them were aware, that Plaintiff had filed any complaints or grievances against anyone at GMCF.

13. Plaintiff's sole allegations of retaliation against Defendants Beecher, Burch, and McClenning occurred on November 15, 2011, after he was brought to the GMCF draft area for a transfer from GMCF to another correctional facility.

14. Specifically, Plaintiff alleges that, after he was escorted from the BHU to the draft area by Defendant Morin, he was placed into a draft cell with Inmate Burkett, who had also been housed in the BHU.

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 89 of 131

Ferrer v. Racette, Not Reported in Fed. Supp. (2017)

2017 WL 6459525

15. Although Plaintiff alleges that Defendant Morin called Plaintiff a "rat" and told Inmate Burkett that "this was his chance to beat [Plaintiff] and that corrections officers would not see anything," and that, as Inmate Burkett threatened to attack Plaintiff for being a "rat" and they argued in the cell, Plaintiff also alleges that a corrections officer, "believed to be" Defendant McClenning, entered the cell and grabbed Inmate Burkett by the collar, and that Defendant Burch entered the cell and physically removed Plaintiff and placed him in a separate draft cell. [11]

**\*6** 16. After Defendant Burch separated Plaintiff from Inmate Burkett and left Plaintiff's draft cell, Plaintiff alleges that Defendant Burch threatened Plaintiff to "keep running his mouth," called him an "Al Qaeda motherfucker," and told him that he better "forget what happened." [12]

17. Plaintiff alleges that Defendant Beecher assaulted him after he arrived in the draft cell area, called Plaintiff out of his draft cell, remarked that "he remembered [him] from the BHU," and "commented that [Plaintiff] liked to write up officers and that he wrote up Defendant Jenkins."

18. Plaintiff alleges that, thereafter various Defendants and unidentified officers assaulted him, and that, during the assault (other than unidentified officers and other non-moving Defendants), only Defendant Burch "yelled that he hated Muslims and would kill [Plaintiff] and spit on him."

19. Plaintiff alleges that "upon information and belief," the assault of November 15, 2011, "was orchestrated as a final act of retaliation for his religion and for his grievances and complaints."

[10]    See, supra, note 2 of this Decision and Order.

[11]    Plaintiff admits this fact but asserts that Defendant Burch "grabbed [him], threw him across the bullpen, [ ] kicked him" and "dragged him to another bullpen." (Dkt. No. 132, Attach. 11, at ¶ 18 [Pl.'s Rule 7.1 Resp.].) However, to the extent that Plaintiff desired to set forth additional material facts that he contends are in dispute, he was required by Local Rule 7.1(a)(3) to do so in separately numbered paragraphs. *See Johnson v.*

*City of Troy*, 14-CV-0817, 2016 WL 5107124, at *8 n.12 (N.D.N.Y. Sept. 20, 2016) (Suddaby, C.J.).

[12]    See, supra, note 11 of this Decision and Order.

**E. Parties' Briefing on the Pending Motions**

**1. Plaintiff's Motion for Partial Summary Judgment**

**a. Plaintiff's Memorandum of Law**

Generally, in his memorandum of law, Plaintiff argues that the counterclaims for assault and battery by Defendants Beecher, Burch, and McClenning should be dismissed because they are barred by the governing statute of limitations. (Dkt. No. 126, Attach. 8, at 5-8 [Pl.'s Mem. of Law].) [13] More specifically, Plaintiff argues that, because these counterclaims were brought under state law, the applicable statute of limitations is New York's one-year statute of limitations. (*Id.* at 6.) Accordingly, Plaintiff argues that Defendants were required to assert their claims for assault and battery no later than November 15, 2012 (one year after the incident at issue), but did not do so until September 2, 2015. (*Id.*) Plaintiff also argues that there is no basis for tolling the statute of limitations on these claims. (*Id.* at 6-7.)

[13]    Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the respective documents.

**b. Defendants' Opposition Memorandum of Law**

Generally, in their opposition memorandum of law, Defendants concede that New York's one-year statute of limitations applies to their counterclaims, but argue that these counterclaims are not time-barred based on federal and state civil procedure rules. (Dkt. No. 131, at 4-6 [Defs.' Opp'n Mem. of Law].) More specifically, Defendants argue that their counterclaims were compulsory because they arose out of the same transaction as did Plaintiff's claims, and that the New York Civil Practice Law and Rules ("N.Y.C.P.L.R.") state that such related counterclaims would not be barred even if they would have been barred at the time the Complaint was filed. (*Id.* at 4-5.)

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 90 of 131

Ferrer v. Racette, Not Reported in Fed. Supp. (2017)

2017 WL 6459525

### 2. Defendants Goodman, Kelly, Waite, and Jenkins' Motion for Summary Judgment

#### a. Defendants' Memorandum of Law

**\*7** Generally, in their memorandum of law, Defendants Goodman, Kelly, Waite, and Jenkins make five arguments. (Dkt. No. 127, Attach. 22, at 8-17 [Defs.' Mem. of Law].) First, Defendants argue that Plaintiff failed to exhaust his available administrative remedies before commencing the present action as required by the Prison Litigation Reform Act of 1995 ("PLRA"). (*Id.* at 8-11.) More specifically, Defendants argue that Plaintiff did not file any grievances related to the alleged violations of his rights during the period between June 2011 and October 2011, and that Plaintiff does not allege that any of these Defendants were involved in the incidents for which he did file grievances. (*Id.* at 10-11.) Defendants argue that Plaintiff's letters reporting the alleged conduct to Superintendent Racette and others do not satisfy the exhaustion requirement because there is no evidence that he appealed the responses related to any of these letters to CORC as required by DOCCS policies. (*Id.* at 11.)

Second, these Defendants argue that Plaintiff's claims against Defendants Waite and Jenkins are barred by the governing statute of limitations. (*Id.* at 12-13.) More specifically, Defendants argue that because the conduct Plaintiff reported occurred on August 23, 2011 (as to Defendant Waite), and on September 12, 2011 (as to Defendant Jenkins), Plaintiff was required to file claims against them by August 23, 2014, and September 12, 2014, respectively, based on the applicable three-year statute of limitations. (*Id.* at 12.) Defendants additionally argue that any instances of verbal threats or harassment after those dates would not serve to make Plaintiff's claims against these Defendants timely, and, even if they did, Plaintiff does not allege that any such incidents occurred after September 2011. (*Id.* at 12-13.)

Third, these Defendants argue that Plaintiff has not alleged or shown that Defendants Goodman and Kelly were personally involved in any of the alleged constitutional violations because they merely assigned their subordinates to investigate Plaintiff's allegations and relied on the conclusions of those subordinates. (*Id.* at 14-15.)

Fourth, these Defendants argue that, to the extent Plaintiff asserts claims for damages against these Defendants in their official capacities, those claims would be barred by the Eleventh Amendment. (*Id.* at 15-16.)

Fifth, and finally, these Defendants argue that they are entitled to qualified immunity as a matter of law because their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. (*Id.* at 16-17.)

#### b. Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff makes five arguments. (Dkt. No. 132, Attach. 9, at 8-20 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that the evidence shows that he properly exhausted his administrative remedies against Defendants Goodman, Kelly, and Jenkins under the PLRA. (*Id.* at 8-10.) Specifically, Plaintiff argues that (a) he timely filed a grievance related to the incident of November 15, 2011, (b) he was notified by Defendant Goodman on December 6, 2011, that the investigation into his grievance could not be completed until a pending investigation by the Inspector General was finished, (c) a subsequent response from the superintendent on December 12, 2011, reiterated the conclusion of Defendant Goodman's letter, (d) he appealed that response to CORC on December 16, 2011, and (e) CORC responded on April 25, 2012, upholding the decision to wait until the conclusion of the Inspector General's investigation. (*Id.* at 9.)

Second, Plaintiff concedes that his claims against Defendant Waite are barred by the statute of limitations, but argues that his claims against Defendant Jenkins are not barred. (*Id.* at 10-11.) Specifically, Plaintiff argues that, although Defendant Jenkins did not directly participate in the incident on November 15, 2011, that attack was a continuation of the violations he had been perpetrating against Plaintiff in the previous months based on the statements he alleges that Defendant Beecher made during the incident on November 15, 2011. (*Id.*) Plaintiff argues that, because the incident on November 15, 2011, was in part based on retaliation for his filing of grievances against Defendant Jenkins, Defendant Jenkins' actions were "a continuing wrong" that did not accrue until that date. (*Id.* at 11.)

**\*8** Third, Plaintiff argues that Defendants Goodman and Kelly were personally involved in the incident of November 15, 2011, based on (a) their failure to remedy violations once they learned of them, (b) their failure to act on information

Ferrer v. Racette, Not Reported in Fed. Supp. (2017)

2017 WL 6459525

that violations were occurring, (c) their failure to stop or change policies under which violations occurred, and (d) their gross negligence in training or supervising their subordinates who committed the violations. (*Id.* at 11-18.)

Fourth, Plaintiff argues that, because he did not assert any claims against these Defendants in their official capacity, Defendant's Eleventh Amendment argument is not applicable. (*Id.* at 18.)

Fifth, and finally, Plaintiff argues that these Defendants are not entitled to qualified immunity because the nature of the alleged violations of his rights was clearly established to be unconstitutional at the time that they were committed. (*Id.* at 19-20.) Plaintiff argues that the failure to meaningful supervise subordinate officers was also clearly established to be unconstitutional at the time of the alleged violations. (*Id.*)

### c. Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants make three arguments. (Dkt. No. 136, at 3-7 [Defs.' Reply Mem. of Law].) First, Defendants argue that, even if Plaintiff can show that he exhausted his administrative remedies related to the incident on November 15, 2011, there is no evidence that he exhausted any of his claims related to incidents occurring before that date against these Defendants (who were not involved in the incident of November 15, 2011). (*Id.* at 3-5.) Defendants also argue that the Inspector General's report does not support Plaintiff's claims against these Defendants because that report concerned only the incident of November 15, 2011. (*Id.* at 4-5.)

Second, Defendants argue that the continuing-violation doctrine does not apply to Plaintiff's claims against Defendant Jenkins because Defendant Jenkins' conduct and the incident of November 15, 2011, were separate occurrences. (*Id.* at 5-6.) Defendant also argues that, to the extent claims against Defendants Goodman and Kelly are based on time-barred incidents involving Defendants Waite and Jenkins, those claims are also time-barred. (*Id.* at 6.)

Third, Defendants argue that the authorities that Plaintiff relies on to argue that Defendants Goodman and Kelly were personally involved in the alleged incidents are inapposite. (*Id.* at 6-7.) Specifically, Defendants argue that, unlike the defendants in the cases cited by Plaintiff, Defendants Goodman and Kelly did not directly participate

in unconstitutional conduct nor were they on notice of actual unconstitutional conduct. (*Id.*) Defendants also argue that Plaintiff's reliance on cases discussing municipality liability is erroneous because there is a difference between supervisory liability and municipal liability for the purposes of failing to train or supervise. (*Id.* at 7.)

### 3. Defendants Beecher, Burch, and McClenning's Motion for Partial Summary Judgment

#### a. Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants Beecher, Burch, and McClenning argue that Plaintiff has failed to establish a First Amendment retaliation claim against them. (Dkt. No. 128, Attach. 11, at 9-11 [Defs.' Mem. of Law].) Specifically, Defendants argue that they were not involved with Plaintiff or the subject of any grievances filed by him before November 15, 2011, and that there is no evidence that Defendants knew on November 15, 2011, that Plaintiff is a Muslim or that he had filed grievances against other corrections officers. (*Id.* at 10.) Defendants argue that, at the time of the incident. Plaintiff was engaged in a fight with Inmate Burkett and was creating a disturbance, actions that provided a legitimate reason for Defendants' actions in physically separating Plaintiff from Inmate Burkett and moving him to a different cell. (*Id.*) Defendants also argue that Plaintiff failed to state a conspiracy claim and provided no evidence that these Defendants conspired against him or otherwise agreed to retaliate against Plaintiff for his religion or previous grievances. (*Id.* at 10-11.)

#### b. Plaintiff's Opposition Memorandum of Law

**\*9** Generally, in his opposition memorandum of law, Plaintiff argues that he sufficiently established a retaliation claim against these Defendants. (Dkt. No. 132, Attach. 9, at 20-22 [Pl.'s Opp'n Mem. of Law].) Specifically, Plaintiff argues that the Defendants' actions during the incident of November 15, 2011, were in retaliation for Plaintiff having previously filed grievances against corrections officers and for his religion. (*Id.* at 21.) Plaintiff also argues that Defendants' motion should be denied because there is a genuine dispute of material fact as to what statements Defendants made about their motive for the use of force and

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 92 of 131

Ferrer v. Racette, Not Reported in Fed. Supp. (2017)

2017 WL 6459525

this evidence is key to determining retaliatory intent. (*Id.* at 22.)

### c. Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants argue that Plaintiff has failed to make any showing that Defendants had prior knowledge about Plaintiff's grievances or his religion, or that their actions on November 15, 2011, were anything other than an effort to control Plaintiff's behavior in the draft area. (Dkt. No. 135, at 4-5 [Defs.' Reply Mem. of Law].)

## II. GOVERNING LEGAL STANDARDS

### A. Legal Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). [14] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

[14]    As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the

non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

### B. Legal Standard Governing Exhaustion Under the PLRA

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In this regard, exhaustion serves two major purposes. First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

**\*10** In accordance with the PLRA, the New York State Department of Correctional Services ("DOCS") has made available a well-established inmate grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7. [15] First, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence. [16] If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 93 of 131

Ferrer v. Racette, Not Reported in Fed. Supp. (2017)

2017 WL 6459525

from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing. Second, a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal. Third, a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision. CORC is to render a written decision within a certain number of days of receipt of the appeal.

15   *See also Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *1 & n.1 (N.D.N.Y. March 31, 2010) [citation omitted].

16   The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor. The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review. Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house," by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. A similar "special" procedure is provided for claims of discrimination against an inmate. 7 N.Y.C.R.R. § 701.9.

Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal. *Woodford,* 548 U.S. at 93; *Porter,* 534 U.S. at 524; *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir. 2006). However, a plaintiff's failure to exhaust does not end the inquiry. This is because certain exceptions exist to the exhaustion requirement. In *Ross v. Blake,* 136 S. Ct. 1850, 1862 (2016), the Supreme Court rejected the "special circumstances" exception applied by many circuits, holding that "[c]ourts may not engraft an unwritten 'special circumstance' onto the PLRA's exhaustion requirement." *Ross,* 136 S. Ct. at 1862; *see Williams v. Corr. Officer Priatno,* 829 F.3d 118, 123 (2d Cir. 2016) ("[T]o the extent that our special circumstances exception established in *Giano v. Goord,* 380 F.3d 670, 675-76 (2d Cir. 2004), and *Hemphill,* 380 F.3d at 689-91, permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, in fact, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.") (emphasis in original).

Thus, "post-*Ross,* the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are 'available' to him." *Mena v. City of New York,* 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) (citing *Ross,* 136 S. Ct. at 1862). To guide courts in this analysis, the Supreme Court has identified three kinds of circumstances in which an administrative remedy, "although officially on the books," is not "available." *Ross,* 136 S. Ct. at 1859.

*11   First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

## III. ANALYSIS

### A. Whether the State Law Counterclaims by Defendants Beecher, Burch, and McClenning Are Barred By the Statute of Limitations

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' opposition memorandum of law. (Dkt. No. 131, at 4-5 [Defs.'

Case 9:19-cv-01352-GTS-TWD  Document 29  Filed 11/17/20  Page 94 of 131

Ferrer v. Racette, Not Reported in Fed. Supp. (2017)

2017 WL 6459525

Opp'n Mem. of Law.].) To those reasons, the Court adds the following analysis.

In response to Plaintiff's argument that Defendants' counterclaims are time-barred, Defendants argue that N.Y.C.P.L.R. § 203(d) permits them to bring those counterclaims, which they assert are compulsory. (Dkt. No. 131, at 4-5 [Defs.' Opp'n Mem. of Law].) Rule 13(a) of the Federal Rules of Civil Procedure defines a compulsory counterclaim as any counterclaim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require the presence of third parties of whom the court cannot acquire jurisdiction," and indicates that the answering party must state any compulsory counterclaim it has against the opposing party in its pleading. Fed. R. Civ. P. 13(a). Rule 13(a) does not state whether those compulsory counterclaims must be timely at the time they are asserted. Id. However, N.Y.C.P.L.R. § 203(d) states that, if a counterclaim "arose from the same transactions, occurrences, or series of transactions or occurrences upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed." N.Y.C.P.L.R. § 203(d). The language of Section 203(d) therefore indicates that a defendant would not be barred from asserting compulsory counterclaims in an action even if those counterclaims would otherwise be time-barred if brought in a separate action. See Curry v. Huntington Copper, LLC, 12-CV-1673, 2014 WL 4828106, at *2 (N.D.N.Y. Sept. 29, 2014) (Hurd, J.) (noting that N.Y.C.P.L.R. § 203[d] "allows a defendant 'to assert an otherwise untimely claim which arose out of the same transactions alleged in the complaint' ") (quoting Carlson v. Zimmerman, 882 N.Y.S.2d 139, 141 [N.Y. App. Div. 2009] ).

Defendants' counterclaims are clearly compulsory according to Fed. R. Civ. P. 13(a) and N.Y.C.P.L.R. § 203(d), because they allege an assault and battery that occurred during the same physical altercation that is the basis for Plaintiff's claims against Defendants Beecher, Burch, and McClenning. (Dkt. No. 1, at 8-14 [Compl.]; Dkt. No. 34, at 6-8 [Answer].) Because, as Plaintiff acknowledges, these counterclaims are based on state law, and because they "arose from the same transactions, occurrences, or series of transactions or occurrences" as Plaintiff's claims, N.Y.C.P.L.R. § 203(d) indicates that Defendants are not barred from asserting these claims in this action despite the fact that they would otherwise be untimely. See Global Crossing Bandwidth,

Inc. v. Locus Telecomm., Inc., 632 F. Supp. 2d 224, 247-48 (W.D.N.Y. 2009) (citing cases where federal courts applied Section 203[d] to state law claims, and finding that plaintiff was permitted to assert time-barred claims to offset defendant's counterclaims where the claims arose from the same transactions as the counterclaims); Am. Stock Exch., LLC v. Mopex, Inc., 230 F. Supp. 2d 333, 335 (S.D.N.Y. 2002) (noting that defendant could have asserted relevant claims pursuant to Section 203[d] at the time it filed its original answer and counterclaims even if those claims were otherwise time-barred, but could not do so in an amended answer). Plaintiff's motion for partial summary judgment is therefore denied.

### B. Whether Plaintiff Exhausted His Available Administrative Remedies as to the Claims Against Defendants Goodman, Kelly, Waite, and Jenkins

**\*12** After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 127, Attach. 22, at 8-11 [Defs.' Mem. of Law]; Dkt. No. 136, at 3-5 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

"The [PRLA] mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross, 136 S.Ct. at 1854-55 (quoting 42 U.S.C. § 1997e[a] ). As discussed above in Part II.B. of this Decision and Order, the Supreme Court has therefore interpreted the Prison Litigation Reform Act to require exhaustion of administrative remedies in all circumstances so long as those remedies were actually available to the inmate. Ross, 136 S.Ct. at 1856-58. Additionally, the inmate must exhaust every claim he raises in a case before a federal court. See Moreau v. Peterson, 672 Fed.Appx. 119, 121 (2d Cir. 2017) (finding dismissal of four of six claims was proper because the plaintiff did not file grievances on those four claims); Shariff v. Coombe, 655 F. Supp. 2d 274, 287-90 (S.D.N.Y. 2009) (noting that, "in order to maintain a claim in this action, each [p]laintiff must have individually exhausted his administrative remedies with respect to that claim" and dismissing claims for which there was no evidence that grievances had ever been filled related to those specific claims); Collins v. Goord, 438 F. Supp. 2d 399, 413-14 (S.D.N.Y. 2006) (dismissing some of the plaintiff's claims because he did not file grievances or appeal any grievances related to those specific claims). "Because failure to exhaust is an affirmative defense, ... defendants bear the initial burden of establishing, by pointing to 'legally

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 95 of 131

Ferrer v. Racette, Not Reported in Fed. Supp. (2017)

2017 WL 6459525

sufficient sources' such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cnty. Sheriff's Dept., 788 F.3d 54, 59 (2d Cir. 2015)* (citations omitted). "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability." *Smith v. Kelly, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)* (Suddaby, J.) (citation omitted).

Both parties agree that DOCCS has an applicable procedure for inmate grievances, which is outlined in 7 NYCRR § 701.5. (Dkt. No. 127, Attach. 22, at 9-10 [Defs.' Mem. of Law]; Dkt. No. 132, Attach. 9, at 9 [Pl.'s Opp'n Mem. of Law].) Additionally, Plaintiff does not allege that the grievance procedure was unavailable to him for the relevant claims against Defendants Goodman, Kelly, Waite, and Jenkins. (Dkt. No. 132, Attach. 9, at 8-10 [Pl.'s Opp'n Mem. of Law].) Instead, Plaintiff argues that the grievance he filed regarding the incident on November 15, 2011, which he appealed to CORC, was sufficient to exhaust his administrative remedies.

The Court agrees with Defendants that whether Plaintiff exhausted his remedies regarding the incident on November 15, 2011, does not answer the question of whether Plaintiff exhausted his remedies regarding the claims asserted against Defendants Goodman, Kelly, Waite, and Jenkins. (Dkt. No. 136, at 3-5 [Defs.' Reply Mem. of Law].) In the grievance regarding the incident on November 15, 2011, Plaintiff alleges he was attacked and assaulted by unnamed corrections officers in the draft processing area at GMCF. (Dkt. No. 127, Attach. 8, at 8.) In his Complaint, Plaintiff identifies the officers involved in that incident as Defendants Morin, McClenning, Burch, Schlogl, Beecher, Frazier, and Livermore. (Dkt. No. 1, at ¶¶ 43-67 [Compl.].) Plaintiff never alleges that Defendants Goodman, Kelly, Waite, or Jenkins participated in the incident on November 15, 2011. The specific mentioning of seven officers other than Defendants Goodman, Kelly, Waite, and Jenkins did not place DOCCS on reasonable notice of his claims against those four Defendants such that they could know of, and investigate, those claims. The grievance regarding the incident on November 15, 2011, therefore does not provide evidence that Plaintiff exhausted his administrative remedies on his specific claims against Defendants Goodman, Kelly, Waite, and Jenkins.

*13 Nor does the evidence substantiate that Plaintiff otherwise exhausted his administrative remedies against these Defendants. The conduct that is the basis for Plaintiff's claims against these Defendants occurred before November 2011; however, a list of grievances from the DOCCS database shows only a grievance for assault by an escort officer filed on May 3, 2011, and a grievance related to mail on June 1, 2011. (Dkt. No. 127, Attach. 7, at 2.) However, even the filing of a grievance is not by itself sufficient to exhaust administrative remedies. Rather, DOCCS policy requires an inmate to appeal a denial of his grievance, first to the superintendent, and then to CORC. 7 NYCRR § 701.5. In a declaration dated July 17, 2017, Rachel Seguin, the Assistant Director of the Inmate Grievance Program for DOCCS, stated that Plaintiff had filed appeals with CORC in the past, but that "none of these appeals concern matters stemming from alleged incidents of harassment, assault, threats, retaliation, and religious discrimination during the period from June 2011 through October 2011." (Dkt. No. 127, Attach. 6, at 4-5 [Seguin Decl.].) The evidence submitted by Plaintiff and Defendants does show that Plaintiff wrote letters to Superintendent Racette and Defendant Kelly regarding conduct by Defendants Waite and Jenkins in June and September 2011. (Dkt. No. 132, Attach. 3, at 2; Dkt. No. 123, Attach. 4, at 2-3; Dkt. No. 127, Attach. 14, at 2-7; Dkt. No. 127, Attach. 17, at 2-4.) However, even if these letters were to be construed as grievances (a finding that would be contrary to established law),[17] there is no evidence that Plaintiff appealed the responses (to any of these complaints) to CORC as required by 7 NYCRR § 701.5. Notably, Plaintiff never attempts to argue as much, focusing instead solely on the appeals related to the incident on November 15, 2011. (Dkt. No. 132, Attach. 9, at 9-10 [Pl.'s Opp'n Mem. of Law].)

[17]  See *Nelson v. Rodas*, 01-CV-7887, 2002 WL 31075804, at *3 (S.D.N.Y. Sept. 17, 2002) ("Courts have repeatedly held that complaint letters to the [DOCCS] Commissioner or the facility Superintendent do not satisfy the PRLA's exhaustion requirements.").

Because Defendants met their initial burden to show that there was an applicable grievance procedure and that Plaintiff failed to avail himself of that procedure, Plaintiff had the burden of providing contrary evidence of exhaustion or unavailability. However, Plaintiff has not provided evidence that he exhausted any claims related to conduct occurring before November 2011, or that the applicable grievance procedures were unavailable to him. Consequently, there is

Case 9:19-cv-01352-GTS-TWD     Document 29     Filed 11/17/20     Page 96 of 131
Ferrer v. Racette, Not Reported in Fed. Supp. (2017)
2017 WL 6459525

no genuine dispute of material fact as to whether Plaintiff failed to exhaust his administrative remedies with regard to any claim against Defendants Goodman, Kelly, Waite, and Jenkins. Defendant's motion for summary judgment on this issue is therefore granted.[18]

[18]     Dismissal for failure to exhaust is ordinarily without prejudice to allow the plaintiff-prisoner a chance to exhaust his administrative remedies and refile the complaint. *Gizewski v. New York State Dept. of Corrs.*, 14-CV-0124, 2016 WL 3661434, at *14 (N.D.N.Y. July 5, 2016) (Suddaby, C.J.). However, the Court finds that the claims against Defendants Goodman, Kelly, Waite, and Jenkins are alternatively invalid for other reasons (as will be discussed in Parts III.C. and III.D. of this Decision and Order), such as the statute of limitations and lack of personal involvement. Because there is an alternative basis for dismissing the claims against these Defendants that cannot be overcome by allowing Plaintiff a chance to exhaust his administrative remedies, the dismissal is with prejudice.

### C. Whether Plaintiff's Claims Against Defendants Waite and Jenkins Are Barred by the Statute of Limitations

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 127, at 12-13 [Defs.' Mem. of Law]; Dkt. No. 136, at 5-6 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

As discussed above in Part III.B. of this Decision and Order, Plaintiff failed to exhaust his administrative remedies as to any claims other than those related to the incident on November 15, 2011. Consequently, Plaintiff is barred from asserting his claims against Defendants Waite or Jenkins for conduct occurring before the incident on November 15, 2011, regardless of whether those claims are also barred by the statute of limitations. However, for the sake of thoroughness, the application of the statute of limitations (and the unavailability of the continuing-violation doctrine) will be discussed as an alternative basis for granting Defendants' motion for summary judgment on this issue.

For claims arising under Section 1983, the statute of limitations is determined by looking to the law of the state in which the cause of action arose, while the accrual date for the cause of action is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 385 (2007) (citations omitted). Under New York law, the statute of limitations for a Section 1983 action is three years. *Oakes v. Cooke*, 858 F. Supp. 330, 333 (N.D.N.Y. 1994) (McAvoy, J.) (citing N.Y.C.P.L.R. § 214; *Owens v. Okure*, 488 U.S. 235, 249 [1989] ); *see also Green v. Deputy Superintendent*, 12-CV-0606, 2013 WL 1966383, at *3 (W.D.N.Y. May 7, 2013) ("Plaintiff is advised that the statute of limitations for actions filed under 42 U.S.C. § 1983 is three years."). Under federal law, "[a] [Section] 1983 claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.' " *Swergold v. Murray*, 667 Fed.Appx. 342, 342-43 (2d Cir. 2016) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 [2d Cir. 2002] ).

**\*14**     As an initial matter, Plaintiff concedes that the allegations of excessive use of force and retaliation against Defendant Waite are barred by the statute of limitations. (Dkt. No. 132, Attach. 9, at 10 [Pl.'s Opp'n Mem. of Law].) However, he argues that the allegations against Defendant Jenkins are not barred because, although Defendant Jenkins did not participate in the incident on November 15, 2011, that incident was a continuation of his previous alleged violations of Plaintiff's rights. (*Id.*) Because, as Defendants note, the last documented complaint about conduct by Defendant Jenkins occurred in September 2011, Plaintiff's Complaint of November 12, 2014, does not fall within the three-year statute of limitations. (Dkt. No. 127, Attach. 22, at 12 [Defs.' Mem. of Law].) The Court therefore must examine whether the incident on November 15, 2011, was a continuation of Defendant Jenkins' previous conduct such that the claim did not accrue until that date.

The continuing-violation doctrine applies to claims that are "composed of a series of separate acts that collectively constitute one unlawful ... practice." *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004). "The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation[ ],' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (citing *Nat'l R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 [2002] ).

Plaintiff's argument is unpersuasive. Defendant Jenkins did not participate in the incident on November 15, 2011, a fact that Plaintiff admits. (Dkt. No. 132, Attach. 9, at 10 [Pl.'s

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 97 of 131

Ferrer v. Racette, Not Reported in Fed. Supp. (2017)

2017 WL 6459525

Opp'n Mem. of Law].) Nor does Plaintiff allege or provide any evidence that Defendant Jenkins suggested, persuaded, or in any way caused other Defendants to commit such actions. Plaintiff's theory of a continuing violation relies entirely on the alleged statements by participating Defendants regarding Plaintiff's complaints about Defendant Jenkins' conduct; however, even if true, those allegations do not establish that Defendant Jenkins was involved in the actions of those Defendants. The allegation that other Defendants assaulted Plaintiff in part in retaliation for his complaints against Defendant Jenkins does not mean that their actions can be imputed to Defendant Jenkins. Nor does the pattern of incidents that Plaintiff alleges leading up to, and including, the incident on November 15, 2011, suggest that these actions were "a single wrong" that accrued only after a "threshold amount of mistreatment," rather than discrete acts by different Defendants.

The only case Plaintiff cites in support of his argument is *Laureano v. Goord*, 06-CV-7845, 2007 WL 2826649 (S.D.N.Y. Aug. 31, 2007). (Dkt. No. 132, Attach. 9, at 10-11 [Pl.'s Opp'n Mem. of Law].) However, this case does not support applying the continuing-violation doctrine to Defendant Jenkins' time-barred conduct. In *Laureano*, the court found that the denial of mental health treatment for an ongoing period of time constituted a continuing violation for two reasons: (1) the fact "it would have been unreasonable to expect [plaintiff] [ ] to file suit the first day he was denied mental health treatment, and then bring additional suits on each subsequent day he was denied treatment, in order to preserve his right to have three full years to bring a claim," and (2) the fact that, "because no one day in which he was denied treatment 'can fairly or realistically be identified as the cause of significant harm, it seems proper to regard the cumulative effect as actionable.' " *Laureano*, 2007 WL 2826649, at *4 (citations omitted). Unlike the ongoing failure to provide mental health treatment in *Laureano*, the alleged violations of Plaintiff's rights were discrete acts that each produced their own identifiable harm. Therefore, the discussion in *Laureano* supports this Court's finding that Defendant Jenkins' acts were not part of a continuing violation culminating in the incident on November 15, 2011. Because the Court finds that the continuing-violation doctrine is not applicable and there is no genuine dispute of material fact as to whether Defendant Jenkins was personally involved in the incident of November 15, 2011, summary judgment is granted to Defendants Waite and Jenkins regarding the time-barred claims Plaintiff asserts against them.

### D. Whether Defendants Goodman and Kelly Were Personally Involved in the Alleged Violations

**\*15** After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 127, Attach. 22 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis.

"To establish the liability of a supervisory official under [Section] 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations." *Richardson v. Goord*, 346 F.3d 431, 435 (2d Cir. 2003) (citing *Green v. Bauvi*, 46 F.3d 189, 194 [2d Cir. 1995] ). The Second Circuit has identified five ways in which supervisory liability can be established: "(1) actual direct participation in the constitutional violation; (2) failure to remedy a wrong after being informed through a report or appeal; (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such policy or custom to continue; (4) grossly negligent supervision of subordinates who committed a violation; or (5) failure to act on information indicating that unconstitutional acts were occurring." *Richardson*, 346 F.3d at 435 (quoting *Hernandez v. Keane*, 341, F.3d 137, 145 [2d Cir. 2003] ).

Plaintiff argues that Defendants Goodman and Kelly were personally involved in the violations committed by the other Defendants based on their (a) failure to remedy violations after learning of them, (b) failure to act on information that unconstitutional practices were occurring, (c) creation or continuance of policies or customs under which violations occurred, and (d) gross negligence in training or supervising the subordinate Defendants. (Dkt. No. 132, Attach. 9, at 12 [Pl.'s Opp'n Mem. of Law].)

The majority of the evidence related to Defendants Goodman and Kelly is from incidents that occurred before November 15, 2011; and the letters related to those incidents are the focus of the narrative in Plaintiff's memorandum of law. (Dkt. No. 132, Attach. 9, at 12-16 [Pl.'s Opp'n Mem. of Law].) As discussed above in Part III.B. of this Decision and Order, Plaintiff did not exhaust any claims related to these incidents. Consequently, to the extent that Plaintiff is asserting that Defendants Goodman and Kelly were personally involved in violations for which he has not exhausted his administrative remedies, he is barred from bringing those claims regardless of whether he can establish personal involvement. Additionally, to the extent Plaintiff argues personal involvement in these specific incidents, those

2017 WL 6459525

claims would also be barred by the statute of limitations, because all of these incidents occurred more than three years before the filing of the Complaint on November 12, 2014, and the continuing-violation doctrine is inapplicable. (Dkt. No. 127, Attach. 22, at 15 [Defs.' Mem. of Law].)

With respect to the incident on November 15, 2011, the only evidence of personal involvement by either of these Defendants was a letter dated December 6, 2011, in which Defendant Goodman [19] indicated that an investigation into Plaintiff's grievance could not be completed until the Inspector General finished its investigation into the incident. [20] (Dkt. No. 127, Attach. 8, at 10.) Plaintiff has not adduced evidence that Defendant Goodman's involvement was anything greater than receiving Plaintiff's grievance and responding with a letter indicating that the incident had been referred to the Inspector General for investigation. This very limited role does not establish that Defendant Goodman was personally involved in the incident on November 15, 2011. *See Goris v. Breslin*, 402 Fed.Appx. 582, 584 (2d Cir. 2010) (upholding a grant of summary judgment to defendant based on failure to establish personal involvement where the defendant's involvement was limited to receipt of two letters from the plaintiff, both of which were promptly referred to other individuals for investigation and response); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (upholding dismissal of a claim against the Department of Corrections Commissioner for lack of personal involvement where that defendant received two letters from the plaintiff, one of which [an appeal from an administrative hearing] he referred to a different defendant for decision and the other of which [a request for a status update] he responded to in order to inform plaintiff that a decision had been made on the subject of the first letter); *McDay v. Bushey*, 14-CV-0997, 2016 WL 6638182, at *4 (N.D.N.Y. Aug. 10, 2016) (Baxter, M.J.) report and recommendation adopted by 2016 WL 6637969 (N.D.N.Y. Nov. 9, 2016) (Sharpe, J.) ("A supervisory official cannot be liable for a constitutional violation merely because he received a grievance or complaint from an inmate and referred the grievance to another individual for investigation.").

[19]    Notably, Plaintiff does not allege that Defendant Kelly was involved at all in the incident on November 15, 2011. In his deposition, Defendant Kelly states that he was away from GMCF on vacation beginning on November 7, 2011, and that he did not return to GMCF after

that time. (Dkt. No. 127, Attach. 11, at 91-92 [Kelly Decl.].) There is no contrary evidence that Defendant Kelly was involved in Plaintiff's grievance related to the incident on November 15, 2011. Consequently, there is no genuine dispute of material fact suggesting Defendant Kelly was personally involved in the incident on November 15, 2011.

[20]    In his deposition, Defendant Goodman stated that he first heard about the incident on November 15, 2011, on the radio as it was occurring, but did not personally respond because it was not his assigned area. (Dkt. No. 127, Attach. 12, at 38-39 [Goodman Decl.].) He later reviewed the watch commander's logbook which contained details of the incident. (*Id.* at 38-41.) He also stated that he did not believe he saw photographs or video of Plaintiff after the incident, did not speak with the officers involved about the incident, and did not speak with the Inspector General about the incident. (*Id.* at 41-47.)

**\*16**    Regarding Plaintiff's arguments that Defendants Goodman and Kelly failed to act on information of violations and to remedy those violations, the Inspector General's report, dated February 5, 2014, noted that (a) Defendants Frazier, Livermore, Burch, Scholgl, and Beecher were issued Notices of Discipline related to the incident, (b) Defendants Frazier, Burch, and McClenning were suspended without pay from November 22, 2011, through March 22, 2012, (c) Defendant Livermore was suspended without pay from November 22, 2011, through February 14, 2012, and (d) Defendant Beecher was suspended without pay from January 11, 2012, through July 10, 2012. (Dkt. No. 136, Attach. 4, at 2-3.) This report establishes that, even though Defendant Goodman and Superintendent Racette decided to postpone investigation into the incident until the Inspector General completed their investigation, Plaintiff's complaints regarding the incident were not merely ignored, as the subordinate Defendants involved in the incident were subject to suspensions and sanctions. This is directly contrary to Plaintiff's assertion that "none of the responsible subordinates were disciplined." (Dkt. No. 132, Attach. 9, at 18 [Pl.'s Opp'n Mem. of Law].) Plaintiff has not provided evidence sufficient to create a genuine dispute of material fact regarding whether the supervisors failed to remedy the violations that occurred on November 15, 2011, or failed to act on information that the incident had occurred.

2017 WL 6459525

Regarding Plaintiff's remaining arguments that Defendants Goodman and Kelly created or continued policies allowing violations of his rights and that they were grossly negligent in supervising the involved officers, Plaintiff offers no evidence to support such arguments in relation to the incident on November 15, 2011; his discussion of evidence in support of this argument is comprised of citations to incidents that were either not exhausted or are time-barred. (Dkt. No. 132, Attach. 9, at 12-16 [Pl.'s Opp'n Mem. of Law].) Plaintiff fails to adduce evidence that would create a dispute of material fact as to whether there was any policy or custom that facilitated the violation of constitutional rights, nor does he even suggest what the alleged policy or custom was other than to state that the multiple alleged violations (including time-barred incidents) indicate a "culture at [GMCF] [ ] where officers knew they could harm and retaliate against inmates with impunity." (*Id.* at 17). *See also Case v. City of New York*, 233 F. Supp. 3d 372, 400 (S.D.N.Y. 2017) (granting motion to dismiss on failure to show personal involvement where the complaint merely alleged that the defendant had a "central role" in "designing and implementing" policies that facilitated constitutional violations); *Richardson v. Dept. of Corr.*, 10-CV-6137, 2011 WL 710617, at *3 (S.D.N.Y. Feb. 28, 2011) (finding that conclusory allegations that a supervisory defendant "was responsible for implementing" rules that allegedly permitted unconstitutional practices was insufficient to establish personal involvement); *Loeber v. Cnty. of Albany*, 216 F. Supp. 2d 20, 24 (N.D.N.Y. 2002) (Hurd, J.) (dismissing claim for no personal involvement where the plaintiff did not claim that the defendant was involved in the events that were the basis of the alleged violations).

Similarly, Plaintiff fails to cite evidence that would support his argument that Defendants Goodman or Kelly were grossly negligent in supervising the relevant Defendants. The Second Circuit has noted that gross negligence is " 'the kind of conduct where the defendant has reason to know of facts creating a high degree of risk of ... harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.' " *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (quoting *Poe v. Leonard*, 282 F.3d 123, 140 n.14, 146 [2d Cir. 2002] ). The Second Circuit further stated that "[t]he standard for gross negligence is satisfied where the plaintiff establishes that the defendant-supervisor was aware of a subordinate's prior substantial misconduct but failed to take appropriate action to prevent similar misconduct." *Raspardo*, 770 F.3d at 117 (citations omitted). In this case, Plaintiff has not provided any evidence

establishing that Defendants Goodman or Kelly were aware of any prior misconduct by the Defendants involved in the incident on November 15, 2011, much less substantial misconduct. Even if this Court considers the complaints for time-barred incidents that involved Defendants Waite and Jenkins, Defendants Goodman and Kelly both testified at their depositions that their process was to review the findings of investigations conducted into those incidents by subordinates and determine whether the investigation had been complete. (Dkt. No. 127, Attach. 11, at 15-16 [Kelly Decl.]; Dkt. No. 127 Attach. 12, at 30-33 [Goodman Decl.].) Because the uncontroverted record evidence establishes that the results of these investigations supported a finding that Plaintiff's allegations were unsubstantiated, these incidents do not serve as evidence that any of the Defendants were engaged in substantial misconduct that would suggest Defendants Goodman and Kelly were grossly negligent in failing to act. Plaintiff has therefore failed to raise a genuine dispute of material fact as to whether Defendants Goodman and Kelly were grossly negligent in supervising the subordinate Defendants.

**\*17** Because there is no genuine dispute of material fact regarding the absence of personal involvement of Defendants Goodman and Kelly in the incident on November 15, 2011, summary judgment is granted to Defendants Goodman and Kelly on this issue.

### E. Whether Defendants Goodman, Kelly, Waite, and Jenkins Are Immune from Suit Based on the Eleventh Amendment and the Doctrine of Qualified Immunity

After carefully considering the matter, the Court answers this question in the negative for the following two reasons.

First, Defendant argues that Plaintiff's claims against Defendants Goodman, Kelly, Waite, and Jenkins are barred by the Eleventh Amendment to the extent that they are asserted against these Defendants in their official capacities. (Dkt. No. 127, Attach. 22, at 15-16 [Defs.' Mem. of Law].) "The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity." *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 [1985] ). However, as Plaintiff argues, there is no indication that he brought his claims against these Defendants in their official capacity (i.e., against the State of New York) rather than in their personal capacities. (Dkt. No. 132, Attach. 9, at 18 [Pl.'s Opp'n Mem. of Law].); *see also Hoit v. Capital Dist. Transp.*

Ferrer v. Racette, Not Reported in Fed. Supp. (2017)

2017 WL 6459525

*Auth.*, 15-CV-0134, 2016 WL 3947613, at \*16 (N.D.N.Y. July 19, 2016) (Suddaby, C.J.). Consequently, the Eleventh Amendment is not applicable to this case.

Second, these Defendants argue that they are entitled to qualified immunity. (Dkt. No. 127, Attach. 22, at 16-17 [Defs.' Mem. of Law].) "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 [2001] ). " '[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.' " *Hope*, 536 U.S. at 737 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 [1986] ). The Supreme Court has defined "unnecessary and wanton inflictions of pain" as "those that are 'totally without penological justification.' " *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 [1981] ). Once a violation has been established, a defendant may still be shielded from liability "if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* at 739 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 [1982] ). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he was doing violates that right.' " *Id.*

The question of whether these Defendants are entitled to qualified immunity is moot in light of the Court's findings that Plaintiff failed to exhaust his claims against them and that the claims against these Defendants are largely barred by the statute of limitations. To the extent that Plaintiff's claims against Defendants Goodman or Kelly are related to the incident on November 15, 2011, these Defendants were not personally involved in that incident and therefore Plaintiff cannot sustain claims against them regardless of whether they are entitled to qualified immunity. [21] Defendants' motion on this issue is therefore denied as moot.

[21]    Defendants Beecher, Burch, and McClenning have not sought summary judgment on the basis of qualified immunity. In any event, without deciding the issue, the Court observes that, based on the legal standards outlined above and the evidence presented with the motions, it would not appear that summary judgment would be appropriate as to those Defendants.

### F. Whether Plaintiff Stated a Sufficient Claim of First Amendment Retaliation Against Defendants Beecher, Burch, and McClenning

**\*18** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 132, Attach. 9, at 20-22 [Pl.'s Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

"In order to state a claim for retaliation in violation of the First Amendment, a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Gonzalez*, 802 F.3d at 222 (quoting *Garcia v. SUNY Health Scis. Ctr.*, 280 F.3d 98, 106-07 [2d Cir. 2001] ). " 'In order to succeed on a retaliation claim, a plaintiff must establish that he engaged in protected conduct and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline him.' " *Seymore v. Joslyn*, 06-CV-1010, 2009 WL 995620, at \*3 (N.D.N.Y. Apr. 14, 2009) (Strom, J.).

Defendants argue that there is no evidence that they knew about Plaintiff's religion or his claims against other officers before November 15, 2011, and that their actions should not be construed as retaliatory because they had a legitimate purpose for using force against Plaintiff: Plaintiff's threatening and antagonistic behavior and disregard for the Defendants' orders necessitated physically removing him to another cell. (Dkt. No. 128, Attach. 11, at 9-11 [Defs.' Mem. of Law]; Dkt. No. 135, at 4-5 [Defs.' Reply Mem. of Law].) However, Plaintiff argues that Defendants Beecher, Burch, and McClenning retaliated against him through their actions on November 15, 2011, because of both the his practice of his religion and his filing of grievances against other corrections officers, notably Defendant Jenkins. (Dkt. No. 132, Attach. 9, at 20-22 [Pl.'s Opp'n Mem. of Law].) Plaintiff cites his own deposition, in which he testified that, on November 15, 2011, Defendant Burch had made comments expressing his dislike for Muslims, and that both Defendant Beecher and Defendant Burch made comments indicating they were aware of the complaints Plaintiff had filed against other corrections officers. (*Id.* at 21.) The temporal proximity between protected activity and adverse action, and the statements made by a defendant regarding his motivation may be factors in determining the existence of a causal connection between a prisoner's protected activity and an adverse action. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y.

Ferrer v. Racette, Not Reported in Fed. Supp. (2017)

2017 WL 6459525

2002). Because of the admissible record evidence adduced by Plaintiff, the Court finds that he has created a genuine dispute of material fact as to whether Defendants took adverse action against him because of Plaintiff's protected activity. Defendants' motion for summary judgment on this issue is denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for summary judgment against the counterclaims of Defendants Beecher, Burch, and McClenning (Dkt. No. 126) is **DENIED**; and it is further

**ORDERED** that Defendants Goodman, Kelly, Waite, and Jenkins' motion for summary judgment (Dkt. No. 127) is **GRANTED in part** and **DENIED in part** such that the following claims are **DISMISSED**:

    (a) Plaintiff's First Cause of Action for excessive use of force as against Defendants Waite and Jenkins;

    **\*19** (b) Plaintiff's Second Cause of Action for retaliation as against Defendants Waite and Jenkins;

    (c) Plaintiff's Third Cause of Action against Defendants Kelly and Goodman; and it is further

**ORDERED** that Defendants Beecher, Burch, and McClenning's motion for partial summary judgment (Dkt. No. 128) is **DENIED**; and it is further

**ORDERED** that **SURVIVING** these motions for summary judgment are the following claims:

    (a) Plaintiff's First Cause of Action for excessive use of force as against Defendants Frazier, Beecher, Burch, Morin, and McClenning;

    (b) Plaintiff's First Cause of Action for failure to intervene during the excessive use of force as against Defendant Livermore;

    (c) Plaintiff's Second Cause of Action for retaliation as against Defendants Frazier, Beecher, Burch, Morin, McClenning, and Livermore; and

    (d) Defendants Beecher, Burch, and McClenning's counter-claims for assault and battery; and it is further

**ORDERED** that counsel are direct to appear on **January 16, 2018 at 1:30 pm** in Syracuse, NY, in chambers for a pretrial conference, at which time counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time to begin on **February 26, 2018** with pretrial submissions being due on **February 5, 2018.** Plaintiff is further directed to forward a written settlement demand to Defendants no later than **January 2, 2018**, and the parties are directed to engage in meaningful settlement negotiations before the conference. In the event that counsel feel settlement is unlikely, counsel may file a letter request at least one week before the scheduled conference advising that settlement is not feasible, and the Court will cancel the conference and issue a trial order scheduling trial for February 26, 2018.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6459525

---

**End of Document**    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 4549206
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Felipe PEREZ, Plaintiff,

v.

Mr. COLON, et al., Defendants.

9:19-CV-722 (GTS/DJS)
|
Filed 06/16/2020

**Attorneys and Law Firms**

FELIPE PEREZ, Plaintiff, Pro Se, 17-A-5251, Sing Sing
Correctional Facility, 354 Hunter Street, Ossining, New York
10562 04-B-2100.

HON. LETITIA JAMES, Attorney General for the State of
New York, OF COUNSEL: NICHOLAS L. ZAPP, ESQ.,
Assistant Attorney General, Attorney for Defendants, The
Capitol, Albany, New York 12224.

**REPORT-RECOMMENDATION and ORDER** [1]

[1]     This matter was referred to the undersigned for
a report-recommendation pursuant to 28 U.S.C. §
636(b) and N.D.N.Y.L.R. 72.3(c).

DANIEL J. STEWART, United States Magistrate Judge

**\*1** Plaintiff, formerly an inmate in the custody of the
New York State Department of Corrections and Community
Supervision ("DOCCS"), commenced this action pursuant to
42 U.S.C. § 1983 alleging violation of various constitutional
rights. *See generally* Dkt. No. 1, Compl. After review
under 28 U.S.C. § 1915(e) & 28 U.S.C. § 1915A, the District
Court dismissed certain claims, but permitted claims under
the Eighth and Fourteenth Amendments to proceed. Dkt. No.
7 at p. 16. This matter was later consolidated with another
action filed by Plaintiff, *Perez v. Carter*, No. 9-19-CV-824.
Dkt. No. 17. This case was designated the Lead Case and
*Perez v. Carter*, a Member Case. After again performing
review under sections 1915(e) and 1915A, the Court directed
the filing of a Consolidated Complaint and found that claims
under the First and Eighth Amendment should proceed. Dkt.
No. 17. The Consolidated Complaint was then docketed as the
operative pleading in the case. Dkt. No. 18, Consol. Compl.

Defendants now move for summary judgment dismissing
the Consolidated Complaint based on Plaintiff's failure to
exhaust available administrative remedies as required by the
Prison Litigation Reform Act ("PLRA"). Dkt. No. 28. For
the reasons which follow, the Court recommends that the
Motion for Summary Judgment be granted. In the alternative,
the Court also recommends dismissal of the Complaint under
FED. R. CIV. P. 41 based on Plaintiff's failure to prosecute
this action.

**I. FACTUAL BACKGROUND**

Plaintiff's Complaint concerns several incidents that allegedly
took place at Marcy Correctional Facility in June 2019. *See
generally* Consol. Compl. Plaintiff first alleges that on June
9, 2019 Defendant Colon used pepper spray on him without
warning while Plaintiff was praying. Dkt. No. 17 at pp. 5-6.
Plaintiff then complains that he was threatened with further
violence and denied medical treatment on June 17, 2019.
*Id.* at p. 6. The District Court found Plaintiff's allegations
sufficient to assert a First Amendment religion claim and
several distinct Eighth Amendment claims. *Id.* at p. 7.

Defendants have not answered the Complaint and instead
move for summary judgment based solely on the failure to
exhaust. *See* Dkt. No. 28. Defendants offer evidence that on
June 20, 2019 Plaintiff filed a grievance regarding Defendant
Colon's alleged assault of Plaintiff. Dkt. No. 28-3, Pfendler
Decl. at ¶ 12 & Ex. B. That grievance made no reference to the
other allegations in the Consolidated Complaint. *Id.* No other
grievances related to these allegations was filed at Marcy.
*Id.* at ¶ 17. A response to that grievance was issued on July
10, 2019. *Id.* at ¶ 14 & Ex. C. Plaintiff was transferred from
Marcy to Sing Sing Correctional Facility while the grievance
was pending and the grievance response was mailed to his
new facility. *Id.* at ¶ 15. There is no record of Plaintiff
appealing that grievance to the facility Superintendent. *Id.*
at ¶ 16. There is also no record of any grievances related
to any incident at Marcy having been filed at Sing Sing
Correctional Facility. Dkt. No. 28-4, Quick Decl. at ¶ 11.
Defendants also offer evidence that there is no record of
Plaintiff appealing any grievance related to this action to the
final tier of the grievance process, the Central Office Review
Committee ("CORC"). Dkt. No. 25-5, Seguin Decl. at ¶ 12 &
Ex. A. These facts are all contained in Defendants' Statement
of Material Facts. *See generally* Dkt. No. 28-2.

## II. DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

### A. Legal Standard

**\*2** Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff did not respond to the Motion for Summary Judgment. Defendants' Motion specifically advised Plaintiff of the consequences of failing to respond to the Motion. Dkt. No. 28 at p. 3. The Clerk of the Court provided Plaintiff a similar notice. Dkt. No. 30 at p. 2. When Plaintiff failed to timely respond to the Motion, the Court *sua sponte* granted Plaintiff additional time in which to do so, again advising Plaintiff of the consequences of failing to respond. Dkt. No. 35. The Court's Order was returned as undeliverable as it appears that Plaintiff has been released from DOCCS custody. Dkt. No. 36.

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, when a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3); *see also* N.D.N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers ... shall be deemed as consent to the granting or denial of the motion."). Moreover, all properly supported facts set forth in Defendants' Statement of Material Facts that have not been specifically controverted shall be deemed admitted. N.D.N.Y.L.R. 7.1(a)(3).

### B. Exhaustion under the Prison Litigation Reform Act

**\*3** Defendants seek summary judgment solely on the ground that Plaintiff failed to exhaust his administrative remedies prior to commencing this lawsuit. Dkt. No. 28-1, Defs.' Mem. of Law.

### 1. The Grievance Process

The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section

1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288670, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. 7 N.Y.C.R.R. § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Upon appeal of the superintendent's decision, the CORC makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires that the grievant receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the

employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a *bona fide* case of harassment. *Id.* at §§ 701.8(b) & (c).

### 2. Plaintiff's Failure to Fully Exhaust his Claims

**\*4** While acknowledging that Plaintiff did file a grievance related to a claim at issue in this litigation, Defendants seek summary judgment on the ground that Plaintiff did not proceed through the entire inmate grievance process prior to commencing this action and, therefore, his claims are not exhausted. Defs.' Mem. of Law at pp. 6-10.

The record before the Court establishes that Plaintiff filed a grievance at Marcy Correctional Facility on June 20, 2019. Pfendler Decl. at ¶ 12 & Ex. B. That grievance referenced an alleged use of excessive force on June 9, 2019. *Id.* It made no reference to the other allegations identified in the Court's initial review orders or the Consolidated Complaint. *See id.* at Ex. B. Plaintiff was subsequently transferred to Sing Sing Correctional Facility, but filed no grievances there regarding the allegations made in this case. Quick Decl. at ¶ 11.

A decision on the grievance filed at Marcy Correctional Facility was issued on July 10, 2019. Pfendler Decl. at ¶¶ 14-15. Plaintiff did not appeal the grievance denial to the next step in the process, the Superintendent. *Id.* at ¶ 16. In addition, no grievance appeal to CORC was ever filed regarding the allegations set forth in the Consolidated Complaint. Seguin Decl. at ¶¶ 11-12. As a result, the Complaint in this action was filed without Plaintiff receiving a decision from either the Superintendent or CORC. "To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by the CORC, must be completed *before an action asserting that claim may be filed in court.*" *Haywood v. Fuller*, 2019 WL 2442142, at *3 (N.D.N.Y. June 12, 2019) (citing cases) (emphasis added); *see also Gibbs v. Gadway*, 2019 WL 5191506, at *3 (N.D.N.Y. Oct. 15, 2019), *report and recommendation adopted*, 2020 WL 1227156 (N.D.N.Y. Mar. 13, 2020) (finding a failure to exhaust due to absence of evidence establishing an appeal was taken to CORC).

The exhaustion requirement is designed to permit prison officials to address inmate concerns before the commencement of litigation. *Jones v. Bock*, 549 U.S. 199,

204 (2007). Here, the facts are not disputed that Plaintiff proceeded to this Court before fully exhausting the available DOCCS procedures. He thus failed to fully exhaust and the Complaint should be dismissed.

### 3. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in *Ross*, "[a]n inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. Plaintiff bears the burden of establishing that the grievance procedures were unavailable within the meaning of *Ross*. *Martin v. Wyckoff*, 2018 WL 7356771, at *5 (N.D.N.Y. Oct. 16, 2018), *report and recommendation adopted*, 2019 WL 689081 (N.D.N.Y. Feb. 19, 2019). Given Plaintiff's failure to oppose the Motion, no basis appears on the record for concluding that DOCCS' grievance procedure was unavailable to him.

### III. PLAINTIFF'S FAILURE TO PROSECUTE

**\*5** In the alternative, dismissal of the Complaint is also appropriate here based on Plaintiff's failure to prosecute this action.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action, or to comply with the procedural rules or orders of the court. FED. R. CIV. P. 41(b); *see Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962). This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Freeman v. Lundrigan*, 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996).

In this District, all litigants have an ongoing obligation to keep their address information updated with both the Court and adversaries. N.D.N.Y.L.R. 10.1(c)(2) ("**All attorneys of record and *pro se* litigants must immediately notify the Court of any change of address**." (emphasis in original)). Plaintiff was specifically advised of this obligation. Dkt. No. 7 at p. 17. A party's failure to provide such information is grounds for dismissal. N.D.N.Y.L.R. 41.2(b). As then-District Judge Pooler observed:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cty. Corr. Facility Staff*, 1996 WL 172699, at *1 (N.D.N.Y. Apr. 10, 1996) (citations omitted). Indeed, courts in the Northern District of New York have dismissed lawsuits brought by *pro se* plaintiffs for failure to provide a current address. *See Rivera v. Goord*, 1999 WL 33117155 (N.D.N.Y. Sept. 14, 1999); *Fenza v. Conklin*, 177 F.R.D. 126 (N.D.N.Y. 1998); *Williams v. Faulkner*, 1998 WL 278288 (N.D.N.Y. May 20, 1998). The Court has not had any communication from Plaintiff since January 2020. Dkt. No. 33. Plaintiff, despite several notices about his obligation to do so, did not respond to the Motion for Summary Judgment. Plaintiff was released from DOCCS custody on March 12, 2020. Dkt. No. 36; *Inmate Lookup*, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ2/WINQ120 (last visited June 16, 2020). The Court's most recent Order was returned as undeliverable. Dkt. No. 36. As a result, the Court has no means by which to effectively communicate

with him. The Court finds that this period of noncompliance with the requirement that he notify the Clerk's Office and Defendants of his current address is a basis for dismissal. *Fenza v. Conklin*, 177 F.R.D. at 127.

In sum, in light of the fact that Plaintiff cannot be located or communicated with at his address of record and given his failure to comply with his obligation to advise the Court and counsel of any change in his address, I recommend that this action be dismissed.

## IV. CONCLUSION

**\*6**  For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 28) be **GRANTED**; and, in the alternative, it is further

**RECOMMENDED**, that the Complaint be dismissed pursuant to Federal Rule of Civil Procedure 41 based on Plaintiff's failure to prosecute; and it is further

**RECOMMENDED**, that the Complaint be Dismissed; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action at their last known address.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Slip Copy, 2020 WL 4549206

---

2020 WL 4530602

2020 WL 4530602
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Felipe PEREZ, Plaintiff,
v.
Mr. COLON, et al., Defendants.
Felipe Perez, Plaintiff,
v.
Mr. Carter, et al., Defendants.

9:19-CV-722 [LEAD] (TJM/DJS)
|
9:19-CV-824 [MEMBER] (TJM/DJS)
|
Signed 08/06/2020

**Attorneys and Law Firms**

Felipe Perez, Ossining, NY, pro se.

Nicholas Luke Zapp, New York State Attorney General, Albany, NY, for Defendants.

### DECISION & ORDER

Thomas J. McAvoy, Sr. U.S. District Judge

**\*1** The Court referred this *pro se* civil action, brought pursuant to 42 U.S.C. § 1983, to Magistrate Judge Daniel J. Stewart for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff alleges that Defendants, Corrections Officers, violated his constitutional rights in a number of ways while was incarcerated at Marcy Correctional Facility in Marcy, New York.

Magistrate Judge Stewart's Report-Recommendation, dkt. # 37, issued on June 16, 2020, recommends that Defendants' motion for summary judgment be granted. Magistrate Judge Stewart finds that Plaintiff failed to exhaust his administrative

remedies before bringing his claim, as required by federal law. Plaintiff did not respond to the motion, and the evidence produced by the Defendants establishes that Plaintiff filed only one grievance addressing one event, though several incidents are in question. Administrators denied the grievance. He did not appeal that denial. Under those circumstances, Magistrate Judge Stewart finds, Plaintiff has not satisfied the exhaustion requirement in the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), and his claim must be dismissed. He recommends granting the Defendants' motion and dismissing the case on that basis. Noting that mail to the Plaintiff at his last known address, Sing-Sing Correctional Facility in Ossining, New York, has been returned with the notation "released," Magistrate Judge Stewart recommends in the alternative that the Court dismiss the case for failure to prosecute pursuant to Federal Rule of Civil Procedure 41. Plaintiff did not fulfill his obligation to keep the Court updated as to his address, Magistrate Judge Stewart finds.

Plaintiff did not object to the Report-Recommendation, and the time for such objections has passed. After examining the record, this Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice and the Court will accept and adopt the Report-Recommendation for the reasons stated therein.

Accordingly,

The Report-Recommendation of Magistrate Judge Stewart, dkt. # 37, is hereby **ACCEPTED** and **ADOPTED**. Defendants' motion for summary judgment, dkt. # 28, is hereby **GRANTED**, and the Complaint is **DISMISSED**. The Clerk of Court is directed to **CLOSE** the case.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 4530602

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

James v. Doty, Not Reported in Fed. Supp. (2019)

2019 WL 1474309

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 108 of 131

2019 WL 1474309
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Carlton M. JAMES, Plaintiff,
v.
A. DOTY, et al., Defendants.

No. 9:17-CV-1145 (MAD/CFH)
|
Signed 01/04/2019

**Attorneys and Law Firms**

Carlton M. James, 13-A-4356, Great Meadows Correctional Facility, Box 51, Comstock, New York 12821, Plaintiff pro se.

OF COUNSEL: ERIK BOULE PINSONNAULT, ESQ., Assistant Attorney General, Attorney General for the State of New York, The Capitol, Albany, New York 12224, Attorney for defendants.

**REPORT-RECOMMENDATION AND ORDER** [1]

[1]    This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

*1    Plaintiff pro se Carlton M. James ("plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that corrections officer ("C.O.") A. Doty, C.O. Vincent Leone, C.O. D. Kavanaugh, C.O. S. Wiggins, Sergeant ("Sgt.") Kierpiec, Lieutenant ("Lt.") S. Martin, and Lt. Carter – who, at all relevant times, were employed at Marcy Correctional Facility ("Marcy") – violated his constitutional rights under the First and Eighth Amendments. See Dkt. No. 1 ("Compl."). Presently pending before the Court is defendants' Combined Motion for Summary Judgment and for Dismissal pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 23. Plaintiff opposed defendants' motion, and defendants filed a reply. Dkt. Nos. 31, 33. Plaintiff therein filed a supplemental response in opposition

to defendants' motion. Dkt. No. 36. For the following reasons, it is recommended that defendants' motion be granted.

**I. Background**

**A. Plaintiff's Recitation of the Facts**

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection II.A.1. infra. Plaintiff contends that on July 20, 2017, C.O. Kavanaugh, under the guidance of C.O. Doty, pat frisked him, while handcuffed. Compl. at 6. The officer groped plaintiff's testicles and inappropriately touched him. Id. When plaintiff complained to the officers of the inappropriate touching, they harassed him. Id. Plaintiff attempted to inform Sgt. Kierpiec of the inappropriate pat frisk, but C.O. Leone blocked him. Id. The officers escorted plaintiff to his cell. Id. Plaintiff again attempted to complain to Sgt. Kierpiec as to why "this officer Wiggins belly on my back," but the officers told plaintiff to return to his cell. Id. Plaintiff contends that an unnamed officer hit him in the head, and he "tumble[d] to the floor ... in full restraint in cuffs and [a] waist chain." Id. While plaintiff was on the floor, C.O. Kavanaugh, C.O. Leon, C.O. Doty, and Lt. Martin "pummel[ed]" him. Id. C.O. Wiggins kicked plaintiff in his left eye, which remained swollen shut for two weeks. Id. Plaintiff contends that he has numbness on the left side of his face, and "feel[s] a sharp pain" at his left temple. Id. He claims that his vision in his left cornea is sensitive to light, and that he "see[s] spots." Id. Plaintiff contends that he exhausted his administrative remedies. Id.

**B. Defendants' Recitation of the Facts**

In support of their motion, defendants filed a Statement of Material Facts. [2] Plaintiff alleges that on July 20, 2017, he was assaulted by several defendants outside of his cell, and other defendants failed to intervene in that assault. Dkt. No. 23-3 ¶ 3. Plaintiff was incarcerated at the Residential Mental Health Unit ("RMHU") at Marcy from May 17, 2017 through January 2, 2018. Id. ¶ 5. Plaintiff contends that the assault was, in part, retaliation for his protected activity. Id. Plaintiff's claims of excessive force, failure to intervene, and retaliation are proper subjects for a grievance under DOCCS grievance procedures. Id. ¶ 4. Plaintiff did not file any grievances while housed at Marcy's RMHU. Id. ¶ 9. While confined at Marcy's RMHU, plaintiff had full access to the Central Officer Review

James v. Doty, Not Reported in Fed. Supp. (2019)

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 109 of 131

2019 WL 1474309

Committee ("CORC") in order to appeal from any facility-level grievance determination. Id. ¶ 10.

[2]    Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

**\*2**    After he left Marcy's RMHU, plaintiff was housed at the RMHU at Five Points Correctional Facility ("Five Points") from January 4, 2018 until, at least, March 29, 2018. Dkt. No. 23-3 ¶ 11. While at Five Points' RMHU, plaintiff had full access to CORC to appeal from any facility-level grievance determinations. Id. ¶ 12. Plaintiff did not appeal any grievances to CORC on or before March 29, 2018 – the date he commenced this action. Id. ¶ 13.

## II. Discussion [3]

[3]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

### A. Legal Standards

#### 1. Motion to Dismiss

Under Rule 12 (b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009) ) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is " 'plausible on its face.' " Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." ) ); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible....") (internal citations omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

[t]here are many cases in which we have said that a *pro se* litigant is entitled to special solicitude, that a *pro se* litigant's submissions must

James v. Doty, Not Reported in Fed. Supp. (2019)

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 110 of 131

2019 WL 1474309

be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law....

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff, 537 F.3d at 191-92 ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'") (internal citations omitted).

### 2. Motion for Summary Judgment

**\*3**  "A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. See id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

As with motions under Fed. R. Civ. P. 12(b)(6), where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman, 470 F.3d at 477.

### B. Exhaustion

Defendants argue that plaintiff failed to exhaust his administrative remedies before commencing this action. See Dkt. No. 23-1 ("Def. Mem. of Law") at 7-11. Plaintiff contends that he exhausted his administrative remedies. See Dkt. No. 31 ("Pl. Opp.") at 5. 6, 7, 8, 11, 15, 18-19, 20. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532, 122 S.Ct. 983. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id at 524, 122 S.Ct. 983. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's

James v. Doty, Not Reported in Fed. Supp. (2019)

2019 WL 1474309

exhaustion requirement." Ross v. Blake, —— U.S. ——, 136 S.Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016). [4]

[4]   In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S.Ct. at 1858-59).

**\*4** Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S.Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) ). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies? [5]

[5]   First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision

within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). Parties do not dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

In support of their motion, defendants proffer the declarations of Marcy Inmate Grievance Program ("IGP") Supervisor Erin Pfendler and Assistant Director of DOCCS IGP Rachael Seguin. See Dkt. Nos. 23-4 ("Seguin Decl."), 23-5 ("Pfendler Decl."). Both Ms. Pfendler and Ms. Seguin declared that plaintiff did not file any grievances while housed at Marcy's RMHU from May 17, 2017 through January 2, 2018. See Pfendler Decl. ¶¶ 11-12, 19; Seguin Decl. ¶¶ 10, 13, at 8-9 (providing DOCCS' records demonstrating that plaintiff failed to file grievances while in DOCCS' custody). Further, there is no indication in the record that plaintiff filed a grievance while housed at Five Points. See Seguin Decl. at 8. In opposition, plaintiff admits that he is "very familiar with [the] grievance procedure." Pl. Opp. at 7. Moreover, plaintiff proffers forty-five pages of exhibits in support of his argument that he exhausted his administrative remedies. See Dkt. No. 31-1. As defendants note, a majority of plaintiff's proffered documents do not pertain to the underlying issues in this action. See Dkt. No. 33 ("Def. Reply") at 3-4; Dkt. No. 31-1 at 1, 19, 20, 26, 27-31, 41. [6] To the extent that plaintiff offers what he describes as "carbon copies" of his grievances concerning the underlying claims, the documents, dated July 27, 2017, do not contain plaintiff's name, DIN number, or other identifying information that would alert Marcy IGP officials as to who drafted the grievance. See Dkt. No. 31-1 at 22-25. It is well-settled that state regulations mandate that an inmate provide his or her name and other identifying information when submitting a grievance. See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(2) ("In addition to the grievant's name, department identification

James v. Doty, Not Reported in Fed. Supp. (2019)

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 112 of 131

2019 WL 1474309

number, housing unit, program assignment, etc., the grievance should contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, i.e., specific persons/ areas contacted and responses received."); see also Ortiz v. Kerbein, No. 05-CV-6486L, 2007 WL 1040019, at *2 (W.D.N.Y. Apr. 4, 2007) ("Thus, the regulations require the grievance to contain the grievant's name and other identifying information, and to identify specific persons contacted about the subject of the grievance...."). Thus, even assuming that plaintiff submitted these grievances to the Marcy Inmate Grievance Resolution Committee ("IGRC"), they would not constitute proper exhaustion pursuant to state regulations and DOCCS' directives because they do not contain proper identifying information. See id.; see also Dkt. No. 33-1 ("Pfendler Reply") ¶¶ 4-5.

6    Insofar as plaintiff proffers the Use of Force Report and the injury report relating to the July 20, 2017 alleged excessive use of force, as defendants acknowledge, although these documents may be relevant to the merits of the case, they do not address whether plaintiff exhausted his administrative remedies as to those claims. See Dkt. No. 31-1 at 27-31; Def. Reply at 33.

*5 Plaintiff also proffers a letter to "Superintendent J. Thomas," dated July 28, 2017, that states that on July 27, 2017, plaintiff "put in a grievance to [the] grievance department for excessive use of force," but did "not witness it being place[d] in the box." Dkt No. 31-1 at 7. Plaintiff's conclusory allegations fail to indicate to whom he handed the July 27, 2017 grievance, nor do they establish that the unnamed corrections officer discarded or otherwise tampered with the filing of the grievance. "Plaintiff's mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation, including any evidence that identifies which defendant, in particular, is responsible for discarding the grievances, are insufficient to excuse his failure to comply with the [Inmate Grievance Program]." Belile v. Griffin, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at *8 (N.D.N.Y. Feb. 12, 2013), report and recommendation adopted by, 2013 WL 1291720 (N.D.N.Y. Mar. 27, 2013).

Even if the undersigned were to assume that plaintiff attempted to submit a grievance regarding the alleged July 20, 2017 excessive use of force, but that a corrections officer failed to "place [the grievance] in the box," plaintiff's claims still must fail. It is well-settled that where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding a lack of response at any level of review. See Khudan v. Lee, No. 12-CV-8147, 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing the plaintiff's complaint where the plaintiff failed to appeal to the next level of review after failing to receive a response to his filed grievance). Thus, even if an inmate suspects that his grievances were discarded, he or she must still appeal the grievance despite the lack of response. See Chiarappa v. Meyers, No. 09-CV-607, 2013 WL 6328478, at *5 (W.D.N.Y. Dec. 5, 2013) ("[E]ven if plaintiff attempted unsuccessfully to file a grievance in a timely manner, the lack of a response does not relieve him of the requirement to timely appeal the grievance through all three steps of the grievance process."). Plaintiff does not suggest, and the record does not demonstrate, that plaintiff appealed the non-response to CORC; in fact, Ms. Seguin declared that plaintiff failed to appeal any grievances to CORC during his incarceration. Seguin Decl. ¶ 13. Thus, because plaintiff failed to appeal the alleged non-response to the next level, he cannot be excused from the grievance process. See Heyliger v. Gebler, 624 F. App'x 780, 782 (2d Cir. 2015) (summary order) ("Under the regulations ..., if at any step of the grievance process, an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to 'appeal[ ] to the next step.' ") (quoting N.Y. COMP. CODES R. & REGS. tit. 7, § 701.6(g)(2) (2015) ).

To the extent that plaintiff suggests that his informal complaints to the Office of Special Investigations, "Risk Management," the Justice Center, his therapist, and other personnel constitute proper exhaustion, see Pl. Opp. at 6, 18-19, 20, the undersigned finds that plaintiff's argument is misplaced. It is well-established in the Second Circuit that any informal resolution or relief outside of the administrative procedures does not satisfy exhaustion requirements. See, e.g., Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007); Day v. Chaplin, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (noting that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures."). Thus, because these letters were sent to officials outside the grievance chain of command, they do not satisfy the exhaustion requirement.

Finally, to the extent that plaintiff's statement that the "Marcy R.M.H.U. is located in a building that is separated from Marcy medium population" may be interpreted as suggesting that the grievance procedure was unavailable to him, see Pl. Opp. at 7, the undersigned declines to accept this interpretation. Ms.

James v. Doty, Not Reported in Fed. Supp. (2019)

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 113 of 131

2019 WL 1474309

Pfendler declared that an inmate housed in RMHU may file a grievance by either (1) handing the grievance to a corrections officer sergeant, lieutenant, or captain for delivery to the grievance office, or (2) handing the grievance to her when she performed her weekly walk through RMHU. Pfendler Decl. ¶ 16. Ms. Pfendler further declared that plaintiff did not submit or attempt to submit a grievance regarding the alleged July 20, 2017 incident. Pfendler Decl. ¶¶ 18-20; Pfendler Reply ¶ 13. Plaintiff does not proffer evidence, other than his conclusory allegations, that this alleged separation in buildings prevented him from filing grievances. As such, to the extent that plaintiff's statement may be interpreted as suggesting that the grievance procedure was unavailable, the undersigned rejects this argument.

**\*6** As plaintiff has not provided evidence of exhaustion, the undersigned concludes that plaintiff failed to exhaust his administrative remedies. "Ordinarily, the proper remedy where a prisoner has failed to satisfy the exhaustion requirement is to dismiss the complaint without prejudice, to give the inmate a chance to exhaust his administrative remedies and then refile his complaint." Brown v. Napoli, 687 F.Supp.2d 295, 298 (W.D.N.Y. 2009); see also Morales v. Mackalm, 278 F.3d 126, 128 (2d Cir. 2002) (dismissal for failure to exhaust should be without prejudice to refiling following exhaustion). "This is so even when the issue is decided on a motion for summary judgment." Mateo v. Corebine, No. 09-CV-4811, 2010 WL 3629515, at \*7 (S.D.N.Y. Sept. 17, 2010) (collecting cases). Moreover, "[w]here a plaintiff may cure the defect by pursuing administrative procedures to their conclusion and then reinstituting [his or her] suit, dismissal without prejudice is appropriate." Greene v. Desousa, No. 14-CV-6290 (SJF) (AYS), 2016 WL 3460376, at \*3 (E.D.N.Y. June 21, 2016) (citations omitted). Notwithstanding, "where the inmate can no longer exhaust administrative remedies because he or she has been transferred or is no longer in custody and had ample opportunity to exhaust prior to being released or transferred but failed to do so, dismissal with prejudice is proper." Grafton v. Hesse, No. CV 15-4790 (SJF) (GRB), 2017 WL 9487092, at \*9 (E.D.N.Y. Aug. 25, 2017), report and recommendation adopted sub nom. Grafton v. Assistant Deputy Undersheriff Hesse, 2017 WL 4286266 (E.D.N.Y. Sept. 27, 2017) (citing Greene, 2016 WL 3460376, at \*3) (dismissing complaint with prejudice is appropriate where plaintiff was "no longer in custody at the NCCC and she can no longer exhaust administrative remedies").

Because the alleged incident in the underlying action occurred in 2017, plaintiff's claims are still within the applicable statute of limitations. Although the docket states that plaintiff is still in DOCCS' custody, DOCCS records indicate that plaintiff was conditionally released to parole on September 18, 2018. [7] However, plaintiff has not informed the Court of his release, as is his duty. [8] Even though the record indicates that plaintiff remained incarcerated at Marcy RMHU until January 2, 2018, and was transferred to Five Points RMHU until, at least, March 29, 2018, therefore, demonstrating that he had ample opportunity to exhaust his administrative remedies, see Grafton, 2017 WL 9487092, at \*9; Seguin Decl. ¶¶ 10-11, out of an abundance of caution, the undersigned recommends dismissal of plaintiff's claims without prejudice.

[7]   See   DOCCS   LOOKUP,   http://nysdoccslookup.doccs.ny.gov/ (last visited Jan. 4, 2019).

[8]   Plaintiff is reminded of his strict obligation to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in address, and that his failure to do so or otherwise participate in this action may result in dismissal of his case. See L.R. N.D.N.Y. 10.1(c)(1), 41.2(b).

Accordingly, as exhaustion is a prerequisite to filing an action in federal court (Woodford, 548 U.S. at 85, 126 S.Ct. 2378), it is recommended that defendants' motion be granted.

## C. State Law Claims

Defendants argue that plaintiff's state law claims of assault and battery stemming from the alleged July 20, 2017 incident should be dismissed pursuant to New York Corrections Law § 24. See Def. Mem. of Law at 12-13. The undersigned recommends dismissal of plaintiff's state law claims concerning assault and battery in light of the recommendation of dismissal of the federal claims for failure to exhaust his administrative remedies pertaining to the same set of facts. See 28 U.S.C. § 1367(c)(3) (stating that the district court may decline to exercise supplemental jurisdiction over a claim if all other claims over which the court has original jurisdiction have been dismissed); City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994).

James v. Doty, Not Reported in Fed. Supp. (2019)

Case 9:19-cv-01352-GTS-TWD     Document 29     Filed 11/17/20     Page 114 of 131

2019 WL 1474309

Even if the underlying federal cause of action survived, plaintiff's state law claims are still subject to New York Correction Law § 24. Pursuant to Correction Law § 24(1):

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

*7 N.Y. CORR. LAW § 24(1). Courts look at the following factors to determine whether a defendant's action is within the scope of employment:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in the actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could have reasonably anticipated.

Ierardi v. Sisco, 119 F.3d 183, 187 (2d Cir. 1997) (quotations and citations omitted) (holding that the defendant's alleged sexual harassment was not undertaken in the discharge of his duties and beyond the protection afforded to officers under § 24).

The test to determine whether the defendants' actions fall within the scope of their employment is "whether the act was done while the servant was doing his master's work no matter how irregularly, or with what disregard of the instructions." Cruz v. New York, 24 F.Supp.3d 299, 309 (W.D.N.Y. 2014) (citing Cepeda v. Coughlin, 128 A.D.2d

995, 996, 513 N.Y.S.2d 528 (N.Y. App. Div. 1987) ). Conduct that is "purely for personal reasons unrelated to the employer's interests, ... which is a substantial departure from the normal methods of performing the officer's duties is not considered within the scope of employment." Johnson v. New York State Dep't of Corr. Servs. & Cmty. Supervision, No. 11-CV-079S, 2013 WL 5347468, at *2 (W.D.N.Y. Sept. 23, 2013) (quoting Gore v. Kuhlman, 217 A.D.2d 890, 891, 630 N.Y.S.2d 141 (N.Y. App. Div. 1995) ).

Plaintiff's complaint demonstrates that defendants were on duty in the correctional facility at the time of the alleged constitutional violations, and that their alleged acts were not significant departures beyond the scope of their employment. Accordingly, the undersigned recommends dismissal of plaintiff's state law claims. [9]

[9]  The undersigned notes that plaintiff's papers contain a motion to appoint counsel. See Pl. Opp. at 2-3. This motion is identical to the motion to appoint counsel plaintiff filed on June 26, 2018, which the undersigned denied without prejudice and with the opportunity to renew after the District Court rendered a decision on the pending motion for summary judgment. See Dkt. Nos. 30, 34. As such, insofar plaintiff may attempt to renew his motion to appoint counsel, plaintiff's motion is denied without prejudice. Plaintiff's opposition papers also contain a document entitled "motion to persona standi injudicio." Pl. Opp. at 12. As the undersigned recommends dismissal of plaintiff's action pursuant to his failure to exhaust his administrative remedies, plaintiff's "motion to persona standi injudicio" is also denied.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendants' combined Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 23) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED** in its entirety, without prejudice; and it is

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 115 of 131
**James v. Doty, Not Reported in Fed. Supp. (2019)**
2019 WL 1474309

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

#### *8  IT IS SO ORDERED.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [10]

10    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1474309

---

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 116 of 131

James v. Doty, Not Reported in Fed. Supp. (2019)

2019 WL 457694

2019 WL 457694
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Carlton M. JAMES, Plaintiff,

v.

A. DOTY, Vincent Leone, D. Kavanaugh, Kierpiec,
S. Wiggins, S. Martin, and S. Carter, Defendants.

9:17-CV-1145 (MAD/CFH)
|
Signed 02/06/2019

**Attorneys and Law Firms**

CARLTON M. JAMES, 13-A-4356, Great Meadow
Correctional Facility, Box 51, Comstock, New York 12821,
Plaintiff pro se.

OF COUNSEL: ERIK BOULE PINSONNAULT, AAG,
OFFICE OF THE NEW YORK, STATE ATTORNEY
GENERAL, The Capitol, Albany, New York 12224, Attorney
for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

**I. INTRODUCTION**

*1 Plaintiff commenced this Section 1983 civil rights action
*pro se* on October 16, 2017, alleging violations of his
constitutional rights under the First and Eighth Amendments.
*See* Dkt. No. 1; Dkt. No. 38 at 1-2. Plaintiff's causes of
action arose on July 20, 2017, while he was an inmate in the
custody of the New York State Department of Corrections and
Community Supervision ("DOCCS"). According to Plaintiff,
he was inappropriately touched and harassed during a pat
frisk, hit in the head by an unnamed officer, "pummel[ed]" by
Defendants, and kicked in his left eye. *See* Dkt. No. 38 at 2-3.

Defendants filed a Combined Motion for Summary Judgment
and 12(b)(6) Dismissal on May 17, 2018. *See* Dkt. Nos. 23-1.
On June 26, 2017, Plaintiff filed his Opposition to Defendants'
Motion. *See* Dkt. Nos. 31. On July 23, 2017, Defendants
filed their Reply, and on August 9, 2018, Plaintiff filed a
Supplemental Opposition. *See* Dkt. Nos. 33, 36. On January 4,
2019, Magistrate Judge Christian F. Hummel issued a Report-

Recommendation and Order denying Plaintiff's motion to
appoint counsel and "motion to persona standi injudicio,"
and recommending that the Complaint be dismissed without
prejudice. *See* Dkt. No. 38 at 17 & n.9. Plaintiff did not file
any objections to the Report-Recommendation and Order.

**II. DISCUSSION**

**A. Lack of Objections**
A litigant's failure to file objections to a magistrate judge's
report-recommendation, even when that litigant is proceeding
*pro se*, waives any challenge to the report on appeal. *See*
*Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that,
"[a]s a rule, a party's failure to object to any purported error or
omission in a magistrate judge's report waives further judicial
review of the point" (citation omitted) ). A *pro se* litigant must
be given notice of this rule; notice is sufficient if it informs
the litigant that the failure to timely object will result in the
waiver of further judicial review and cites pertinent statutory
and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298,
300 (2d Cir. 1992); *Small v. Sec'y of Health and Human
Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se*
party's failure to object to a report-recommendation does not
waive his right to appellate review unless the report explicitly
states that failure to object will preclude appellate review and
specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a),
and former 6(e) of the Federal Rules of Civil Procedure).

In the present matter, Magistrate Judge Hummel provided
Plaintiff adequate notice that he was required to file any
objections to the Report-Recommendation and Order, and
specifically informed Plaintiff that failure to object to any
portion of the report would preclude his right to appellate
review. *See* Dkt. No. 38 at 18. Specifically, the Report-
Recommendation and Order states that "**FAILURE TO
OBJECT TO THIS REPORT WITHIN FOURTEEN
(14) DAYS WILL PRECLUDE APPELLATE REVIEW.**
*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small
v. Secretary of Health and Human Services*, 892 F.2d 15
(2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.
6(a), 6(e), 72." *See id.* Thus, Plaintiff clearly had sufficient
notice of the consequences of failing to object to the Report-
Recommendation and Order.

**B. Analysis of the Report-Recommendation and Order**

*1. Legal Standard*

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 117 of 131

James v. Doty, Not Reported in Fed. Supp. (2019)
2019 WL 457694

**\*2** To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible," the complaint must be dismissed, *id.* at 570.

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Id.* at 36-37 (quotation and other citation omitted). In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ) (other citations omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) ) (other citations omitted). The Second Circuit has opined that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ).

*2. Application*

Having carefully reviewed Magistrate Judge Hummel's Report-Recommendation and Order, the parties' submissions, and the applicable law, the Court finds that Magistrate Judge Hummel correctly concluded that the Complaint should be dismissed. The undisputed facts establish that Plaintiff failed to exhaust the administrative remedies available to him, as required by the Prison Litigation Reform Act ("PLRA"). [1] As Magistrate Judge Hummel noted, Plaintiff did not file any grievances while at Marcy Correctional Facility or Five Points Correctional Facility, despite admitting that he is "very familiar with [the] grievance procedure." *See* Dkt. No. 38 at 9-10. Additionally, there is no record that Plaintiff ever exhausted the appeals process, which is required by the PLRA before an inmate brings suit. *See id.* at 11-12 (discussing how Plaintiff never appealed to the Central Office Review Committee); *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, \*5 (N.D.N.Y. Nov. 9, 2015) (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds, Porter v. Nussle*, 534 U.S. 516 (2002) ) (holding that "any claim not exhausted prior to commencement of the suit must be dismissed without prejudice"). Finally, Magistrate Judge Hummel correctly concluded that Plaintiff had not shown that the administrative remedies were not available. *See* Dkt. No. 38 at 13 (discussing how the record contained only conclusory allegations that an alleged separation of two prison buildings prevented Plaintiff from filing his grievances). Therefore, the Court adopts Magistrate Judge Hummel's recommendation that Plaintiff's federal claims should be dismissed.

[1]    The PLRA states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88-94 (2006) ). In New York, the inmate is required to exhaust a three-step administrative review process. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.

**\*3** Additionally, Magistrate Judge Hummel properly found that the Court should dismiss Plaintiff's state law claims. The

Court agrees with Magistrate Judge Hummel that Section 24 of New York Correction Law bars the state law claims because Defendants are DOCCS employees who were on duty at the time of the alleged constitutional violations, and the alleged acts fell within the scope of their employment. *See id.* at 16 (applying N.Y. Corr. Law § 24(1) and the factors set forth in *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) ). Additionally, the Court agrees with Magistrate Judge Hummel's recommendation that we should not exercise supplemental jurisdiction over the state law claims. *See id.* at 15 (citing 28 U.S.C. § 1367(c)(3) ). For these reasons, the Court adopts Magistrate Judge Hummel's recommendation to dismiss the state law claims.

Finally, the Court agrees with Magistrate Judge Hummel that the Complaint should be dismissed without prejudice. As Magistrate Judge Hummel noted, it is unclear from the record whether Plaintiff is still in custody. *See id.* at 14-15 & 15 n.7 (discussing Plaintiff's release on parole in September 2018); *see also* DOCCS Parolee Lookup, http://www.doccs.ny.gov/ParoleeLookup/Lookup (last visited Jan. 29, 2019) (indicating that Plaintiff is in custody for violating his parole on October 16, 2018). Since the statute of limitations has not yet run on the alleged incident, and Plaintiff's custody status is unknown, the Court adopts Magistrate Judge Hummel's recommendation that the

Complaint should be dismissed without prejudice. *See* Dkt. No. 38 at 14-15.

### III. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that the January 4, 2019 Report-Recommendation and Order (Dkt. No. 38) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the Complaint (Dkt. No. 1) is **DISMISSED WITHOUT PREJUDICE**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 457694

---

**End of Document**                     © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Gonzalez v. Coburn, Not Reported in Fed. Supp. (2017)

2017 WL 6512859

2017 WL 6512859
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Hector GONZALEZ, Plaintiff,
v.
Correction Officer COBURN, et al., Defendants.

No. 6:16-cv-06174-MAT
|
Signed 12/20/2017

**Attorneys and Law Firms**

Hector Gonzalez, Alden, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office Department of Law, Rochester, NY, for Defendants.

**DECISION AND ORDER**

HON. MICHAEL A. TELESCA, United States District Judge

**I. Introduction**

**\*1** *Pro se* plaintiff Hector Gonzalez ("Plaintiff" or "Gonzalez"), an inmate in custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Wende Correctional Facility, commenced the instant action pursuant to 42 U.S.C. § 1983 against DOCCS Correction Officers Coburn, Nolan, and John Doe Defendant, Sergeant Olles, Acting Commissioner Anthony J. Annucci, Superintendent Dale Artus, and Deputy Superintendent for Security Stewart Eckert (collectively, "Defendants"). Plaintiff alleges that Defendants subjected him to retaliatory assault and inhumane special contraband watch conditions, and created or enforced policies permitting the assault and inhumane conditions, all in violation of his First, Eighth, and Fourteenth Amendment rights.

**II. Factual Background and Procedural History**

Plaintiff alleges that on October 10, 2014, when he was an inmate at Attica Correctional Facility ("Attica"), Correction Officers Nolan, Coburn, and Doe, along with Sergeant Olles, approached him and ordered him against the wall. (Docket No. 21 ("Am. Compl.") at 5). Thereafter, Coburn allegedly stated, "you like sending grievances to the Superintendent?" (*Id.*).[1] Plaintiff claims that these defendants then proceeded to search Plaintiff, call him racial epithets, and attack him by punching and kicking him to the ground. (*Id.*).

1    Plaintiff does not identify the grievance that he claims resulted in the assault.

Plaintiff alleges that following the above-described incident, Attica officials falsely charged him with misconduct, and Sergeant Olles placed him in a room on special contraband watch. (*Id.* at 5-6, Ex. B at 1, 3). While on contraband watch, Attica officials allegedly stripped Plaintiff of his normal clothing and required him to wear a hospital gown in its place. (*Id.* at 5). Plaintiff claims that he was not provided with hand soap, toothbrush, toothpaste, or a hand towel. (*Id.*, Ex. C). Plaintiff remained on contraband watch for two months in a room exposing him to cold temperatures, which Defendants referred to as "the Cooler," where they put "an inmate on ice." (*Id.* at 6).

On December 31, 2014, two weeks after Attica officials released Plaintiff from special contraband watch, he filed an Inmate Grievance Complaint. (*Id.*, Ex. B at 3). Plaintiff claimed in his grievance that "Officer Coburn said to me go to the wall," and "once he though[t] it was clear ... began grabbing me forcefully by my neck ... hitting me in my ribs and then CO Nolan and other officers put me [in] handcuffs and CO Nolan start[ed] hitting me in my face." (*Id.*). Thereafter, "SGT Ollie [sic] sen[t] [Plaintiff] to [ ] special watch for 65 days." (*Id.*). Plaintiff requested that the abuse cease and that he be compensated for the 65 days he spent in special contraband watch. (*Id.*).

On January 14, 2015, the Inmate Grievance Review Committee ("IGRC") held a hearing with respect to Plaintiff's grievance in Plaintiff's absence because he was in the Special Housing Unit ("SHU"). (*Id.*, Ex. B at 1). On April 13, 2015, the IGRC denied Plaintiff's grievance. (*Id.*, Ex. B at 2). The IGRC concluded that there was no evidence to support Plaintiff's accusations, and found that staff used an appropriate amount of force. (*Id.*). On May 7, 2015, Plaintiff appealed to Superintendent Artus, claiming the decision was wrong and personnel had pictures and x-rays of the attack. (*Id.*). After Superintendent Artus denied Plaintiff's appeal (*Id.* at 5), he appealed to the Central Office Review Committee ("CORC"). (*Id.*).

**\*2** The CORC held a hearing on December 16, 2015, and subsequently denied Plaintiff's request for relief. (*Id.*, Ex. B at 1). The CORC reasoned that Plaintiff failed to

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 120 of 131
Gonzalez v. Coburn, Not Reported in Fed. Supp. (2017)
2017 WL 6512859

identify witnesses and had not otherwise presented "sufficient evidence of malfeasance by staff." (*Id.*). [2]

[2]     The CORC added that DOCCS transferred Plaintiff to a different correctional facility. (*Id.*).

The CORC's decision, which Plaintiff included as an exhibit to the Amended Complaint, also found the facts of the incident differently, stating that Coburn and Nolan conducted a random pat frisk of Plaintiff, and that he resisted the search when he pushed away from the wall. (*Id.*). After these defendants used force to undermine his resistance, the CORC noted, medical staff treated Plaintiff for bruising and swelling to the right orbital area, and abrasions to his right wrist, back, and left shoulder resulting from the incident. (*Id.*). CORC further noted that Attica officials documented the incident with a Misbehavior Report ("MBR"). (*Id.*). On October 19, 2014, nine days after Plaintiff went on special contraband watch, he defecated a plastic package which tested positive for cocaine. (*Id.*). Attica officials released Plaintiff from special contraband watch on December 15, 2014, after he had two negative defecations. The CORC further noted that the Office of Special Housing/Inmate Discipline affirmed the MBR on April 10, 2015. (*Id.*).

Plaintiff then instituted this Section 1983 action, alleging various constitutional violations in connection with the October 10, 2014 retaliatory assault and two-month special contraband watch. On May 10, 2017, the Court granted Plaintiff's third motion for leave to proceed *in forma pauperis* (Docket No. 10) with the instruction that Plaintiff file an amended complaint. As a part of its May 10, 2017 order, the Court also requested that the Attorney General ascertain the identity of the John Doe Defendant and an address where Plaintiff could serve him. *See Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (*per curiam*). On November 6, 2017, counsel for Defendants, Assistant Attorney General Hillel Deutsch, sent a letter to the Court (Docket No. 23) and explained that "[p]er facility paperwork, only three officers were involved in the incident," but "[i]f Plaintiff believes an additional individual was involved, a physical description will be useful to determine" the officer's identity. The Court is unaware of whether Plaintiff has provided a physical description of the John Doe defendant to counsel for Defendants, but the identity of the John Doe defendant is not dispositive with respect to the outcome of the present motion. Plaintiff filed the Amended Complaint (Docket No. 21) on October 4, 2017.

Currently pending before the Court is Defendants' partial Motion to Dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants move to dismiss Plaintiff's First Amendment retaliation claim as to all Defendants. (Docket No. 22-1 at 1, 4). Defendants also move to dismiss Plaintiff's claim that Acting Commissioner Anthony J. Annucci ("Annucci"), Superintendent Dale Artus ("Artus"), and Deputy Superintendent for Security Stewart Eckert ("Eckert") (collectively, "the Supervisory Defendants") created and enforced policies and procedures which allowed Attica officials to subject him to retaliatory assault and special contraband watch under cold conditions in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment and his right to due process under the Fourteenth Amendment. (*Id.* at 1). Defendants do not seek to dismiss Plaintiff's claims against Correction Officers Coburn, Nolan, and John Doe or Sergeant Olles for the use of excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff failed to file any opposition to Defendants' motion.

**\*3**  For the reasons that follow, Defendants' partial Motion to Dismiss is granted.

### III. The Rule 12(b)(6) Standard

The function of a motion to dismiss pursuant to Rule 12(b)(6) is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted). In order "[t]o survive a motion to dismiss under [Rule 12(b)(6) ], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In assessing a claim's plausibility, the district court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937, and draw every reasonable inference in favor of the plaintiff, *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Where, as here, the plaintiff is proceeding *pro se*, his complaint and supporting papers must be read "liberally" and interpreted to "raise the strongest arguments that they suggest." *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, the plaintiff's allegations must consist of more than mere labels or

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 121 of 131

Gonzalez v. Coburn, Not Reported in Fed. Supp. (2017)

2017 WL 6512859

a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

## IV. Elements of a Section 1983 Claim

Under Section 1983, " 'anyone acting under color of any [state] statute, ordinance, regulation, custom, or usage,' who causes a United States citizen to be deprived 'of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.' " *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting 42 U.S.C. § 1983). A plaintiff seeking relief under § 1983 "must allege that (1) the challenged conduct was attributable to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).

## V. Personal Involvement

Defendants contend that Plaintiff fails to allege the personal involvement of Annucci, Artus, and Eckert with respect to their violation of his Eighth Amendment right to be free from cruel and unusual punishment and Fourteenth Amendment right to due process when they created and enforced policies and procedures which allowed Attica officials to place Plaintiff in special contraband watch under cold conditions. Specifically, Defendants argue that Plaintiff does not allege what the purported policies were, how or when they were created, or what involvement Annucci, Artus, and Eckert had in the creation of the policies. Moreover, Plaintiff does not allege that these defendants were aware of these purported policies being enforced generally or as applied to his case specifically.

### A. Legal Standard

**\*4** Under Section 1983, supervisor liability "requires some personal involvement or responsibility." *Guillory v. Cuomo*, 616 Fed.Appx. 12, 13 (2d Cir. 2015) (unpublished opn.). This can be shown by: (1) "actual direct participation in the constitutional violation," (2) a "failure to remedy a wrong after being informed through a report or appeal," (3) the "creation of a policy or custom" sanctioning "conduct amounting to a constitutional violation, or allowing such a policy or custom to continue," (4) "grossly negligent supervision of subordinates" committing a constitutional rights violation, or (5) a "failure to act on information

indicating that unconstitutional acts were occurring." *Guillory*, 616 Fed.Appx. at 13 (quoting *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003)).

### B. Discussion

Here, Plaintiff has failed to plead any facts that plausibly allege personal involvement on the part of Annucci, Artus, and Eckert. Plaintiff alleges that these defendants "created and/or enforced policies and procedures" that allowed Plaintiff's constitutional rights violations in connection with the special contraband watch (Am. Compl. at 6). Essentially, Plaintiff alleges there was an unidentified policy that led to the violation of his constitutional rights. This is insufficient to state a claim. *See, e.g.*, *Youngblood v. City of New York*, No. 15-3541, 2016 WL 3919650, at \*5 (S.D.N.Y. June 27, 2016) (concluding *pro se* plaintiff's "bare allegations of the existence of a custom and policy and his conclusory assertion that the policy was linked to his constitutional injuries are insufficient to state a *Monell* claim"). Plaintiff does not identify any specific policies or procedures created by Annucci, Artus, and Eckert, their role in creating them, how or when these defendants allegedly created them, or any allegations suggesting that these defendants were aware that prison officials enforced them against Plaintiff. Thus, Plaintiff's allegations are conclusory, not plausible on their face, and not entitled to the assumption of truth on a motion to dismiss. *See Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937; *Carpinone v. City of New York*, No. 11-2074, 2012 WL 760073, at \*2 (S.D.N.Y. Mar. 9, 2012) ("Plaintiff offers no facts which would render plausible his allegations of a policy or custom within the New York City Police Department that was affirmatively linked to the purported constitutional violations he suffered.").

In support of his argument, Plaintiff includes a single-page excerpt of DOCCS' 25-page Directive # 4910, Control of & Search for Contraband (effective through November 6, 2017) and underlines on the page the words "48 hours" and "written approval of the Superintendent or his or her designee." (Am. Compl., Ex. C). The underlined language appears in a discussion of the length of time an inmate may be held on special contraband watch or temporary isolation. (*Id.*). Succinctly, the Directive provides that an inmate shall not be held in special contraband watch or temporary isolation for more than 48 hours unless (1) he fails to have two defecations negative for contraband during the first 48 hours, or (2) a radiological detection search finds contraband in his body, in which case he may be held for up to seven days with written approval of the Superintendent or a designee.

Case 9:19-cv-01352-GTS-TWD    Document 29    Filed 11/17/20    Page 122 of 131

Gonzalez v. Coburn, Not Reported in Fed. Supp. (2017)

2017 WL 6512859

Interpreting the underlined language in order to "raise the strongest arguments," *Soto*, 44 F.3d at 173, Plaintiff appears to contend that Defendants wrongfully held him in isolation without the approval of the Superintendent or a designee. Although this implies actual, direct participation by the Supervisory Defendants, Plaintiff does not allege that any of the Supervisory Defendants in his case ordered a radiological detection search. Because his detention was not based on a radiological detection search ordered by a Superintendent or designee, the subsection of Directive #4910 requiring the Superintendent's written approval for a stay exceeding 48 hours does not apply. Moreover, the CORC decision indicates that Plaintiff did not have two defecations negative for contraband within the first 48 hours, and therefore special contraband watch officials held him until he had two negative defecations in accordance with Directive #4910, which does not require approval by a supervisory official. (Am. Compl., Ex. B at 1).

**\*5** Because Plaintiff has failed to plausibly allege any personal involvement by Annucci, Artus, and Eckert in the alleged deprivation of his rights, *Guillory*, 616 Fed.Appx. at 13, Plaintiff fails to state a claim against them for violation of his Eighth Amendment right to be free from cruel and unusual punishment and Fourteenth Amendment right to due process. Thus, his claims against Annucci, Artus, and Eckert must be dismissed.

## VI. Exhaustion

Defendants also contend that Plaintiff has failed to exhaust his administrative remedies, and that therefore the Court should dismiss (1) his First Amendment retaliation claim as to all Defendants, and (2) all other claims against Annucci, Artus, and Eckert.

### A. Legal Standard

The Prison Litigation Reform Act of 1995 ("PLRA") states in relevant part that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's administrative exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court recently held that, "aside from the

'significant' textual qualifier that 'the remedies must indeed be "available" to the prisoner,' there are 'no limits on an inmate's obligation to exhaust-irrespective of any "special circumstances." ' " *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross v. Blake*, ––– U.S. ––––, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016)).

The Supreme Court in *Ross* provided three circumstances where an administrative remedy is not available. "First, an administrative remedy may be unavailable when 'it operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' " *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S.Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use,' " i.e., "no ordinary prisoner can discern or navigate it." *Williams*, 829 F.3d at 123-24 (quoting *Ross*, 136 S.Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' " *Williams*, 829 F.3d at 123-24 (quoting *Ross*, 136 S.Ct. at 1860). The Second Circuit noted that *Ross* did not appear to suggest that these three circumstances are exhaustive. *Id.* at 123 n.2.

### B. Discussion

DOCCS maintains a three-tiered administrative review and appeals system for prisoner grievances. *See* N.Y. COMP. CODES R. & REGS. ("NYCRR") tit. 7, § 701.5. Completion of all three levels is a prerequisite condition to bringing a Section 1983 action in federal court. *See Porter*, 534 U.S. at 524, 122 S.Ct. 983. At the first step, an inmate shall file a complaint with the IGRC. NYCRR, tit. 7, § 701.5(a)-(b). At the second step, an inmate that is not satisfied with the resolution of the matter by the IGRC may appeal to the Superintendent. *Id.* § 701.5(c). The third and final level involves an appeal by the inmate of the facility superintendent's written decision to the CORC. *See id.* § 701.5(d). "The CORC functions on behalf of the commissioner and under his authority." *Id.*

### 1. First Amendment Retaliation
Claim as Against All Defendants

**\*6** "A complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.' " *Nicosia v.*

Gonzalez v. Coburn, Not Reported in Fed. Supp. (2017)
Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 123 of 131
2017 WL 6512859

*Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). Based on an examination of the Amended Complaint and its attending exhibits, the Court agrees that Plaintiff has failed to exhaust his administrative remedies as to his First Amendment retaliation claim with respect to all Defendants and as to all remaining claims against Annucci, Artus, and Eckert. However, because the Court has already dismissed all other claims against Annucci, Artus, and Eckert based on a lack of plausible allegations of personal involvement, the Court will only address Plaintiff's First Amendment retaliation claim.

In New York, "[i]n addition to the grievant's name, department identification number, housing unit, program assignment, etc., the grievance should contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, i.e., specific persons/areas contacted and responses received." NYCRR, tit. 7, § 701.5(a)(2). Interpreting these requirements, the Second Circuit has said that "if prison regulations do not prescribe any particular content for inmate grievances, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (internal quotation and citation omitted).

The Inmate Grievance Complaint filed by Plaintiff does not allege any facts suggesting that Correction Officers Coburn, Nolan, and John Doe, and Sergeant Olles subjected him to excessive force and confinement on special contraband watch for retaliatory reasons. Plaintiff's grievance simply detailed the assault and stated that Sergeant Olles thereafter placed him on special contraband watch. For his relief requested, Plaintiff stated in the grievance that he wanted "the abuse to stop," and to be compensated for the 65 days he spent on special contraband watch. <u>Contrast with</u> *Varela v. Demon.*, 491 F.Supp.2d 442, 448 (S.D.N.Y. 2007) (inmate exhausted retaliation claim where, although grievance did not use the word "retaliation," "fairly read, it does suggest that the assault occurred in response to Varela's prior complaint to Demons supervisors" since it stated that "Demon. said, on the day before the assault: 'Since you like to cry to my superiors, I'm going to show you who the real boss around here is. Your time will come soon' ") (citation to record omitted).

Moreover, nothing in the Amended Complaint (or elsewhere in the record before the Court) suggests that the three-tiered administrative review and appeals system for prisoner grievances maintained by DOCCS was not *available* to Plaintiff. *See Williams*, 829 F.3d at 123-24 (quoting *Ross*, 136 S.Ct. at 1859-60). Specifically, Plaintiff does not allege, and his exhibits do not show, that the administrative review and appeals system would have been a dead-end for Plaintiff. *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S.Ct. at 1859). Plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end nor so opaque that Plaintiff could not avail himself of it. *Williams*, 829 F.3d at 123-24 (quoting *Ross*, 136 S.Ct. at 1859). Moreover, after filing his Inmate Grievance Complaint, a prison official investigated Plaintiff's grievance, interviewed Plaintiff, reviewed written memoranda from staff named in the grievance, and reached the conclusion that Defendants used appropriate force. (Am. Compl., Ex. B at 2). After reviewing the pertinent facts, the CORC concurred with this conclusion, explaining that it had "not been presented with sufficient evidence of malfeasance by staff." (Am. Compl., Ex. B at 1). Nor is there anything in the appeal process to suggest that any administrators attempted to thwart Plaintiff's efforts to resolve his grievance administratively. *See Williams*, 829 F.3d at 123-24 (quoting *Ross*, 136 S.Ct. at 1860). The Court acknowledges that the CORC ultimately "functions on behalf of the Commissioner," NYCRR, tit. 7 § 701.5(d). However, Plaintiff fully availed himself of the grievance appeal process in connection with the October 2014 excessive force incident and the subsequent two-month special contraband watch. Thus, even crediting Plaintiff's allegations and exhibits, nothing suggests that the process was otherwise unavailable with respect to Plaintiff's claim of retaliation.

**\*7** The Court therefore finds that Plaintiff has failed to exhaust his administrative remedies with respect to his First Amendment retaliation claim, and the claim is dismissed as to all Defendants.

## VII. Conclusion

For all the foregoing reasons, Defendants' limited Motion to Dismiss is granted with respect to Plaintiff's First Amendment Claim as to all Defendants. Furthermore, Defendants' limited Motion to Dismiss is granted as to all claims against defendants Annucci, Artus, and Eckert. Plaintiff's excessive force claim remains pending against defendants Coburn, Nolan, Olles, and John Doe. The Clerk of the Court is directed

2017 WL 6512859

to terminate defendants Annucci, Artus, and Eckert from the case.

**ALL OF THE ABOVE IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6512859

---

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 2870300

2019 WL 2870300
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Roberto CASTINEIRAS, Plaintiff,

v.

A. HELMS, Defendant.

9:17-CV-1084 (BKS/ATB)
|
Signed 06/06/2019

**Attorneys and Law Firms**

ROBERTO CASTINEIRAS, Plaintiff, pro se

AIMEE COWAN, Asst. Attorney General, for defendants.

**REPORT and RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

*1 This matter was referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge. Plaintiff has filed this civil rights complaint alleging that on August 21, 2017, at Upstate Correctional Facility, defendant Helms used excessive force against him in the course of extracting plaintiff from his cell. (Complaint ("Compl.") ¶ 6, Facts). Plaintiff originally named two defendants: Corrections Officer ("CO") A. Helms, and "Jane Doe," a nurse on duty at the time of the incident. (Compl. at 1). On December 19, 2017, after initial review of the complaint, Judge Sannes dismissed the complaint against defendant Jane Doe. (Dkt. No. 9).

Presently before the court, is a motion for summary judgment filed by defendant Helms, arguing that plaintiff has failed to exhaust his administrative remedies. In the alternative, defendant argues that plaintiff's Eighth Amendment claim may be dismissed on the merits, and that defendant is entitled to qualified immunity. (Dkt. No. 24). Plaintiff has responded in opposition to the motion, and defendant has filed a reply. (Dkt. Nos. 26, 27). For the following reasons, this court agrees that plaintiff has failed to exhaust his administrative remedies and will recommend that the defendant's motion for summary judgment be granted.

**DISCUSSION**

**I. Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Salahuddin*, 467 F.3d at 272.

**II. Exhaustion of Administrative Remedies**

**1. Legal Standards**

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 126 of 131

Castineiras v. Helms, Not Reported in Fed. Supp. (2019)

2019 WL 2870300

they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

**\*2** The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp.2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19, 127 S.Ct. 910 (citing *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103, 126 S.Ct. 2378.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d).

There is a special section for complaints of "harassment." *Id.* § 701.8. Harassment grievances are defined in another section of the regulations as "those grievances that allege employee misconduct meant to annoy, intimidate, or harm an inmate." *Id.* § 701.2(e). Based on this definition, section 701.8 has been found applicable to claims of excessive force by staff. *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at \*7 n.7 (S.D.N.Y. Sept. 28, 2018) (citing *Torres v. Carry*, 691 F. Supp. 2d 366, 369-70 (S.D.N.Y. 2009)).

Complaints of harassment are handled by an ***expedited*** procedure which provides that such grievances are forwarded directly to the superintendent of the facility, [1] after which the inmate must appeal any negative determination to the CORC by filing a form within seven calendar days of the inmate's receipt of the Superintendent's response. *Id.* §§ 701.8(h) & (i), 701.5. The regulations then provide that "unless otherwise

stipulated in this section, all procedures, rights, and duties pertaining to the processing of other grievances as set forth in section 701.5 of this Part shall be followed." *Id.* § 701.8(i). Thus, if a procedure is not described in 701.8, the inmate must refer to section 701.5. [2]

[1]   The regulation states that "[a]llegations of employee harassment are ***of particular concern to the administrators of department facilities.***" 7 N.Y.C.R.R. § 701.8 (emphasis added).

[2]   The court also notes that the regulations governing the Inmate Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

**\*3** However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 136 S. Ct. at 1857. " '[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.' " *Riles v. Buchanan*, 656 Fed.Appx. 577, 580 (2d Cir. 2016) (quoting *Ross*, —— U.S. ——, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill*–availability and estoppel–are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, —— U.S. ——, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 656 Fed.Appx. at 580. An administrative procedure is "unavailable" when

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 127 of 131

Castineiras v. Helms, Not Reported in Fed. Supp. (2019)
2019 WL 2870300

(1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, —— U.S. ——, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, —— U.S. ——, 136 S. Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860. Thus, if a plaintiff fails to exhaust his administrative remedies, the court must consider whether those remedies were "available" to him.

In *Williams v. Priatno*, 829 F.3d 118, 123-27 (2d Cir. 2016), the Second Circuit considered whether administrative remedies had been "actually available" to an inmate plaintiff under *Ross*, after the district court granted the defendants' motion to dismiss for failure to exhaust. The plaintiff alleged that, while housed in the special housing unit ("SHU"), he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf. *Id.* at 120-121. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id.* at 121. He never received a response to his grievance, and alleged that it was never filed by the officer to whom he had given it. It was undisputed that plaintiff never appealed the grievance. *Id.*

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id.* at 124. The defendants relied on a Department of Corrections and Community Services ("DOCCS") regulation that provided that "an inmate may appeal a grievance 'to the next step' if he does not receive a timely response." *Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2)).

The Second Circuit rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id.* The Second Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed ... [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id.* Thus, *Williams* holds that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126. [3] *See also Medina v. Napoli*, 725 F. App'x 51, 53-54 (2d Cir. 2018) (following *Williams* in the context of a summary judgment motion).

[3]    My summary of *Williams* tracks that of Magistrate Judge Stewart in *Berman v. Durkin*, No. 9:13-CV-136 (LEK/DJS), 2017 WL 1215814, at *8 (N.D.N.Y. Mar. 10, 2017), (Rep't-Rec.), *adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017).

**2. Application**

*4  In this case, defendant argues that plaintiff failed to exhaust his administrative remedies because he failed to appeal the Superintendent's denial of his grievance to the CORC, and the administrative remedy was "available" to him. (Def.'s Mem. of Law at 3-5) (Dkt. No. 24-9). Defendant also argues that plaintiff failed to specifically identify defendant Helms in his grievance as one of the officers who actually struck plaintiff. [4]  (*Id.* at 4). This court need not reach defendant's last argument regarding exhaustion because there are at least two other reasons why plaintiff failed to exhaust his administrative remedies as discussed below, the first of which was not raised by the defendant.

[4]    Defendant argues that the grievance states only that defendant Helms verbally threatened plaintiff after the excessive force incident. (Def.'s Mem. of Law at 4).

Plaintiff attached his grievance to the complaint in this federal action. (Compl. at CM/ECF p.7). The grievance is dated "9/21/17," and it was received by the Grievance Committee and given Grievance No. UST-61853-17 on "9/22/17." (*Id.*) Plaintiff's federal complaint was also signed "9/21/17," and it was received by the court on "9/28/17." (Compl. at CM/ECF p.6 & Dkt. No. 1 *generally*). If plaintiff signed his administrative grievance and his federal complaint on the same day and mailed the federal complaint to the court,

it is impossible that plaintiff could have exhausted his administrative remedies before he filed his federal action. In fact, in the section of the form-complaint which asks the plaintiff "What was the final result of your grievance?", plaintiff's answer was: "[it] is being in investigation under Code 49 harassment/misconduct."[5] (Compl. at CM/ECF p.3).

[5]      Exhaustion is an affirmative defense. Thus, even though it seems clear from the face of the complaint that plaintiff's remedies were not exhausted, in an abundance of caution, the complaint was allowed to proceed past initial review.

A civil rights claim must be exhausted by the grievance process, which requires the completion of the three-tiered process, *before* an action asserting that claim may be filed. *See*, e.g., *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, at *5 (N.D.N.Y. Nov. 9, 2015), *Rep't Rec., adopted*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015); *See also Klein v. Fischer*, No. 13-CV-0437, 2015 WL 5174031, at *19 (N.D.N.Y. Sept. 2, 2015) ("a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced.").

The court will also examine whether plaintiff exhausted his administrative remedies *after* filing this action. If plaintiff had done so, the federal complaint would still have to be dismissed, but the plaintiff would have been able to re-file the federal complaint immediately because his remedies would already have been exhausted. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009); *Morales v. Mackalm*, 278 F.3d 126, 128 (2d Cir. 2002) (dismissal for failure to exhaust should be without prejudice to refiling following exhaustion). If plaintiff did not exhaust his remedies during the pendency of this action, the dismissal may still be without prejudice, but plaintiff will have to attempt to exhaust his administrative remedies prior to refiling.

In this case, the parties dispute whether plaintiff completed the exhaustion requirement during the pendency of this action. Defendant Helms argues that plaintiff did not appeal the denial of his grievance to the CORC, and thus never completed the administrative grievance process for his claim at all. (Dkt. Nos. 24-1; 24-9). Plaintiff argues that he did appeal to the CORC, but did not keep copies of any of the relevant documents. The parties agree that plaintiff filed Grievance UST-61853-17 following the alleged August 21, 2017 incident. (Cowen Decl. Ex. A, at 2). Because plaintiff's

grievance involved allegations of employee harassment, it was forwarded directly to Upstate's Superintendent for review and response. (Cowen Decl. Ex. A at 7). Plaintiff's grievance was subsequently denied by the Superintendent. (Cowen Dec. Ex. A, at 3). However, the parties disagree as to whether plaintiff appealed the Superintendent's decision to the CORC. (Cowen Dec. Ex. A, at 3; Dkt. No. 24 at 7-9; Dkt. No. 24-5 at 32-33).

**\*5** Defendant has filed the Declaration of Rachel Seguin, the Assistant Director of the DOCCS IGP and custodian of records maintained by the CORC. (Seguin Decl. ¶¶ 1-2, 7). Assistant Director Seguin reviewed the CORC records, searching for any appeals filed by plaintiff with the CORC and found no grievance appeals by plaintiff. (Seguin Decl. ¶¶ 7-9; Ex. A).

In his deposition, plaintiff claims to have filed his appeal to the CORC and claims that the CORC issued a decision denying his grievance. (Pl.'s Dep. at 32-33). Plaintiff's testimony regarding the appeal was vague. *Id.* Plaintiff has been unable to produce the alleged denial of appeal by the CORC, although he claims to have received such a denial, and has failed to produce any other evidence that the appeal was filed. Plaintiff testified that he did not keep a copy of his appeal or of the CORC's decision. (*Id.* at 32). Although plaintiff responded to the defendant's summary judgment motion, he failed to address the exhaustion issue. (See Dkt. No. 26).[6] Thus, he has failed to address Assistant Director Seguin's sworn statement that there is no record of plaintiff having filed an appeal with CORC regarding any alleged misconduct by defendant Helms.

[6]      Plaintiff argues in his Response to defendant's motion for summary judgment that he is entitled to an appointment of counsel. (Dkt. No. 26). Requests of counsel must be made by a Motion for Appointment of Counsel in compliance with the Northern District of New York's local rules. Plaintiff is aware of this requirement as he has previously moved to appoint counsel and the court has denied his motion. (Dkt. Nos. 18, 20).

Unlike the plaintiff in *Williams*, this plaintiff does not argue that administrative remedies were unavailable to him. Rather, plaintiff claims that he completed all the required steps to exhaust his administrative remedies. He alleges that he did not keep the relevant documents. It is undisputed that plaintiff filed a grievance and received a decision from the

Superintendent denying his claim. Because plaintiff has failed to claim that administrative remedies were unavailable to him, any recognized exceptions to the exhaustion of administrative remedies requirement are not relevant to the court's analysis. *See Ross*, 136 S.Ct. at 1853-54.

When a plaintiff fails to exhaust his administrative remedies, the court must dismiss the action without prejudice so that the plaintiff may complete the exhaustion process and re-file his action, unless the time permitted for filing a grievance or appeal has finally expired. *See Felix v. Simon*, 303 F. App'x 21, 22 (2d Cir. 2008) (upholding dismissal of a civil rights action with prejudice where the time permitted for filing a grievance had expired because "dismissal with prejudice, when remedies are no longer available, is required in the absence of any justification for not pursuing such remedies") (citation omitted).

In this case, the Superintendent's decision was dated October 27, 2017, and the bottom of the document contains an "Appeal Statement," informing the plaintiff that he had "seven (7) calendar days from receipt of this notice to file your appeal.* Please state why you are appealing this decision to C.O.R.C." (Def.'s Ex. A at 3). *See* 7 N.Y.C.R.R. § 701.5(d)(1)(i). The text associated with the asterisk above states that "*An exception to this time limit may be requested under Directive #4040, section 701.6(g)." (*Id.*) This document is Form # 2133. (*Id.*) The appeal section of the form is blank, [7] and the regulations specifically provide that "If the grievant or any direct party wishes to appeal to the CORC, he or she *must complete and sign form #2133* and submit it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance." 7 N.Y.C.R.R. § 701.5(d)(1)(i) (emphasis added). This section of the regulation further states that "an exception to this appeal time limit may be approved by the IGP supervisor under section 701.6(g) of this Part." *Id.* However, section 701.6(g) provides that "an exception to this time limit may not be granted if the request was made more than 45 days after an alleged occurrence."

[7]     This further supports the defendant's assertion that plaintiff did not, in fact, appeal the Superintendent's denial of his grievance to the CORC.

**\*6** Thus, plaintiff may not return to exhaust his administrative remedies as against defendant Helms because, although he could have requested an exception to the seven-day time limit for appealing to the CORC within 45 days

of the occurrence of the incident, that time limit has long since expired, and there appear to be no exceptions to the 45 day limit in the regulations. Because plaintiff may not return to exhaust his administrative remedies as against defendant Helms, I must recommend dismissal with prejudice as against defendant Helms.

In his response to defendant's motion, plaintiff references another investigation surrounding the events of August 21, 2017 and argues that his Eighth Amendment claim should survive summary judgment, even if defendant Helms is granted a "partial" summary judgment on his exhaustion argument. (Dkt. No. 26). According to plaintiff, an investigation conducted by the Office of Special Investigations ("OSI") established that the *nurse* on duty on the day of the incident was guilty of abusive behavior. (Dkt. No. 26).

A copy of the investigative report is attached to defense counsel's affidavit as Exhibit B. The OSI report referenced plaintiff and another inmate, who complained about an unrelated, but similar incident involving the nurse. (Cowan Decl. Ex. B). The OSI investigated the August 21, 2017 incident. (Cowan Dec. Ex. B). The investigation was conducted to look into allegations made by plaintiff, as well as additional allegations by a different inmate at Upstate Correctional Facility, against the nurse on duty during the August 21, 2017 incident (Nurse Marla Travers). (*Id.*) However, even assuming that this investigation sufficed to exhaust plaintiff's claims against Nurse Travers, [8] all claims against "Jane Doe Nurse" were dismissed from this case *sua sponte* by the Judge Sannes. (Dkt. No. 9). [9]

[8]     Normally, if plaintiff had filed directly with the Inspector General or OSI, such a complaint would not be sufficient for exhaustion purposes. *Smith v. Kelly*, 985 F. Supp. 2d 275, 285 & n.16 (N.D.N.Y. 2013) ("The Court notes that there is no exhaustion where an inmate complains directly to the Inspector General (i.e., instead of complaining to the superintendent and having the complaint referred to the Inspector General pursuant to 7 N.Y.C.R.R. § 701.8[d] ), the Inspector General renders a finding of unsubstantiation, and the inmate fails to appeal that finding to CORC.") In this case, it is clear from the OSI report that the investigation was requested by the Superintendent on September 19, 2017, but was not finally decided

Case 9:19-cv-01352-GTS-TWD   Document 29   Filed 11/17/20   Page 130 of 131

Castineiras v. Helms, Not Reported in Fed. Supp. (2019)

2019 WL 2870300

until June 5, 2018. (Cowen Decl. Ex. B at 1, 4). There would have been no need to appeal the OSI finding because it was in plaintiff's favor, and Nurse Travers resigned from her position on April 18, 2018. (Cowen Decl. Ex. B at 3). However, it appears that whatever grievance or complaint prompted the Superintendent to request an OSI investigation, it must have been based on different facts than the grievance that plaintiff attached to his federal complaint because the Superintendent's response to Grievance UST-61853-17 was a *denial* on October 27, 2017, including a statement that "no misconduct by staff was found." (Cowen Decl. Ex. A at CM/ECF p.3). Plaintiff would have been required to appeal that denial in order to exhaust his claims against defendant Helms.

9        Plaintiff had the opportunity to amend his complaint to add the nurse in question as a party. He clearly knew the nurse's name at the time of the OSI investigation, but never filed an amended complaint with the court. The complaint as to Nurse "Doe" was dismissed without prejudice.

**\*7** In any event, the report states that the investigation was "assigned on September 28, 2017, and Investigator Ryan Graziano signed the completed OSI Report on May 8, 2018, long after plaintiff filed this federal complaint." Thus, notwithstanding the OSI investigation, which focused only on the nurse, plaintiff still failed to exhaust his administrative remedies *prior to* filing this federal complaint. The complaint still remains dismissed without prejudice as to the Jane Doe nurse.

### III. **Additional Discovery**

#### 1. Legal Standards

Pursuant to Fed. R. Civ. P. 56(f), a party opposing a motion for summary judgment based on insufficient discovery must file an affidavit describing: (1) "the nature of the uncompleted discovery;" (2) "how the facts sought are reasonably expected to create a genuine issue of material fact;" (3) "what efforts the affiant has made to obtain those facts" and; (4) "why those efforts were unsuccessful." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir. 1994); see also *Brunson v. Jonathan,* 677 F. Supp. 2d 640, 641 (W.D.N.Y. 2010).

#### 2. Application

In his response to defendant's motion, plaintiff also argues that he should be allowed to conduct further discovery in this matter in the form of depositions and interrogatories. (Dkt. No. 26). Plaintiff has not met the requirements for additional discovery under Rule 56(f). Plaintiff's response to defendant's motion merely states that discovery "in the form of depositions" and "interrogatories" would be "instrumental" to establish defendant's culpability. Plaintiff's vague and conclusory statement fails to demonstrate how his ability to respond to defendant's motion for summary judgment was impaired by his lack of discovery or what documents he wishes to obtain that would be material to the exhaustion or any substantive issue.

Additionally, in defendant's reply, defense counsel asserts that she complied with the Court's Mandatory Pretrial Discovery order and forwarded the required discovery material to plaintiff. (Dkt. No. 27). Further, defendant notes that plaintiff had six months to conduct discovery after defendant filed his answer to plaintiff's complaint on February 6, 2018 (Dkt. No. 16). The deadline for discovery did not expire until August 7, 2018. (Dkt. No. 17). Moreover, defendant's reply states that there is no indication that plaintiff ever demanded any further discovery or an extension of the discovery deadline. Thus, plaintiff has not met the requirements of Rule 56(f).

### IV. **Conclusion**

Based upon the complaint itself, the grievance documents, and Assistant Director Seguin's declarations, plaintiff has failed to raise an issue of fact as to whether, prior to the initiation of this action, he properly filed his grievance and/or appealed the grievance against defendant Helms to the CORC as required by the IGP. *See, e.g., Ruggiero v. Cty. of Orange,* 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.")) (internal quotation marks and emphasis omitted)).

The court also concludes that there are no issues of fact material to whether plaintiff has ever exhausted his administrative remedies with respect to the claim against defendant Helms. No reasonable fact finder could conclude that plaintiff pursued an appeal to the CORC after he filed this action or that he could still pursue such an appeal within the applicable deadlines. Accordingly, I recommend that defendant's motion be granted, and that plaintiff's complaint be dismissed with prejudice based on his failure to exhaust available administrative remedies prior to commencing this

2019 WL 2870300

action and thereafter, though the expiration of the applicable deadlines to do so.

**\*8  WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 24) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE AS TO DEFENDANT HELMS**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2870300

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.